UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Mohamed John Akhtar and La Buca Restaurant, Inc. d/b/a Swing 46 Jazz and Supper Club,<br><br>　　　Plaintiffs,<br>　　　　　v.<br><br>Eric Adams, Mayor of the City of New York, Rohit T. Aggarwala, New York City Department of Environmental Protection, Eric I. Eisenberg, and John and Jane Does One through Thirty,<br><br>　　　Defendants. | Case No. 23-cv-<br><br>Jury Trial: _X_ Yes 　　No |

**VERIFIED CIVIL COMPLAINT AND REQUEST FOR TEMPORARY RESTRAINING ORDER**

　　Plaintiffs Mohamed John Akhtar and Swing 46 Dinner & Dance Club plead as follows:

## I. The Parties

　　1. Plaintiff Mohamed John Akhtar (hereinafter "plaintiff Akhtar"), is a person and citizen of the United States of American, with a business address of 349 46th Street, Borough of Manhattan, New York 10036, and is within the jurisdiction of the United States District Court for the Southern District of New York.

　　2. Plaintiff Akhtar is a naturalized United States Citizen from the County of

1

Bangladesh. As such, he is within a protected class for the purposes of federal civil rights litigation.

3. La Buca Restaurant, Inc., d/b/a as Swing 46 Jazz and Supper Club Dinner (hereinafter " plaintiff Swing 46") is a corporation with a business address of 349 46th Street, Borough of Manhattan, New York 10036. Swing 46 is owned by plaintiff Akhtar and is within the jurisdiction of the United States District Court for the Southern District of New York.

4. Defendant Mayor Eric Adams, (hereinafter "defendant Adams") is a person and Mayor of the City of New York, with a business address of City Hall, New York 10007, and and is within the jurisdiction of the United States District Court for the Southern District of New York.  Defendant Adams is ultimately responsible for the operations of departments and agencies of the City of New York, among them defendant New York Department of Environmental Protection. Defendant Adams is also responsible for conduct the employees, agents, servants, and contractors for the City of New York.

5. Defendant Rohit T. Aggarwala, (hereinafter "defendant Aggarwala"), is a person and the Commissioner for the defendant NYCDEP, with a business address of 59-17 Junction Blvd., Flushing, New York 11373, and is responsible for his employees, agents, servants, and contractors.  Upon information and belief, defendant Aggarwala conducts governmental business in the Borough of

Manhattan, and is within the jurisdiction of the United States District Court for the Southern District of New York.

6. Defendant New York City Department of Environmental Protection (hereinafter "defendant NYCDEP") is an agency or department of the City of New York, providing governmental services within the Borough of Manhattan, and is within the jurisdiction of the United States District Court for the Southern District of New York. Defendant NYCDEP is responsible for maintaining a safe environment for the citizens and visitors of the City of New York.

7. Defendant Eric I. Eisenberg, (hereinafter "defendant Eisenberg") is, upon information and belief, a resident of the Borough of Manhattan, New York, and is within the jurisdiction of the United States District Court for the Southern District of New York. He currently lists a post office box as a return address and his residential address will be provided as soon as it becomes known to plaintiffs.

8. Upon information and belief, defendant Eisenberg is acting as a for-profit agent or servant for the City of New York and defendants Adams, NYCDEP, and Aggarwalla by issuing summonses for "noise" complaints against plaintiffs and other businesses and merchants in or about what is commonly known as "Restaurant Row" and more specifically plaintiffs address at 46th Street, Manhattan.

9. Defendant Eisenberg has been observed engaging in a scheme to

fraudulently collect "evidence" against "Restaurant Row" merchants by placing a listening device, that according to witnesses appears to be a cell phone, directly against speakers or glass windows of plaintiffs' establishment and then claiming the business is violating a City of New York noise code. Eisenberg then files a complaint with defendant NYCDEP for which, if his complaint is sustained, he fraudulently collects a "bounty," that, upon information and belief, can exceed the sum of two hundred dollars or more per complaint.

10. John & Jane Does One through Thirty are fictitious names for persons, corporations, or other entities whose identities are presently unknown but will be identified as soon as the names become available; or, alternatively, if known, will be identified if facts develop such that there is a legal basis to be named in the complaint herein.

## II. Jurisdiction and Venue

11. Subject matter jurisdiction exists pursuant Article III of the United States Constitution and the power vested in the federal courts giving authority to address federal constitutional questions, along with federal law such as, but not limited to, the Civil Rights Act of 1964, Title 42 United States Code § 1983, and as amended.

12. Supplemental jurisdiction exists pursuant to 28 United States Code § 1367 because the additional claims are so related to the the facts herein they form part of the same case or controversy.

13. Venue is proper in this Court pursuant to 28 United States Code § 1391(b)(1) and (2) because private defendants operate or do business within the Southern District of New York, and a substantial part of defendants' acts or omissions giving rise to plaintiffs' claims occurred in this District.

## Facts of the Case

14. Plaintiffs provide a forum that, in addition to dining, includes live singing and music. Patrons can have diner and engage in "swing dancing," an art form of dance dating back to the early jazz era. Lately, the dance has been undergoing a revival, drawing both local talent and, most significantly, tourists looking for something uniquely of a New York style.

15. Recently plaintiffs began receiving summonses over alleged noise complaints issued by private citizens, among them defendant Eisenberg. There is no evidence that members of defendant NYCDEP actually do the testing to determine the level of noise emanating from plaintiffs' establishment.

16. Apparently defendants Adams, NYCDEP and Aggarwala are relying on a civilian "policing force" for issuing noise summonses. Notwithstanding the fact defendants Adams, NYCDEP and Aggarwala have been asked to produce, they

continue refusing to provide any evidence of training that this policing force undergoes before issuing summonses. Nor have they disclosed what devices are used to measure sound, and if a sound measuring device is utilized, what training is provided not only for its actual use, but proper calibration of the instrument. Defendants Adams, NYCDEP and Aggarwala are preventing plaintiffs from putting on a defense by their failure to turn over "discovery" material as had been requested by plaintiffs' counsel.

17. The civilian summonses are submitted to defendant NYCDEP where ultimately a fine may be imposed, and, as in plaintiffs' case, without due process of law. These fines are extreme with a first offense costing over $1,000.00, and for a third office, over $5,000.00. Because plaintiffs have received at least a half dozen of these summonses, with one being in default, they face crippling fines.

18. The fines are then ultimately converted to legal judgments. The speed for which this process is unusual for an agency of the City of New York making the conduct highly suspicious, and opening plausibility a claim, as some merchants have made, that they are under assault with noise complaints to put them out of business to make way for casino gambling.

19. Upon collection of the imposed fine, a portion is given to the civilian making the claim. In other words, defendants are participating in a modern day bounty system. But they are not going after varmints for bounty, but rather,

running merchants into the ground with excessive fines based, as is known in some cases, upon fraudulently obtained "evidence. "

20.  On or about  May 12, 2023,  plaintiffs made a formal demand to defendants NYCDEP, for the production of any evidence that would support the charges brought against plaintiffs. Defendant NYCDEP has refused to comply with the demand. This refusal to provide evidence before hearing or trial, in support of the claims defendants made against plaintiffs, has continued to this date.

21.  By correspondence, dated July 1, 2023, to  County Counsel, Hon. Sylvia O. Hinds-Radix, with copies to defendants Abrams and Aggarwala, notice was giving in writing over the over the existing problems, as partially stated above, and still no action to abate the situation has been taken. This correspondence was reinforced through phone calls  to attorneys for the New York City Office of Corporate Counsel to no avail.

22. Upon being given ample and  multiple notices, responsible officials, among them defendants Abrams and Aggarwala, still refuse to take appropriate action to stop the fraud that is damaging, among others,  plaintiffs in this action.

23. In a glaring example of bureaucratic indifference, on Wednesday, July 26, 2023,  defendant Aggarwala made a public televised appearance in behalf of himself and defendant NYCDEP.  He  made admissions that he is aware of the

motivation to issue complaints by civilians for financial gain, but he would still not be taking corrective action to stop the fraud from continuing.

24. Plaintiffs' have been damaged by defendants' scheme to fraudulently issue noise complaints risking the viability of the business. The business has been issued numerous summonses, with one having gone into default after being informed, wrongly, the case had been put over to another date.

25. Clearly, defendants Abrams and Aggarwalla, nor defendant NYCDEP as a public entity, have not the slightest interest in self-policing their fine collecting program and bounty system, such that damage to plaintiffs will continue until a responsible party takes the appropriate action to restrain this malfeasance from continuing.

26. The risk of losing his business has caused plaintiff Akhtar severe distress, affecting his heath and well being. Akhtar is an emigre from the Country of Bangladesh and a naturalized United States Citizen. He is fearful that a business he built himself over a period of more than thirty years is at risk because of the acts and/or omissions of these defendants.

27. The issuance of noise summonses by defendants only began recently, and was never a problem for plaintiffs in the past. But the summonses coincided with the recent announcement by the Mayor of the City of New York, defendant Adams, of the potential for casino gambling in the "Restaurant Row" mid-town area.

Plaintiff Akhtar is fearful that defendant Adams is trying to drive him, along with other merchants, out of business to make way for casino gambling.

28. Plaintiffs deny they are making noise that would warrant such harsh punishment. Indeed, while plaintiffs deny they are producing sound that would be actionable, the sound, if any, cannot be distinguishable from the din of sound produced by automobiles, people on the sidewalk, and other establishments.

29. Plaintiffs assert that the issuance of alleged noise complaints are being done fraudulently by individuals, among them defendant Eisenberg, for the purpose of harassment and wrongly attempting to collect money from plaintiff through a fraudulent bounty system sustained by defendants Adams, NYCDEP, and Aggarwala, if not upon their acts, then omissions.

## CAUSES OF ACTION

### Count One
### Title 42 United States Code §1983
### Violations of Plaintiff Mohamed John Akhtar's Civil Rights

30. Notwithstanding the fact that plaintiff Akhtar is an emigre from the County of Bangladesh, he retains the absolute right as a United State Citizen to be free from harassment by governmental entities, along with others, because of his national origin, race, color, and creed.

31. Plaintiff Akhtar, as an ethic Bangladeshi, that occupies a narrow niche

within American society. He is, by any account, a minority among minorities. As a result, he is particularly susceptible to government overreach and has ample reason, as this case has shown, to be fearful. He holds legitimate concerns he does not have a means to defend himself against powerful individuals and governmental entities.

32. Plaintiff Akhtar's fears have been partially borne out by defendants NYCDEP and Aggarwala actions, along with defendant Adams' indifference. These defendants are acting in a blatantly unconstitutional and unlawful effort to deprive plaintiff of his civil rights by not providing one scintilla of evidence that will be used to prosecute their case against him.

33. In addition to defendants Abrams, NYCDEP and Aggarwala's noncompliance, and their unconstitutional and unlawful conduct, a default has allowed to be been entered against plaintiff Akhtar for a case that he was wrongly led to believe had been adjourned.  In a blatant denial of due process of law, a fine in excess of fifteen hundred dollars was imposed .

34. As a result of defendants' acts or omissions, plaintiffs have been damaged and suffered serious and potentially irreparable harm. Plaintiffs are of the belief that defendants will continue this conduct until held to account in a court-of-law.

Wherefore, plaintiffs seek judgment against defendants restraining them from

preventing plaintiff' right to defend against defendants' complaints, along with compensatory damages, punitive damages where allowed, court costs, attorney's fees, and other just relief.

## Count Two

### United States Constitutional Violations by Defendants against Plaintiffs

Plaintiffs repeat the allegations in each and every paragraph and line above as if set forth at length herein.

35. Plaintiffs are entitled to constitutional safeguards upon being accused by defendants of an offense that includes severe financial penalties.

36. In accordance with the United State Constitution, plaintiffs are entitled, among other rights, the right of equal protection under the law, due process, a fair trial, right to a defense, and as with plaintiff Akhtar, a right to be free of discrimination.

37. As a result of defendants' Adams, NYCDEP, and Aggarwala's acts or omissions in denial of these rights, plaintiffs have been damaged and suffered serious and potentially irreparable harm, and will continue to suffer harm into the future under present conditions.

Wherefore, plaintiffs ask for judgment against defendants restraining them

from preventing plaintiffs' right to defend against defendants' complaints, along with compensatory damages, punitive damages where allowed, court costs, attorney's fees, and other just relief.

## Count Three

<u>Denial of Plaintiffs' right to Free Expression by defendants Abrams, NYCDEP, and Aggarwala under the First Amendment of the United States Constitution</u>

38. Plaintiffs repeat the allegations in each and every paragraph and line above as if set forth at length herein.

39. Plaintiffs provide a forum in which the public can "swing dance" to live music and song. In addition to entertainment, it is also considered a form of art and expression.

40. In spite of the difficulties any minority would face in developing a business, though his long time efforts and endeavors, plaintiff Akhtar found a reasonable way to make a living through developing art forms. Moreover, plaintiffs form of art and expression are an asset to all residents of New York City and, in particular, the tourist industry.

41. Participants in plaintiffs' music and dance forum are asked to come into the premises and offered seating. While plaintiffs deny outdoor noise is occurring, if sound were to "leak out," by chance upon opening a door to enter, that sound would be indistinguishable from the everyday street noise.

42. Upon information and belief, the timing of defendants' unscrupulous crackdown on plaintiffs is highly suspicious. There is no logical explanation why defendants' conduct would suddenly occur out of nowhere, particularly where no offense has been committed. Defendants' conduct, upon information and belief, suggests defendants Abrams, NYCDEP, and Aggarwala are attempting to force plaintiff's out of business to make way for casino gambling.

43. Another theory garnered from recent press reports indicates the presence of religious zealotry within the ranks of City Hall. It may be that someone among those ranks is upset that people are dancing in public places, and they may find dancing is upsetting to their religious "sensibilities." But religious zealots' "rights" cannot extinguish plaintiffs' rights to free expression in accordance with the First Amendment of the United States Constitution. Nor can defendant Adams impose any religious beliefs upon citizens, nor establishment, in the City of New York.

44. Whatever the reasoning, and none of it makes any sense, defendants Abrams, NYCDEP, and Aggrarwala may not restrain plaintiffs from the right to defend against defendants' very own complaints. But they are doings so by holding back evidence, some of which may be exculpatory, in an unlawful and unconstitutional manner that has damaged plaintiffs.

45. As a result of defendants Adams, NYCDEP, and Aggarwala's acts and/or

13

omissions, plaintiffs have been damaged and suffered serious harm, and will continue to suffer harm into the future unless restrained otherwise.

Wherefore, plaintiffs ask for judgment against defendants Adams, NYCDEP, and Aggarwala restraining them from preventing plaintiffs the right to defend against defendants' complaints, along with compensatory damages, punitive damages where allowed, court costs, attorney's fees, and other just relief.

## Count Four

### Pendent Jurisdiction
### Intentional, Reckless, and Negligent Infliction of Emotional Distress upon Plaintiff Akhtar by Defendants

46. Plaintiffs repeat the allegations in each and every paragraph and line above as if set forth at length herein.

47. As a result of all defendants' negligent, reckless, and/or intentional wrongful conduct, or acts or omissions, these defendants have inflicted upon plaintiff Akhtar severe emotional distress resulting in damage and serious harm.

Wherefore, plaintiffs ask for judgment against defendants restraining them for further inflicting emotional distress upon plaintiff Akhtar, and for compensatory damages, along with punitive damages where allowed, court costs, attorney's fees, and other just relief.

## Count Five

## Fraud

48. Plaintiffs repeat the allegations in each and every paragraph and line above as if set forth at length herein.

49. All defendants are issuing and punishing plaintiffs by issuing , or causing to be issued summonses,  and wrongfully prosecuting plaintiffs with the use of fraudulently obtained "evidence."

50. Defendants continue this fraudulent conduct and plaintiffs have been severely damaged,  and will continue to be damaged, by defendants' fraud.

Wherefore, plaintiffs ask for judgment against defendants for  restraining them from continuing their fraudulent conduct, for compensatory damages, along with punitive damages where allowed, court costs, attorney's fees, and other just relief.


Dated:  July 28, 2023         *Anthony N. Iannarelli Jr.*
                              Anthony N. Iannarelli Jr.
                              Attorney for Plaintiffs

<u>Rule 11 Acknowledgement by Attorney Anthony N. Iannarelli Jr.</u>

Under Federal Rule of Civil Procedure <u>R</u>. 11, and by signing below, I certify to the best of my knowledge, or upon information and belief, the complaint (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or not by frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically identified, will likely have factual support after a reasonable opportunity for investigation or discovery; and (4) the complaint otherwise complies with Rule 11.

Dated:  July 28, 2023                               /s/ *Anthony N. Iannarelli Jr.*
                                                              Anthony N. Iannarelli Jr.
                                                              74 Lafayette Avenue
                                                              Suite 202 #116
                                                              Suffern, NY 10901
                                                              212-431-1031
                                                              Attorney for Plaintiffs

## Declaration in Verification of Complaint

Anthony N. Iannarelli Jr., an Attorney at Law of New York, declares and affirms to the following:

1. I am the trial attorney retained by plaintiffs Mohamed John Akhtar and La Buca Restaurant, Inc. d/b/a Swing 46 Jazz and Supper Club, in this complaint;

2. I verify that the Complaint is for, and on behalf of plaintiffs, and was duly prepared by me upon the request of plaintiffs;

3. I verify that the facts stated therein have been assembled by me, and that the allegations therein are true and correct based upon my direct knowledge, or upon information and belief;

4. For any facts that I cannot verify upon my direct knowledge, I can declare and verify they are offered upon my information and belief, and the sources of those facts have been affirmed to me as true and correct by reputable and reliable sources.

5. I declare under the penalty of perjury that the foregoing statements made by me are true and correct to the best of my knowledge.

Dated July 28, 2023          /s/ *Anthony N. Iannarelli Jr*
                             Anthony N. Iannarelli Jr.
                             74 Lafayette Avenue
                             Suite 202 #116
                             Suffern, NY 10901