UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— |
|
MOHAMED JOHN AKHTAR and LA BUCA | |
RESTAURANT, INC. d/b/a SWING 46 JAZZ | |
AND SUPPER CLUB, | |
                         Plaintiff | |
| |
         -against- | 23-CV-6585 (JGLC)(VF)
| |
ERIC ADAMS, Mayor of the City of New | |
York, ROHIT T. AGGARWALA, New York | |
City Department of Environmental Protection, | |
ERIC I. EISENBERG and JOHN AND JANE | |
DOES ONE THROUGH THIRTY, | |
| |
             Defendants | |
| |
———————————————————————— |

**MEMORANDUM OF LAW IN SUPPORT OF ERIC EISENBERG'S MOTION TO
DISMISS PURSUANT TO RULES 12(B)(1), 12(B)(2), 12(B)(4), 12(B)(5) AND 12(B)(6)**

**Table of Contents**

PRELIMINARY STATEMENT……………………………………………………………...1

ARGUMENT…………………………………………………………………………………...4

The Court Should Dismiss the Complaint for Lack of Ripeness, and because it seeks Avoiding Legally Authorized OATH Noise Ticket Proceedings (F.R.C.P. 12(b)(1))…………….4

The Court Should Dismiss the Complaint for Lack of Personal Jurisdiction over the Undersigned, in light of Insufficient Process and Insufficient Service of Process (F.R.C.P. 12(b)(2),(4) and (5))……………………………………………………………………………8

The Residential Summons and Service Attempt…………………….……………8

The Business Summons and Service Attempt…………...……………..………...10

The Court Should Dismiss the Complaint for Failure to State a Claim against Eisenberg (F.R.C.P. 12(6))………………………………………………………………………..12

General Legal Standard Regarding Motions to Dismiss…………………………13

Plaintiffs Fail to State a Claim for Fraud (Count Five)………………………….14

Akhtar Fails to State a Claim for Intentional/Reckless/Negligent Infliction of Emotional Distress (Count Four)……………………………………………...20

CONCLUSION…………………………………………………………………………..24

**Table of Authorities**

<u>**Caselaw**</u>

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)…………………..13, 15

*Cardoso v. Wells Fargo Bank, N.A.*, No. 21-CV-8189 (KMK) (S.D.N.Y.) (Opinion and Order dated September 20, 2022)……………………………………………………………...21-22

*Duran v. Henkel of America, Inc.*, 450 F.Supp.3d 337 (S.D.N.Y. 2020)………………………...19

*In re Fyre Festival Litigation¸* 399 F.Supp.2d 203 (S.D.N.Y. 2019)………………...15, 17, 18, 19

*Kaye v. Trump*, 2009 NY Slip Op 00452 (1st Dep't Jan. 29, 2009)………………….…………..23

*Lazar v. City of New York*, No. 21 Civ. 1748 (LGS) (S.D.N.Y., Opinion and Order dated July 26, 2022)……………………………………………………………………………..………21

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006)…………………………………...17

*Lombardo v. 333 East 49th Partnership, LP*, 2022 NY Slip Op 30665(U), Docket No. 10424/2020 (March 3, 2022)……………………………………………………...…3, 9

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015)…….….17

*Luckett v. Bure*, 290 F.3d 493 (2d Cir. 2002)………………………………………….....4

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000)……………………………………….4

*McCormack v. Goldstein*, 204 A.D.2d 121 (1st Dep't 1994)…………………………….....3, 9

*Mendez v. Banks*, No. 22-2663 (2d Cir. Apr. 12, 2003)……………………………..…….6

*Parkcentral Glob. Hub. Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198 (2d Cir. 2014)………13

*Sesto v. Slaine*, 171 F.Supp.3d 194 (S.D.N.Y. 2016)…………………………………………20-21

*Specht v. City of New York*, 15 F.4th 594 (2d Cir. 2021)…………………………….…22, 23

## Administrative Decisions

*Dietmar Detering (CC) v. Westhouse Hotel New York*, Appeal No. 2300439 (OATH Appeals Division, June 29, 2023) (available at https://archive.citylaw.org/wp-content/uploads/sites/12/ecb/2300439.pdf)...........................................................................16, 19

*NYC v. M-R La Casa Delos Hits*, Appeal No. 1300125 (OATH Appeals Division, May 30, 2013) (available at https://archive.citylaw.org/wp-content/uploads/sites/12/ecb/Long%20Form%20Orders/2013/1300125.pdf)........................16, 19

## State Statute or Local Law

N.Y.C. Admin. Code. § 24-202…………………………………………………………………..20

N.Y.C. Admin. Code. § 24-261…………………………………………………...1, 4, 19, 20, 23

N.Y. Civ. Rights Law §76-A……………………………………………………………3, 20, 24

## Rules

F.R.C.P. 4…………………………………………………………………...2, 8, 9, 10, 11

F.R.C.P. 9(b)………………………………………………………………13, 17, 20, 24

F.R.C.P. 12……………………………………………….…………………………*passim*

N.Y. C.P.L.R. § 308…………………………………………………………..2, 9, 10, 11

OATH Hearing Rule § 6-07…………………………………………………………….5

OATH Hearing Rule § 6-12……………………………………………………………4

OATH Hearing Rule § 6-13……………………………………………………………4

OATH Hearing Rule § 6-19…………………………………………………………….5

OATH Hearing Rule § 6-21…………………………………………………………...5, 17

The undersigned, Eric Eisenberg,[1] respectfully submits this memorandum of law in support of his motion to dismiss all claims which may be asserted against him for lack of subject matter jurisdiction (F.R.C.P. 12(b)(1)), lack of personal jurisdiction F.R.C.P. 12(b)(2) based on insufficient process (F.R.C.P. 12(b)(4)) and/or insufficient service of process (F.R.C.P. 12(b)(5)), and failure to state a claim against him upon which relief can be granted (F.R.C.P. 12(b)(6).

## PRELIMINARY STATEMENT

New York City's environmental and noise laws provide, in a section titled "Citizen's Complaint," that, aside from government personnel, any other person may complain to New York City's Department of Environmental Protection ("DEP") about specified noise violations, and provide to DEP evidence of such violation. N.Y.C. Admin. Code. § 24-261(a). These laws further provide that DEP can act on such complaint and evidence, within 30 days, by (1) issuing a notice of violation (*i.e.*, a summons) against the alleged noise polluter and thereby initiating a proceeding before the Environmental Control Board, (now, the "Office of Administrative Trials and Hearings" or "OATH"), or (2) disqualifying a meritless complaint. N.Y.C. Admin. Code. § 24-261(b),(d). Where DEP fails to so act within 30 days, the complaining citizen is empowered by law to instead initiate the OATH proceeding by issuing the notice of violation. N.Y.C. Admin. Code. § 24-261(b),(c), and (e).

Plaintiff LA BUCA RESTAURANT, INC. d/b/a SWING 46 JAZZ AND SUPPER CLUB ("Swing 46") alleges it received such administrative summonses for noise violations issued by plural "private citizens", (D.I. 1, Complaint, ¶ 15) but, instead of proceeding first with even a single hearing on the merits before OATH, chose to circumvent and collaterally attack the legally

---

[1] The undersigned does not have the middle initial "I", unlike the Eric I. Eisenberg of West 54th or 55th Street in Manhattan identified in the Complaint (D.I. 1) and/or in the Summonses (see D.I. 20 and 23) issued in this case. However, in light of Plaintiffs' imprecision as to which Eisenberg is sought to be sued, the undersigned is filing the instant motion to avoid uncertainty as to his liability were a default to occur.

authorized administrative process and make a federal case out of it. Absent a merits determination before OATH, there is no Article III case or controversy here, the dispute is not ripe, and this Court should moreover exercise its discretion to allow the subject of this dispute (noise summonses/tickets) to instead be heard before the OATH administrative tribunal, as was New York City Council's design.

Process and service of process are moreover insufficient, and personal jurisdiction over the undersigned is thus lacking. Plaintiffs' attorney, per his affidavit (D.I. 23) attempted service by leaving a copy of a summons directed to Eric I. Eisenberg and a complaint with an unhelpful concierge at the main floor / lobby of the Chrysler Building, who ripped up the papers. Notwithstanding the clear lack of discretion of this concierge and that plaintiff does not allege that defendant works in the Chrysler Building lobby, no rule permits service merely by leaving with a person of suitable age and discretion at a defendant's place of business. *See* F.R.C.P. 4(e); N.Y. C.P.L.R. § 308.

Plaintiffs' attorney, per his other affidavit, (D.I. 20) also attempted service by providing a copy of a summons and complaint to an employee at a West 46th Street apartment building. But the provided summons was addressed and directed to Eric I. Eisenberg of West 55th Street, who Plaintiffs' attorney admits is not a correct defendant in this case. *Id.* This is a failure of process. F.R.C.P. 4(a)(1)(B) ("A summons must: [] be directed to the defendant"). Moreover, Plaintiffs' attorney admits that the employee did not arrest his progress to any apartment unit, but rather Plaintiffs' attorney "[w]as (sic.) "directed to a dwelling that the superintendent verified where an Eric Eisenberg resided." *Id* at ¶ 6. As discussed herein, while New York courts employ a legal fiction that, for service of process, a defendant's apartment residence extends beyond their individual apartment when a building employee blocks access to the apartment, such legal fiction

does not apply where, as here the building employee does not arrest the process server's movement. *Lombardo v. 333 East 49th Partnership, LP*, 2022 NY Slip Op 30665(U), Docket No. 10424/2020 (March 3, 2022) ("Plaintiff's service of the pleadings on Dziena by delivery to her alleged doorman is insufficient absent an indication that the doorman refused to provide access to Dziena's apartment.") (collecting authority); *McCormack v. Goldstein*, 204 A.D.2d 121 (1st Dep't 1994) (dismissing for lack of personal jurisdiction where "plaintiff's process server was not barred from proceeding to defendant's apartment by the doorman of defendant's building").

Lastly, Plaintiff appears to assert two claims against Eric I. Eisenberg, one for fraud arising out of an alleged issue with the location or methodology by which Eric I. Eisenberg obtained evidence against Swing 46 submitted to the DEP, and for negligent/reckless/intentional infliction of emotional distressed because plaintiff Akhtar was allegedly distressed because his Swing 46 business received administrative noise summonses arising out of this alleged fraud. Plaintiff fails to plead the elements of fraud, especially under the heightened pleading standards of F.R.C.P. 9(b). Moreover, given that the receipt by a business of administrative summonses is a common everyday occurrence, and not extreme or outrageous, and given that the summonses are not alleged to cause Akhtar to fear for his safety, Akhtar has failed to plead any indicia of genuineness of his emotional distress claims such as would allow his emotional distress claims to proceed under New York law. Plaintiffs also fail to adequately plead "actual malice," as is required under anti-SLAPP Section 76-A of the Civil Rights Law.

## ARGUMENT

### The Court Should Dismiss the Complaint for Lack of Ripeness, and because it seeks Avoiding Legally Authorized OATH Noise Ticket Proceedings (F.R.C.P. 12(b)(1))

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of establishing that jurisdiction exists by a preponderance of the evidence. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In ruling on such a motion, a court may consider evidence outside of the pleadings without converting the motion to dismiss into a motion for summary judgment. *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002).

New York City's environmental and noise laws provide that any (non-government personnel) person may complain to New York City's Department of Environmental Protection ("DEP") about specified noise violations, and provide to DEP evidence of such violation. N.Y.C. Admin. Code. § 24-261(a). DEP can act on such complaint and evidence, within 30 days, by either ticketing the alleged noise polluter to initiate a proceeding before OATH" or by disqualifying a meritless complaint. N.Y.C. Admin. Code. § 24-261(b),(d). Where DEP finds nothing wrong with the evidence but fails to promptly act, the complaining citizen can instead initiate the OATH proceeding by issuing the notice of violation. N.Y.C. Admin. Code. § 24-261(b),(c), and (e).

OATH has extensive rules governing the conduct of its administrative hearings held by Hearing Officers, for the protection of Respondents who receive summonses, such as Swing 46. For example, OATH Hearing Rule § 6-12(a) provides that "[t]he Petitioner has the burden of proving the factual allegations contained in the summons by a preponderance of the evidence." OATH Hearing Rule § 6-13(b) provides that the Hearing Officer, at the hearing, may "[u]pon

request of a party, issue subpoenas or adjourn a hearing for the . . . production of documents or other types of information when the Hearing Officer determines that necessary and material evidence will result." *See also* OATH Hearing Rule § 6-07. OATH's Hearing Officers have the power to sanction parties that fail to respond to discovery orders or requests, by "tak[ing] whatever action he or she deems appropriate including but not limited to preclusion of evidence or witnesses." OATH Hearing Rule § 6-07(c). Parties dissatisfied with Hearing Officer decisions can appeal to OATH's Appeals Unit. OATH Hearing Rule § 6-19.

Thus, Swing 46 has been afforded a chance to challenge its noises summonses before OATH on the merits, and has procedural safeguards, at the hearing before an OATH Hearing Officer, with respect to any alleged failure by the DEP to adequately produce evidence in response to its requests.

But Swing 46 does not allege that it participated in even a single merits-based hearing before an OATH Hearing Officer (or that it requested production of evidence at such a hearing), even though it had received "at least half a dozen" "summonses over alleged noise complaints issued by private citizens." D.I. 1, ¶¶ 15, 17.[2] Rather, Swing 46 simply indicates, for one of these summonses, that a default occurred because Plaintiffs became confused as to the date. D.I. 1, ¶ 24. This alleged default is not a final determination of OATH, as OATH has procedures for vacating such determinations. OATH Hearing Rule § 6-21, *titled* "Request for a New Hearing after a Failure to Appear (Motion to Vacate a Default)." Nor is it even asserted that this alleged default even pertains to a noise summons based on activities of Eric I. Eisenberg, as opposed, for example, to another of the alleged "private citizens" taking on Swing 46's noise pollution by issuing summonses.

---

[2] Swing 46 does not even allege that it requested ***any*** evidence from Eric I. Eisenberg, despite alleging its awareness of a post office box for him. D.I. 1, ¶ 7.

While Swing 46 may assert that the OATH-returnable noise tickets issued against it are meritless and based on an inappropriate form of evidence, this Court should not permit that dispute to be litigated in Federal Court in the first instance, when it belongs in front of OATH. The Second Circuit recently explained that:

> Ripeness is a constitutional prerequisite to exercise of jurisdiction by federal courts. For a cause of action to be ripe, and therefore justiciable, it must present a real, substantial controversy, not a mere hypothetical question. A claim is not ripe if it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all. The doctrine's major purpose is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements. . . [Plaintiffs'] prediction, however likely to become true, does not suffice to ripe Plaintiffs' claims because it relies on state administrative decisions that have not yet been made."

*Mendez v. Banks*, No. 22-2663 (2d Cir. Apr. 12, 2003) (citations omitted).

Plaintiffs claims likewise rely upon the outcome of future administrative decisions (of OATH). In the absence of these decisions, Plaintiffs' claims are not real and substantial but rather are merely hypothetical. Numerous questions as to the purportedly problematic noise summonses and their outcome and effect on Plaintiffs can only be answered by Swing 46 choosing to engage, and actually engaging, with the OATH tribunal as to its noise summons proceedings. For example:

- Will Swing 46 seek to or be able to have OATH reopen (vacate) the one default it alleges, so that it can obtain a noise hearing on the merits for this one summons?

- Will OATH order production of evidence in connection with initial merits-based hearings on Swing 46's six summonses?

- Will OATH issue evidentiary or other sanctions against any party for alleged wrongful withholding of evidence?[3]

- What evidence will be offered in support of noise tickets at any merits-based hearing?

- Will that evidence be found legitimate, or fraudulent?

- Will that evidence, when weighed in combination with Swing 46's defenses, be found sufficient by OATH to make out a noise violation?

- What monetary penalty, if any, will be imposed by OATH against Swing 46 (and will Swing 46 even bother to pay that penalty)?

- Will the reasoning of the Hearing Officer in issuing a decision be legally in error?

- Will such error be fixed by an appeal to OATH's Appeals Unit?

At the current stage, as alleged, Plaintiffs have suffered no legally cognizable harm. Swing 46 has received some noise summonses. It also has one potentially vacatable default issued against it based on activities of persons not specifically alleged to be "Eric I. Eisenberg," stemming from Swing 46's failure to appear at a merits-based hearing. As to the other of its six summonses, no activity beyond receipt of the summons is alleged. There is no reason for this Court to entangle itself in a completely abstract, hypothetical, unripe dispute whose outcome is contingent on so many future occurrences before an administrative tribunal. Rather, Swing 46 should, at least in the first instance, attend merits-based hearings before OATH, where it can present its arguments regarding the merits of the noise tickets, and regarding production of evidence, so that the many hypothetical aspects of this dispute can be made more real and particularized.

---

[3] Again, no claim is made that Eric I. Eisenberg was requested by Plaintiffs to produce any evidence.

Dismissal is respectfully requested under F.R.C.P. 12(b)(1) (lack of subject matter jurisdiction).

### The Court Should Dismiss the Complaint for Lack of Personal Jurisdiction over the Undersigned, in light of Insufficient Process and Insufficient Service of Process (F.R.C.P. 12(b)(2),(4) and (5))

Plaintiff's attorney obtained two improperly directed summonses, and, per his affidavits (D.I. 20 and D.I. 23) provided them to building employees at a West 46th Street residential apartment complex and the lobby of 405 Lexington Ave, (the Chrysler Building) respectively. Neither of the two summonses, nor their respective forms of service, are sufficient.

The Residential Summons and Service Attempt

Plaintiff's attorney obtained, and attempted to serve at a West 46th Street residential apartment complex, a summons made out to "Eric I Eisenberg" of "145 West 55th Street."[4] Plaintiff's attorney acknowledges that this Eric I Eisenberg of 145 West 54/55 Street is not a correct defendant. D.I. 20, ¶¶ 1-4. Accordingly, the Summons used in the residential attempt is improper pursuant to the Rules. F.R.C.P. 4(a)(1)(B) ("A summons must: [] be directed to the defendant.") For this reason alone, process is insufficient with respect to the residential attempt, and there is no personal jurisdiction over the undersigned created by the residential attempt.

But not only was the process for the residential attempt insufficient, but also service of this process was insufficient. Plaintiff's attorney was admitted to the West 46th street premises by a building employee, and "[w]as directed to a dwelling that the superintendent verified where an

---

[4] Plaintiff's attorneys affirmation refers to "145 west 54th Street" in paragraph 1, while the Summons identifies "145 West 55th Street." Presumably, one of these is a typo, and both are intended to refer to either 54th Street or 55th Street.

8

Eric Eisenberg resided . . . However, no one appeared to be home at that location." (D.I. 20, ¶ 6). Plaintiff's attorney then "displayed the documents to the superintendent."[5] (D.I. 20, ¶ 7).

F.R.C.P (4)(e) provides that service may be made by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," or by "following state law […]." NY CPLR § 308(2) allows for a similar form of service, although in place of the requirement that the person of suitable age and discretion "resides there," the CPLR instead requires a further mailing (which is not alleged by plaintiff's attorney to have occurred). New York courts have been clear that service may be made upon an apartment-dweller by providing a copy to an apartment complex building employee only when the employee halts the progress of the process server to the apartment; this is a sort of "legal fiction" that an apartment residence is deemed to extend to the gates of the complex only when access to the apartment is rendered impossible by building employees. *McCormack v. Goldstein*, 204 A.D.2d. 121, 611 N.Y.S.2d 185 (1st Dep't 1994) (affirming dismissal for lack of personal jurisdiction, as there was no NY CPLR § 308(2) service where server, who delivered papers to doorman, was not barred from proceeding to defendant's apartment by the doorman); *Lombardo v. 333 East 49th Partnership, LP*, 2022 NY Slip Op 30665(U), Index No. 10424/2020 (March 3, 2022) ("Plaintiff's service of the pleadings on Dziena by delivery to her alleged doorman is insufficient absent an indication that the doorman refused to provide access to Dziena's apartment.").

Additionally, there is no allegation that the building employee involved, a Mr. Caputo, resides in Eric I. Eisenberg's apartment, or indeed even resides in the apartment complex.

In sum, the residential attempt is insufficient for many reasons, including that:

---

[5] Plaintiffs' attorney does not explicitly state that he provided a copy of the documents to the superintendent, although he does summarize a conversation with this individual relating to the handling of the documents.

- The summons is not directed to the defendant, (F.R.C.P. (4)(a)(1)(B)) but rather to an Eric I. Eisenberg of 55th/54th Street who is admitted not to be the correct defendant;

- Mr. Caputo is not alleged to reside in the defendant's dwelling or usual place of abode; (F.R.C.P. (4)(e)(2)(B));

- Mr. Caputo was alleged to have directed the server to the relevant apartment rather than blocking access;

- There is no allegation that a copy of a summons and complaint was actually provided to Mr. Caputo; and

- No additional mailing is alleged (NY CPLR § 308(2)).

<u>The Business Summons and Service Attempt</u>

Plaintiff's attorney obtained, and alleges he attempted to serve in the lobby of the Chrysler Building, a second summons made out to "Eric I. Eisenberg," this time with an associated address of the 48th floor the Chrysler Building (where an associated law firm is alleged to exist).[6] D.I. 23. As discussed above, Plaintiff's attorney acknowledges that Eric I Eisenberg of 145 West 54/55 Street is not a correct defendant. D.I. 20, ¶¶ 1-4. Yet this second summons nonetheless is still directed to "Eric I. Eisenberg," and, absent any explanation that a different "Eric I. Eisenberg" from he whom resides at the 145 West 54/55 Street address works on the 48th Floor of the Chrysler Building, it appears that the summons is still directed to the same admittedly improper "Eric I. Eisenberg" individual who is not alleged to be a defendant.[7] Accordingly, the Summons used in the residential attempt is improper pursuant to the Rules. F.R.C.P. 4(a)(1)(B) ("A summons must: [] be directed to the defendant.") For this reason, process

---

[6] Plaintiff's attorneys affirmation refers to "145 west 54th Street" in paragraph 1, while the Summons identifies "145 West 55th Street." Presumably, one of these is a typo, and both are intended to refer to either 54th Street or 55th Street.
[7] Again, the undersigned does not have "I" as a middle initial.

is insufficient with respect to the business attempt, and there is no personal jurisdiction over the undersigned created by the business attempt.

Again, not only was the process for the business attempt insufficient, but also service of this process was insufficient. Plaintiff's attorney alleges he left the papers with a (uncooperative) concierge in the Chrysler Building lobby, who ripped the papers up. (D.I. 23, ¶¶ 5-9).  F.R.C.P. (4)(e)(2) contains no provision for service on an individual by leaving a copy at a person's business. NY CPLR § 308(2) provides for service by both (i) "delivering the summons within the state to a person of suitable age and discretion at the actual place of business . . . of the person to be served" and (ii) accomplishing a specified mailing. Here, the uncooperative, paper-ripping concierge clearly lacks suitable discretion, and is not alleged to be at the actual place of business of any defendant, but rather was at the Chrysler Building lobby (Eric I. Eisenberg is not alleged to work in the lobby, but at most is alleged to be associated with a law firm on the 48th Floor). Moreover, no mailing, such as is required for service under NY CPLR § 308(2), is alleged.

Again, in sum, the business attempt is insufficient for many reasons, including that:

- The summons is not directed to the defendant, (F.R.C.P. (4)(a)(1)(B)) but rather apparently to an "Eric I. Eisenberg" who is admitted not to be the correct defendant;

- The unhelpful concierge is not a person of suitable discretion (NY CPLR § 308(2));

- The unhelpful concierge is not located at the "actual place of business" of any defendant (NY CPLR § 308(2)), but rather was located at an office building lobby; and

- No additional mailing is alleged (NY CPLR § 308(2)).

As both process and service of process is insufficient in connection with both the residential and the business service attempt, dismissal is respectfully requested under F.R.C.P.

12(b)(2) (lack of personal jurisdiction with respect to the undersigned), 12(b)(4) (insufficient, *e.g.* misdirected, process) and 12(b)(5) (insufficient service of process).

### The Court Should Dismiss the Complaint for Failure to State a Claim against Eisenberg (F.R.C.P. 12(6))

Initially, Counts One through Three do not appear to be alleged with respect to Eric I. Eisenberg. Counts One and Two appear to rely on conduct of government entities and employees in allowing a default to occur and in failing to turn over evidentiary materials requested from DEP. Plaintiffs specifically refer to "defendants NYCDEP and Aggarwala actions, along with defendant Adams' indifference," "defendants Abrams (*sic.* Adams), NYCDEP and Aggarwala's noncompliance, and their unconstitutional and unlawful conduct," and "defendants' Adams, NYCDEP, and Aggarwala's acts or omissions in denial of these [Constitutional] rights." (D.I. 1, ¶¶ 32, 33, 37). Count Three is specifically captioned as pertaining to "Denial of Plaintiffs' right to Free Expression by defendants Abrams (*sic*. Adams), NYCDEP, and Aggarwala . . ."

Counts Four and Five, on the other hand, are the only ones alleged with respect to "all defendants." (D.I. 1, ¶¶ 47, 49).

Accordingly, Counts One through Three are not understood to be alleged as against "Eric I. Eisenberg," and should, to the extent necessary, be dismissed with respect to undersigned as inadequately pled and as failing to state a claim.

Plaintiffs' count for Fraud (Count Five) and Akhtar's claim for Intentional/Reckless/Negligent Infliction of Emotional Distress (Count Four) should likewise be dismissed for failure to state a claim. Plaintiffs, while applying a conclusory label of "fraudulent" to Eric I. Eisenberg allegedly obtaining evidence by touching a phone directly to a speaker

and/or window of its business, fail to plead the elements of fraud, and particularly fail to do so under the heightened requirements of F.R.C.P. 9(b), requiring that the pleading be with particularity. The emotional distress Count, which, as to Eric I. Eisenberg, is dependent upon the same inadequately alleged fraud, fails for the same reasons. The emotional distress Count also fails because the allegations, which ultimately amount to institution of allegedly inadequately supported or baseless administrative noise ticket proceedings, are insufficiently "extreme" or "outrageous", and lack sufficient indicia of genuineness as to the alleged emotional harm to Akhtar, to support such claims under New York law.

<u>General Legal Standard Regarding Motions to Dismiss</u>

To survive a motion to dismiss under Rule 12(b)(6), Fed R. Civ. P. "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotations omitted). A court must disregard legal conclusions, which are not entitled to the presumption of truth and instead examine the well-pleaded allegations and 'determine whether they plausibly give rise to an entitlement to relief." *Id*. At 679, 129 S.Ct. 1937. "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff[s'] claims are barred as a matter of law." *Parkcentral Glob. Hub. Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 208-209 (2d Cir. 2014) (quotations omitted).

<u>Plaintiffs Fail to State a Claim for Fraud (Count Five)</u>

Plaintiffs' threadbare and conclusory allegations as to fraud by Eric I. Eisenberg, which primarily rely on simply labeling unidentified, but perhaps phone-based, evidence allegedly gathered by Eric I. Eisenberg as "fraudulent," fall well short of applicable pleading requirements. These allegations appear to focus on the following:

- He is "issuing summonses for 'noise' complaints against plaintiffs." (D.I. ¶ 8);

- He "fraudulently collect[s] 'evidence' against 'Restaurant Row' merchants by placing a listening device, that according to witnesses appears to be a cell phone, directly against speakers or glass windows of plaintiff's establishment and then claiming the business is violating a City of New York noise code. [He] then files a complaint with defendant NYCDEP for which, if his complaint is sustained, he fraudulently collects a 'bounty' . . . . (D.I. ¶ 9);

- "Recently plaintiffs began receiving summonses over alleged noise complaints issued by private citizens, among them defendant [Eric I.] Eisenberg. There is no evidence that members of defendant NYCDEP actually do the testing to determine the level of noise emanating from plaintiffs' establishment." (D.I. ¶ 15);

- ". . . Because plaintiffs have received at least a half dozen of these summonses, within one being in default, they face crippling fines." (D.I. ¶ 17);

- ". . .[T]hey are not going after varmints for bounty, but rather, running merchants into the ground with excessive fines based, as is known in some cases, upon fraudulently obtained 'evidence.'" (D.I. ¶ 19);

- "Plaintiffs' (sic.) have been damaged by defendants' scheme to fraudulently issue noise complaints risking the viability of the business. The business has been issued numerous

14

summonses, with one having gone into default after being informed, wrongly, the case, had been put over to another date." (D.I. ¶ 24);

- ". . . [W]hile plaintiffs deny they are producing sound that would be actionable, the sound, if any, cannot be distinguishable from the din of sound produced by automobiles, people on the sidewalk, and other establishments." (D.I. ¶ 28);

- "Plaintiffs assert that the issuance of alleged noise complaints are being done fraudulently by individuals, among them defendant [Eric I.] Eisenberg, for the purpose of harassment and wrongly attempting to collect money from plaintiff through a fraudulent bounty system sustained by defendants Adams, NYCDEP, and Aggarwala, if not upon their acts, then omissions." (D.I. ¶ 29).

These allegations are plainly insufficient to plead fraud. "Under New York law, fraud requires proof of (1) a material misrepresentation or omission of fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." *In re Fyre Festival Litigation¸* 399 F.Supp.2d 203, 213 (S.D.N.Y. 2019) (collecting authority) (internal quotations and footnote omitted).

Plaintiffs, when disregarding, per, *Ashcroft v. Iqbal*, their legal conclusions that various aspects of the N.Y.C. Admin Code § 24-261 authorized citizen complaint process are "fraudulent," fail with respect to each element of fraud. Plaintiffs do not plead "a material misrepresentation or omission of fact." While they allege Eric I. Eisenberg collects evidence by placing a cell phone directly against speakers or glass windows of the Swing 46 establishment,[8] there is no explanation of how this constitutes a misrepresentation or omission of fact, let alone a material one. For example, there is no allegation that Eric I. Eisenberg represented or implied

---

[8] The undersigned denies that he ever engaged in such action, he accepts such allegation is true for purposes of this motion to dismiss under F.R.C.P. 12(b)(6).

that evidence (e.g. cell phone video footage) taken while touching a cell phone to speakers or glass was taken from a different location (e.g. from far away). Obtaining noise pollution evidence (e.g. cell phone video footage) from locations including, *inter alia*, directly touching an possible sound source appears sensible, as a way to rule out background noise and explicitly confirm whether the sound is (or is not) coming from an outdoor speaker or from the establishment's interior. Inclusion of such evidence (e.g. as part of cell phone video footage) would be in no way inherently a misrepresentation or omission, but rather would shed further light on the sound setup of the Swing 46 establishment.

There is also no adequate pleading with respect to "materiality" of any misrepresentation or omission, partially because Swing 46 failed to plead the section of the New York City noise code with which it is being charged. While Swing 46 professes a belief that the noise it is making is not loud enough to be actionable, at least one citizen-enforceable section of the Noise Code (e.g. Admin Code. § 24-244(b)) has no requirement that sound be of a particular decibel level. *See e.g. NYC v. M-R La Casa Delos Hits*, Appeal No. 1300125 (OATH Appeals Division, May 30, 2013) (finding low sound level to be legally irrelevant to § 24-244(b) violation) (available at https://archive.citylaw.org/wp-content/uploads/sites/12/ecb/Long%20Form%20Orders/2013/1300125.pdf); *Dietmar Detering (CC) v. Westhouse Hotel New York*, Appeal No. 2300439 (OATH Appeals Division, June 29, 2023) (same for citizen-prosecuted § 24-244(b) violation) (available at https://archive.citylaw.org/wp-content/uploads/sites/12/ecb/2300439.pdf).

Plaintiffs also fail to plead, even generally, knowledge of Eric I. Eisenberg of any fact's falsity.

16

And Plaintiffs fail to plead an intent of Eric I. Eisenberg to induce reliance by the plaintiff, or justifiable reliance by Plaintiffs on any inducement. Plaintiffs, for example, do not allege that Eric I. Eisenberg intentionally made a statement to Plaintiffs to trick them into paying a fine pre-hearing rather than defending themselves at an OATH hearing on the actual merits of the noise violation. Plaintiffs do not allege that they justifiably relied on such a statement by paying the fine. Rather, Plaintiffs have been clear that, far from being intentionally induced to justifiably rely on any statement or action or omission of Eric I. Eisenberg, Plaintiffs disagree with the noise violation assertions, and have only not yet defended on the merits of same due to confusion (not alleged to stem from any action of Eric I. Eisenberg) as to the hearing date of one of their six summonses.

Damages are likewise not pled. There is no allegation that Swing 46 paid ***any amount*** of money towards any noise summons. While a default is pled on one summons due to Plaintiffs' confusion, as discussed above, an initial default before OATH is nonfinal and correctable. *See* OATH Hearing Rule § 6-21, *titled* "Request for a New Hearing after a Failure to Appear (Motion to Vacate a Default)."

Plaintiffs' fraud allegations are even more deficient when F.R.C.P. 9(b)'s heightened fraud-pleading requirements are considered. F.R.C.P. 9(b) requires a complaint sounding in fraud to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Fyre Festival¸* 399 F.Supp.2d at 213 (S.D.N.Y. 2019) quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). As to scienter, the plaintiff must "provide facts giving rise to a strong inference of fraudulent intent." *Id.*, citing and quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 176 (2d Cir. 2015). Plaintiff does not do so.

Plaintiff does not specify *any* statement of Eric I. Eisenberg, but at most alleges that Eisenberg I. Eisenberg's collection of noise-related evidence involved touching a speaker or window with a cellphone, and that Eric I. Eisenberg "claim[s] the business is violating a City of New York noise code." This is a highly generalized legal position attributed to Eric I. Eisenberg, not a specific statement of Eric I. Eisenberg. Plaintiff's threadbare allegations do not identify what statement was made by Eric I. Eisenberg, for example with respect to a particular section of law allegedly violated by Swing 46 according to Eric I. Eisenberg, what behavior of Swing 46 allegedly constituted a violation according to Eric I. Eisenberg, when the violation(s) by Swing 46 occurred according to Eric I. Eisenberg, or what specific evidence was used by Eric I. Eisenberg to support his claim (e.g. whether it included video footage taken from a variety of locations or only from a single location).

Plaintiffs' identification of the speaker is flawed. Plaintiffs complain of half-a-dozen "summonses over alleged noise complaints issued by private citizens, among them defendant [Eric I.] Eisenberg." (D.I. 1, ¶¶ 15, 17). As multiple private citizens allegedly issued summonses, Plaintiffs' vague allegations fail to attribute any particular summons to any particular citizen. More specifically, no particular summons is attributed to Eric I. Eisenberg. Failure to attribute any particular statement to any particular speaker dooms the fraud claim. *Fyre Festival*, 399 F.3d Supp.3d at 213 (S.D.N.Y. 2019) (Rejecting sweeping references to collective fraudulent actions of multiple persons, and also "group pleading" outside of the securities fraud context) (collecting authority).

Plaintiff also does not state where and when the allegedly fraudulent statements were made. Indeed, as to "when," not a single date appears to be mentioned anywhere in the complaint, either as to when evidence was collected or as to when Eric I. Eisenberg complained

to the DEP or as to when any relevant summonses were received by Swing 46. Again, this dooms the fraud cause of action. *Fyre Festival*, 399 F.3d Supp.3d at 214 ("The lack of an allegation of when the statements were made dooms the pleading's particularity under Rule 9(b)") (citation omitted). As to "where," nothing seems to mentioned in the complaint beyond conclusory allegations that Eric I. Eisenberg complained to the DEP – there is no mention of where such communications took place nor the mode of communication.

Plaintiffs also do not explain why any (inadequately described) statement of Eric I. Eisenberg was fraudulent, for example because, as discussed above, Plaintiffs neglect to identify any particular section of the noise code being asserted against it, and fail to explain any deception engaged in by Eric I. Eisenberg with respect to demonstrating that Swing 46 violated that section. Instead, Swing 46 simply asserts that it does not think it is loud enough to violate New York City's noise laws, despite its loudness being irrelevant to at least one section of the noise code. *See M-R La Casa Delos Hits* and *Westhouse* OATH Appeals decisions (cited above).

Nor do Plaintiffs provide facts giving rise to any strong inference of fraudulent intent, beyond pointing to the general aspect of City Council's chosen statutory scheme of N.Y.C. Admin Code §24-261's citizen complaint provisions that provide for a monetary award to be made to the citizen when a summons is upheld (and paid). This fact of payment is equally applicable to any citizen making use of this provision of law, and simply participating in a paid program, specifically authorized by law, to reduce noise pollution in New York City, fails to create any "strong inference of fraudulent intent." A generalized profit motive has been held insufficient. *Duran v. Henkel of America, Inc.*, 450 F.Supp.3d 337, 354 (S.D.N.Y. 2020) ("simply alleging a defendant's self-interested desire to increase sales does not give rise to an inference of fraudulent intent.") (collecting authority) (dismissing common law fraud claim).

Additionally, Plaintiffs fail to sufficiently allege "actual malice" (i.e. knowledge or reckless disregard of the falsity of communications) on the part of Eric I. Eisenberg, which is a required element in an "action involving public petition and participation." N.Y. Civ. Rights Law §76-A.  The instant lawsuit is such an action, because its claims are based upon "lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the of the exercise of the constitutional right of petition." Specifically, Plaintiffs are challenging lawful conduct, attributed to Eric I. Eisenberg, carried out pursuant to N.Y.C. Admin Code §24-261's citizen complaint provisions, of speaking to and/or petitioning the government for redress as to Swing 46's alleged noise pollution. Curbing noise pollution is a matter of great public interest, as detailed by City Council when it passed the noise control code. *See e.g.* N.Y.C. Admin. Code §202 (explaining the various public interests necessitating N.Y.C.'s noise laws).

Plaintiffs' wholly deficient Count Five for fraud should be dismissed.


<u>Akhtar Fails to State a Claim for Intentional/Reckless/Negligent Infliction of Emotional Distress (Count Four)</u>

Initially, Akhtar's claim for intentional/reckless/negligent infliction of emotional distress (Count Four), to the extent it is made against Eric I. Eisenberg, is based on or arises out of the same alleged fraud (and speech / government petitioning) as is alleged in Count Five, and thus fails under the heightened pleading standards of F.R.C.P. 9(b) (and of N.Y. Civ. Rights Law §76-A), for the reasons discussed above in connection with the fraud claim. *See Sesto v. Slaine*, 171 F.Supp.3d 194, 200-201 (S.D.N.Y. 2016) (applying Rule 9(b)'s pleading requirements, and dismissing, with respect to "four overpayment counterclaims [that] all arise from the same facts

and the same allegedly fraudulent actions" and holding that "Rule 9(b) is implicated not only by direct allegations of fraud, but for all averments of fraud and mistake, whatever may be the theory of legal duty") (internal citations and quotations omitted).

Akhtar alleges he owns Swing 46. (D.I. 1, ¶ 3). For his emotional distress claim, Akhtar formulaically alleges "[a]s a result of all defendants' negligent, reckless, and/or intentional wrongful conduct, or acts or omissions, these defendants have inflicted upon plaintiff Akhtar severe emotional distress resulting in damage and serious harm." (D.I. 1, ¶ 47). He elaborates slightly that "[t]he risk of losing his business has caused plaintiff Akhtar severe distress, affecting his heath (sic.) and well being (sic.)." (D.I. 1, ¶ 26). In sum, and taken in context with the rest of the complaint, Akhtar's claim amounts to him allegedly suffering severe emotional distress because a business he owns received six administrative noise tickets (issued by several private citizens, amongst them Eric I. Eisenberg).

New York courts do not uphold claims for negligent/reckless/intentional infliction of emotional distress based on such a commonplace occurrence as a business receiving administrative tickets. Rather, "[t]o plead a negligent infliction of emotional distress claim under New York law, a plaintiff must allege (1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm. To establish the fourth element, the plaintiff generally must plead that the breach endangered his physical safety or caused him to fear for his physical safety. Additionally, extreme and outrageous conduct continues to be an essential element of a cause of action alleging negligent infliction of emotional distress." *Lazar v. City of New York*, No. 21 Civ. 1748 (LGS) (S.D.N.Y., Opinion and Order dated July 26, 2022) (collecting authority). Absent a threat to physical safety, the

21

"guarantees of genuineness" need instead be made out via a "specific, recognized type of negligence that obviously has the propensity to cause extreme emotional distress, such the mishandling of a corpse a the transmission of false information that a parent or child had died." *Cardoso v. Wells Fargo Bank, N.A.*, No. 21-CV-8189 (KMK) (S.D.N.Y.) (Opinion and Order dated September 20, 2022) (citations and internal quotation marks omitted).

Similarly, "To state an IIED claim, a plaintiff must plausibly allege the existence of (1) extreme and outrageous conduct, (2) an intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. To meet this standard, the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Specht v. City of New York*, 15 F.4th 594, 606 (2d Cir. 2021) (internal citations and quotation marks omitted) (collecting authority). "[C]onclusory allegations that [a plaintiff] suffered emotional distress . . . are insufficient to state a claim." *Id.*

As to the NIED claim, Akhtar alleges no duty that Eric I. Eisenberg, a "private citizen," (D.I. 1 ¶ 15) owed to him. This alone is fatal to the NIED claim. The allegations of Akhtar's emotional harm, while variously stated to be "severe" and affecting his health and wellbeing, are nonetheless vague and conclusory, specifying no specific manifestations of the emotional distress, and thus this element is also insufficient. The causal connection is also not pled in the complaint, for example as Akhtar fails to allege that his emotional distress is due to any summons issued by Eric I. Eisenberg (as opposed to other of the six summonses issued by other of the several "private citizens"). Akhtar also fails to make any allegation as to circumstances providing some guarantee of genuineness of the harm, e.g., that the receipt of administrative noise summonses by a business that he owned "endangered his physical safety or caused him to

fear for his physical safety" or in any way pertained to the death of a family member; at most, the summonses could have caused Akhtar to fear that, should his business Swing 46 lose on the summonses, Swing 46 would be asked to pay a monetary penalty or penalties to the city.

Nor is issuing of administrative noise summonses to a business, pursuant to a citizen complaint provision of the noise code, (N.Y.C. Admin. Code § 24-261) extreme and outrageous conduct. *See e.g. Kaye v. Trump*, 2009 NY Slip Op 00452 (1st Dep't Jan. 29, 2009) ("Plaintiff alleges that defendants . . . commenced two baseless lawsuits and filed a criminal complaint against her, and frightened her and her daughter by attempting to instigate her arrest. This conduct, while not to be condoned, is not so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."); *Cardoso v. Wells Fargo Bank, N.A.*, No. 21-CV-8189 (KMK) (S.D.N.Y.) (Opinion and Order dated September 20, 2022) (internal citations omitted) (collecting authority of improper legal action institutions that did not amount to "extreme and outrageous conduct," such as: (1) "a false charge of sexual harassment"; (2) wrongly "arrest[ing] the plaintiff in front of the neighbors"; (3) "knowingly initiat[ing] foreclosure proceedings without the right to do"; (4) "withholding [plaintiff's] monthly payments, calling her late at night, initiat[ing] foreclosure proceedings, misrepresent[ing] her monthly payment amounts, fail[ing] to remove negative credit information from her credit report, and forg[ing] the 2004 mortgage and note"; and (5) "bringing retaliatory eviction proceedings").

Thus, the NIED claim fails completely, and should be dismissed.

The IIED (or, modifying the intent element slightly, reckless infliction of emotional distress) claim likewise fails. Again, the issuance of one or more legally-authorized administrative noise summonses is not extreme and outrageous conduct. No intent to cause, or

even recklessness as to causing, severe emotional distress is ascribed to Eric I. Eisenberg in the complaint. While Plaintiffs plead that "issuance of alleged noise complaints" are done "for the purpose of harassment and wrongly attempting to collect money from plaintiff," not only is this this allegation conclusory and lacking in plausibility, (why would there be any expectation that sending a commercial business an administrative noise ticket would result in its owner being harassed?) it does not amount to a claim that Eric I. Eisenberg was intentionally or recklessly seeking to cause ***severe emotional distress***. Even supposing, *ad arguendo*, that Akhtar has "eggshell" emotions, with simple receipt of administrative noise summonses by a business he owns causing him to suffer severe emotional distress, there is no reason that Eric I. Eisenberg should have expected him to suffer such an extreme reaction. Again, the causal connection is also not pled in the complaint, e.g. as Akhtar fails to allege that his emotional distress is due to any summons issued by Eric I. Eisenberg (as opposed to other of the six summonses issued by other of the several "private citizens"). And again, Akhtar's conclusory allegations, bereft of specific manifestations, as to the severe emotional distress he allegedly suffered are insufficient, as stated in *Specht*. 15 F.4th at 606. Thus, the IIED (and reckless infliction of emotional distress) claim fails completely, and should also be dismissed.

## CONCLUSION

Plaintiffs have offered a threadbare, conclusory complaint that, with respect to "Eric I. Eisenberg," fails to adequately address most, if not all, of the elements of their asserted causes of action. It further fails to satisfy the relevant heightened pleadings standards of F.R.C.P. 9(b) and N.Y. Civ. Rights Law §76-A.  The complaint fails to state a claim, and should be dismissed pursuant to F.R.C.P. 12(b)(6).

Plaintiffs present this deficient complaint to this Court in an attempt to collaterally attack, and avoid, legally-authorized administrative noise ticket proceedings before OATH that are not yet alleged to have resulted in a single hearing on the merits. This action is not ripe, and this court should decline to address it, pursuant to F.R.C.P. 12(b)(1), in favor of letting the administrative tickets proceed before OATH, which has the Rules to handle Plaintiffs' evidentiary concerns, to address Plaintiffs' alleged default, and which administrative tribunal can address the merits of the noise charges.

Lastly, Plaintiffs rely on admittedly incorrectly directed summonses, and have served them in a manner inconsistent with the Federal Rules and the N.Y. C.P.L.R. The complaint should be dismissed for insufficient process, insufficient service of process, and lack of personal jurisdiction. F.R.C.P. 12(b)(2), (4) and (5).

Dated:      Miami, Florida                          Respectfully submitted,
            November 27, 2023

                                                    s/      *Eric Eisenberg*
                                                    ERIC EISENBERG
                                                    1300 S Miami Ave
                                                    Unit 1408
                                                    Miami, FL 33130
                                                    (646) 801-6705
                                                    ericeis@gmail.com