Exhibit 3. Declaration of Anthony N. Iannarelli Jr.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Mohamed John Akhtar and La Buca Restaurant, Inc. d/b/a Swing 46 Jazz and Supper Club,<br><br>Plaintiffs,<br><br>v.<br><br>Eric Adams, Mayor of the City of New York, Rohit T. Aggarwala, New York City Department of Environmental Protection, Eric I. Eisenberg, and John and Jane Does One through Thirty,<br><br>Defendants. | Case No. 23-cv-6585 (JGLC)(VF) |

## Declaration of Anthony N. Iannarelli Jr.

I, Anthony N. Iannarelli Jr., of full age declares and affirms, under the penalty of perjury, to the truth of the following. I make these statements upon my direct knowledge, and if not within my direct knowledge, upon information and belief, gathered from reliable and reputable individuals, that are willing to testify at trial.

1. I am the attorney for plaintiffs Mohamed John Akhtar and La Buca Restaurant Inc. d/b/a Swing 46 Jazz and Supper Club (hereinafter "plaintiff").

1

2. Plaintiffs are attempting to Respond in Opposition to defendant Eric M. Eisenberg's (herein after "defendant Eisenberg") Notice of Motion, dated November 27, 2023, to dismiss plaintiffs' complaint. The issue is that defendant Eisenberg's moving papers have little, if anything, to do with the facts as alleged in plaintiff's complaint.

3. The gravamen of plaintiff's complaint is that his civil rights, for which he is protected under federal statutory and U.S. Constitutional law, have, and continue to be, violated by defendant Eisenberg, and in complicit with, defendants Eric Adams (hereinafter "defendant Adams"), in his capacity as Mayor of the City of New York; Rohit T. Aggarwala (hereinafter "defendant Aggarwala"), in his capacity as Commissioner of defendant New York City Department of Environmental Protection ("defendant NYCDEP"); and, NYCDEP an agency responsible for the health and welfare of citizens and visitors of the City of New York. See plaintiff's Complaint dated July 28, 2023.

4. In a twist of irony, I am in a very strong position to explain the nexus between the facts and law of the case in opposition to defendant Eisenberg's Motion to Dismiss. There will come a time in which plaintiffs will retain outside experts for testimony at trial, and, as stated, my Declaration herein, along with

Declarations of others, is to address the merits of defendant Eisenberg's pleadings in respect of his dispositive motion.

5. This case is in the very early stages of litigation. Besides the Complaint and defendant Eisenberg's Motion, there have been no other substantive pleadings. There has not been an exchange of documents, nor examination of parties or witnesses under oath. In other words, there has been no discovery. Since defendants to the lawsuit have continued their offensive conduct up to, and after the filing of plaintiffs' complaint, plaintiffs are in a position to file an amended complaint, or for that matter another complaint. It is presumed defendant Eisenberg's motion is not a contest over the facts for purposes of *res judica*.

6. In or about March 2023, I was asked by the owner, Mohamed John Aktar (herein after "Akhtar") of La Buca Restaurant Inc., d/b/a Swing 46 Jazz and Supper Club (hereinafter "Swing 46"), to investigate the origin of noise complaints that were issued as summonses, and transmitted to New York City of Department of Environmental (herein after defendant "NYSDEP"). These summonses and complaints were resulting in the imposition of significant fines for which my plaintiffs have suffered. My investigation revealed the bulk of the summonses and noise complaints were originated by civilian

complainants. In other words, someone was making complaints other than employees of NYCDEP.

7. I came to learn there is a bounty system in place in that NYCDEP would share the proceeds of complaints made by unaffiliated, private civilians. Upon information and belief, there was no supervision by NYDEP members. All a private citizen had to do to establish a case was use what appeared to be a cell to record "noise," make a complaint, and ultimately collect a bounty that would be shared. It became a cash machine for NYCDEP and NYC Government in general.

8. There was no real way to fight these complaints. As my client Mohamed John Akhtar (hereinafter "Akhtar") stated to me, he would call the NYCDEP asking for help. He purportedly was told by a NYCDEP staff member that all he could do was "plead guilty and pay the fine." As I will explain further below, my clients are correct, there is no no such thing as defending and/or a fair adjudication of a NYCDEP noise complaint. It is a decided fact of guilt from the beginning. It bests Lewis Carroll's "Alice in Wonderland," where the "Queen of Hearts" decides punishment, which is off with one's head, then, and only then, allows for trial. But with NYCDEP punishment as imposed first, never provides for a trial.

9. Upon appraising the facts of my clients' case, I came to believe this system was ripe for corruption, both among civilian complainants and NYCDEP. Ironically, I am a former New York City Investigator connected with the Department of Sanitation's Office of the Inspector General.

10. I was trained to investigate offenses committed by New York City employees, and look into where there might be the potential for waste or fraud occurring. I was also trained, and actually performed, as an undercover investigator. I came to be familiar with, and use, sensitive electronic surveillance equipment.

11. Based upon my training and experience, and armed with additional facts discussed below, I am of the belief there is the potential, and there is in all probability occurring, fraud in respect to the defendant NYCDEP's system of falsely accusing merchants of violating the New York City noise ordinance. Then collecting, or attempting to collect, large sums of money-in the tens of thousands of dollars—without first a hearing or trial. Shockingly, the civilian complainants would share a portion of the proceeds.

12. I am trained in the field of environmental science and hold a Masters Degree in Environmental Science from Rutgers University. I did some postgraduate work in environmental chemistry at the New Jersey Institute of Technology. I also attended continuing education courses sponsored by the United States

Environmental Protection Agency. I have been trained in the use scientific testing equipment. And, in another irony, I worked for over a year at the New York City Department of Environmental Protection.

13. Having been trained in the use of scientific testing equipment, I can say that within a verifiable degree of scientific certainty, a technician never goes into the field to obtain environmental samples without having a trained operator first calibrating the testing equipment and providing a certificate of calibration. The testing results must be maintained as a business record, identifying who did the calibration, along with their qualifications.

14. A very good testing analogy would be for testing drunken drivers with a breathalyzer. Before a citizen can be prosecuted, and ultimately convicted, the government must have a calibrated breathalyzer, along with a trained operator. And the certificate of calibration and test results, *inter alia*, must be turned over to the defense before the case can proceed to trial. I know this because I happen to have been a prosecutor, at the county level, in two states: New York and New Jersey.

15. To the best of my knowledge, the citizen enforcers are not trained for the collection of noise samples, usually taken as a reading in decibels, nor is there any evidence the "noise recorder" has been calibrated before use in the field. I know from my direct knowledge that defendant NYCDEP refuses to turn

over any evidence of operator training and equipment calibration they hold for use in prosecuting noise complaints. I know this because I have asked many times, yet NYCDEP, or whoever the custodian is, and they still refuse to turn it over.

16. When I first came on the case, I attempted to reach out to employees of the City of New York to alert them to was occurring and attempt to come a resolution. My attempts were to no avail; either the phones were unanswered, or a message would be left with a supervisor. No one would return my calls.

17. On May 12, 2023, I sent a Notice of Appearance, a Denial by my clients of facts relating to the allegations made against them, Request for Discovery, Motion to Consolidate and Suppress Evidence. These items were all mailed to the Hearings Officer at the Office of Administrative Hearing and Trials (OATH) at 66 John Street, New York 10036. (OATH's web page does not reveal the names of anyone that occupies its office.) I also separately copied the letter to NYCDEP. No one from either office to this day ever responded to my correspondence.

18. On July 1, 2023, I sent a detailed letter to Hon. Sylvia O. Hinds-Radix, Corporation Counsel for the New York City Law Department. In that letter I brought to her attention the problems my clients were encountering, including, and most significantly, my client's inability to defend on the complaints

because NYCDEP refused to turn over discovery, and the lack of cooperation of the purported adjudicative body OATH.

19. The aforementioned letter sent to Corporation Counsel was copied to Eric Adams, Rohit T. Aggarwala, now both defendants herein, and Jocelyn Stauber, Commission of the Department of Investigation. Not one single individual, nor their staff, bothered to reply.

20. I also attempted to make numerous phone calls to the Oath office. On one occasion I finally got through to a woman. I explained that I could not defend on behalf of my client because I had not received any discoverable material related to the complaints. I was left with the impression the cases would be adjourned, but instead they were defaulted, and I never received discovery.

21. OATH does not appear to be an actual entity. If it does exist, it appears to be the proverbial rubber stamp for defendant DEP. There are serious, numerous and blatant constitutional violations occurring that my clients have been subjected, among them the denial due process of law.

22. When considering the totality of circumstances, there is evidence that serious abuses are being perpetrated by all defendants in this case, and among them defendant Eisenberg.

23. My client Mohamed John Akhtar, a minority business owner, appears to be specifically targeted by defendant Eisenberg who resides several blocks away

on West 46th Street. Again, and according to witnesses, defendant had been asked to stay away from the Swing 46 premises on numerous occasions, but he continued to persist by defiantly trespassing.

24. In this action plaintiff Akhtar complains defendants Adams, Aggarwala, and NYCDEP have denied his constitutional and statutory civil rights, along with defendant Eisenberg through his aiding and abetting. Eisenberg has been perpetrating these phony violations on numerous occasions by collecting fake "evidence, and played a crucial role in assisting the other defendants in their unlawful conduct. He is complicit, along with the other defendants, in unlawfully denying my client Akhtar his civil rights.

25. I have read all 25 pages of defendant Einsenberg's Notice of Motion to dismiss plaintiffs' complaint. It reads like an unrelated case. At its core plaintiffs' complaint is a federal civil rights case, but defendant Eisenberg does not address those facts.

26. I do not see how defendant Eisenberg can claim he has been improperly served, because he has been served at his home and place of employment. If that is the case, then plaintiffs can seek alternative methods of service. Defendant Eisenberg holds himself out to be an attorney at law. Yet he continues to evade service of process; this is conduct unbecoming an attorney.

27. Intriguingly, in his moving papers defendant Eisenberg lists his address as 1300 S. Miami Ave., Unit 1408, Miami, FL 33130. I do not know why he would use a State of Florida address, when he has a law office and home address in the State of New York, and where he is registered to vote.

28. Most significantly, Eisenberg was committing his fraudulently conduct as throughout 2023, while he was living in his New York City home and where he had his law practice.

29. Even if defendant Eisenberg were to be successful on any of his arguments, it is of no moment because plaintiffs are still within the statute of limitations, and they can cure any defect by amendment. In any case, it was plaintiffs' intent to amend the complaint before the instant motion became an issue.

30. Eisenberg brings up the issue as to OATH but it is completely tangential to the deprivation of plaintiffs' federal civil and constitutional rights case. My response is that OATH, besides the fact that it does not exist as a functioning body, it does not adjudicate federal civil rights issues--even if it did exist.

31. I do not make these statement lightly. I have been a trial attorney for thirty-five years, and I have been virtually before all the trial courts in the greater metropolitan region. Along with the state trial and appellate courts, the 2nd and 3rd Circuits, the New Jersey Supreme Court, I have never seen anything like how the NYC DEP and OATH purport to adjudicate claims. I

32. In addition to my courtroom experience, I have served as an Attorney Investigation for a District Ethics Committee, an adjunct to the New Jersey Supreme Court, so I have a pretty good sense of what constitutes ethics for the legal profession. I have also lectured on the subject to a national audience. There is something very seriously wrong at OATH, but I am not here to reform OATH. Nor am I asking this Court to review the fine points of decibel levels.

33. My client Mohamed John Akhtar is an immigrant from a developing county and has been a United States Citizen for over thirty years. By every account he has been dehumanized by these defendants and they have treated him as if he should leave the area. My client is a good citizen, and, I, as an American citizen, am embarrassed by the way he has been treated.

34. Defendant Eisenberg's papers are not enumerated, and to cover all bases, the general argument of the Failure to State a Claim is inconceivable at this point. Plaintiffs' intent is to amend and cure any defects in the complaint, along with adding additional causes of action.

35. For defendant Eisenberg to state that plaintiffs have no case suggests he does not fully understand the significate of his conduct, nor willing at this point to take responsibility for what he has done to my client, Mohamed John Akhtar.

36. I cannot speculate what the motives are for defendant Eisenberg's conduct, that will be determined when the case further commences and discovery begins.

For all of the reasons stated above, and upon all papers submitted, it is respectfully requested that the Motion to dismiss be denied.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: December 27, 2023

Anthony N. Iannarelli Jr.