Exhibit 2

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Mohamed John Sohel Akhtar and
La Buca Restaurant, Inc.  d/b/a
Swing 46 Jazz and Supper Club,

     Plaintiffs,

       v.

Eric Adams, Mayor of the City of
New York, Rohit T. Aggarwala, New
York City Department of
Environmental Protection,  Eric I.
Eisenberg, and John and Jane
Does One through Thirty,

     Defendants.

Case No.  23-cv-6585 (JGLC)(VF)

### Declaration of Mohammed John Akhtar

I, Mohammed John Akhtar, of full age, declare and affirms, under the penalty of perjury, to the truth of the following:

1. I am a resident of the City of New York and owner/operator of La Buca Restaurant, Inc., d/b/a Swing 46 Jazz and Supper Club (hereinafter "Swing 46").

2. I make this statement in support of my "Response in Opposition" to defendants Eric Adams, Rohit T. Aggarwala, and New York City Department of Environmental Protection (herein after "NYC Defendants") Notice of Motion, dated January 26, 2024, to dismiss my complaint.

1

3.  I have been the owner and general manager of La Buca Restaurant, Swing 46 for over twenty-five years.

4.  Before I operated the club, I emigrated from Bangladesh and became a United States citizen.  I am what is commonly referred as a person of color; I am also a Muslim.

5. I am neither ashamed of my national origin, nor my religion. I am proud to be a United States citizen and a resident of New York. I am grateful for the opportunities I have benefited from while living in my community.  I, in turn,  try to provide the community with a art form that includes singing, jazz music with live musicians, and swing dance, a dying art form. Over the years I have worked very hard at preserving this form of entertainment.

6.  Swing 46 is located in what is known as "Restaurant Row."  I am very pleased to serve both local customers and tourists with entertainment. The club also provides work for musicians, singers, and dancers,  along with staff that are engaged in duties ranging from janitorial to chefs.

7.  My business barely survived the Covid pandemic, and I still trying to bring the club back to where it was prior to the outbreak of the disease.

8. In or about late 2021 and early 2022, I began to notice an individual hanging around outside of my club.  He would not come into the

2

club, but just walk back and forth staring at club patrons that were dining on the patio. He had close cropped hair, always wore T-shirts and a mask, and appeared to be 5'6" to about 5'8". With his demeanor and attire he looked strange, out-of-place, and suspicious. I was to learn this was defendant Eric Eisenberg.

9. I was told by the host that one evening defendant Eisenberg entered the front patio and leaned over a table where patrons were dining. He put his cell phone up to an overhead speaker, the patrons complained and Eisenberg told them he was collecting evidence. The patrons told him to get away from their table; in returned Eisenberg was said to scream something nasty to my patrons before eventually walking away.

10. I have had around ten personal encounters with defendant Eisenberg when he has trespassed onto my property. Before this began, I would observe him just hanging around, but never even spoke with him. I then learned he was filing noise complaints against me.

11. I did have live music piped out for the patrons dining on the front patio. But that music could not be heard beyond my patio; that explains why defendant Eisenberg would need to trespass onto the patio to collect whatever he needed for his noise complaints.

12.  When I would catch defendant Eisenberg trespassing, I would immediately direct him to leave. He would become very nasty towards me. I was taken aback by his behavior because I did not know this man, and the only encounters I had with him was when he trespassed.  I had no idea, at least at that time, why he would be so rude to me. Ultimately, I came to believe he wanted me out of the neighborhood. He has been close to being successful in destroying my business.

13.  Swing 46 is facing severe economic consequences because of fines imposed by the New York City Department of Environmental Protection. ("NYCDEP").  These are the fines that resulted from summonses fraudulently issued by defendant Eisenberg.  The NYC defendants either knew, or should have know, defendant Eisenberg was making false allegations against me. If NYDEP had sent out actual trained technicians, they would have found the "evidence" Eisenber was collecting had no basis in fact. Upon information and belief,  defendant Eisenberg is a lawyer, not a trained technician.

14.  If the NYC defendants had listened to my complaints and sent an investigator to interview me, they would have found that as a person of color and a Muslim,  I was being unfairly targeted by Eisenberg and DEP's

own internal staff. This could have been easily accomplished by comparing profiles among other establishments in the Restaurant Row district.

15. The fines are exorbitant: over $1,500.00 for the first offense, and over $5,000.00 for the third.  I believe I may have accumulated over $30,000 in fines, a cost the club cannot afford.  A citizen, such as Eisenberg, could file noise complaints and share the fine with the the City defendants.  In other words, these defendants arranged a bounty system.

16. I came to  learn that defendant Eisenberg has been responsible for many of  the noise complaints made against my business.  I have never received complaints by nearby by residents or businesses. I believe that defendant Eisenberg  is specifically targeting me because of my race and religion.  He often prowls the street wearing a mask and his appearance is disturbing to myself and others. He has been told to stay off the property of Swing 46, but he repeatedly returns.  (See attached photos of defendant Eisenberg).

17.  Myself,  along with others, have seen Eisenberg walk very quickly across Swing 46's patio and place what appears to be a cell phone against the glass widow of the club and patio speakers. When caught, Eisenberg claims he is collecting evidence to make noise  complaints.

When I have encountered him, I immediately order him off the property, but he repeatedly returns.

18. After receiving summonses, I have tried to argue against them through the NYC Department of Environmental Protection. I have found that if I am lucky enough to get someone by phone, they are absolutely of no help. I have asked that a supervisor return my call, but no one ever did. I came to learn there is a New York City Agency called OATH. It is the Office of Administrative Trials and Hearings. They are just as bad as the NYCDEP and impossible to get someone on the phone. The one time I did get through, I asked for an adjournment so I could get an attorney. They said it would be OK, but then I got a notice of default.

19. There is something very wrong going on. I cannot get an explanation for it, and I can't fight it. I have no idea why people are coming after me the way they have. Every day I am worried about my business and it is beginning to affect my health and well being.

20. I am one of very few minority business owners that is a person of color; nor do I know of any other Muslims that operate a restaurant in the area. I sincerely believe that because of my race and religious beliefs I have been purposely targeted.



I, Mohammed John Akhtar, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 16, 2024

Mohammed "John" Sohel  Akhtar
Personally and as Owner of of La Buca
Restaurant, Corp.  d/b/a Swing 46 Jazz
and Supper Club.

APPEARED BEFORE ME ON 4/16/24
MOHAMMED AKHTAR AND AFFIRMED
THAT THE CONTENTS OF THIS
DOCUMENT ARE TRUE



DAYANNA ANDRADE
Notary Public - State of New York
NO. 01AN6410067
Qualified in Queens County
My Commission Expires Mar 28, 2026

7