**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
MOHAMED JOHN AKHTAR AND LA BUCA
RESTAURANT, INC.,

                              Plaintiffs,

                -against-

ROHIT AGGARWALA et al.,

                             Defendants.
----------------------------------------------------------------X

**23-CV-06585 (JGLC) (VF)**

**REPORT AND**
**RECOMMENDATION**

**VALERIE FIGUEREDO, United States Magistrate Judge**

**TO: THE HONORABLE JESSICA G. L. CLARKE, United States District Judge**

      On July 28, 2023, Plaintiffs Mohamed John Akhtar and La Buca Restaurant, Inc., doing

business as Swing 46 Jazz and Supper Club ("Swing 46"), commenced this action against Eric

Adams, the Mayor of the City of New York, Rohit T. Aggarwala, the Commissioner of the New

York City Department of Environmental Protection ("DEP"), the DEP, Eric I. Eisenberg, and

John and Jane Does 1-30. See ECF No. 1. Pending before the Court are two motions to dismiss,

one filed by Eisenberg (see ECF No. 28 at 1), and one filed by Defendants Eric Adams, Rohit T.

Aggarwala, and DEP (collectively, the "City Defendants"). See ECF No. 42 at 1.[1] For the

reasons set forth below, I respectfully recommend that Eisenberg's motion be **GRANTED**. I also

recommend that the City Defendants' motion be **GRANTED**. I further recommend that

Plaintiffs be granted leave to amend Counts II, III, and V of the complaint.

---

[1] Eisenberg filed two Memorandums of Law in Support of his Motion to Dismiss. See
ECF Nos. 25, 28. The memorandums are identical. The memorandum of law cited herein is the
one filed at ECF No. 28.

# BACKGROUND

1. <u>Factual Background</u>

Plaintiff Mohamed John Akhtar owns Swing 46, a restaurant in Manhattan that also offers "live singing and music." ECF No. 1 at ¶¶ 2-3, 14. "Recently," Plaintiffs have received "at least a half dozen" summonses for alleged noise complaints including a complaint made by Eisenberg. <u>Id.</u> ¶¶ 15, 17. As a result of the summonses, Plaintiffs "face crippling fines," which are "ultimately converted to legal judgments." <u>Id.</u> ¶¶ 17-18. One of the summonses is in default. <u>Id.</u> ¶¶ 17, 24.

On May 12, 2023, Plaintiffs made a "formal demand" to DEP, seeking "any evidence that would support the charges" in the summonses. <u>Id.</u> ¶ 20. The City Defendants refused to disclose "what devises are used to measure sound" and what "training is provided" for use of those devices by the "civilian policing force" issuing the noise summonses. <u>Id.</u> ¶ 16. Plaintiffs have not indicated whether they appeared before the Environmental Control Board ("ECB") or completed any hearings before the New York City Office of Administrative Trials and Hearings to challenge the noise summonses they received. <u>See</u> <u>id.</u> ¶¶ 20-22. Plaintiffs allege that Aggarwala, in his capacity as the Commissioner of DEP, "made admissions that he is aware of the financial motivation to issue complaints by civilians for financial gain," but has not taken corrective action to stop the "fraud." <u>Id.</u> ¶ 23. Plaintiffs also allege that they have been damaged by Defendants' "scheme to fraudulently issue noise complaints risking the viability of the business." <u>Id.</u> ¶ 24. Akhtar claims that he suffered "severe distress, affecting his health and [wellbeing]" resulting from the fear of losing his business as a result of the summonses. <u>Id.</u> ¶ 26.

Plaintiffs assert five causes of action arising from the receipt of the summonses for noise complaints. Count I alleges a violation of 42 U.S.C. § 1983, based on Defendants "acting in a blatantly unconstitutional and unlawful effort to deprive plaintiff of his civil rights by not

providing one scintilla of evidence that will be used to prosecute their case against him." ECF No. 1 at ¶ 32. Count II asserts a claim for "Constitutional Violations," alleging that the City Defendants denied Plaintiffs their due process and equal protection rights. Id. ¶¶ 36, 37. Count III alleges that the City Defendants violated Plaintiffs' First Amendment rights. Id. ¶¶ 38-45. Count IV alleges that the City Defendants and Eisenberg have inflicted severe emotional distress upon Akhtar, either intentionally, recklessly, or negligently. Id. ¶ 47. Finally, Count V asserts a state-law claim for fraud against the City Defendants and Eisenberg. Id. ¶ 49.

    2.  <u>Statutory Background</u>

The Citizen's Complaint Program, codified in New York City Administrative Code ("Administrative Code") § 24-261, provides a procedure by which members of the public ("Citizen Reporters") may report various violations of the New York City Noise Control Code, which is codified in Chapter 2 of Title 24 of the Administrative Code. <u>See</u> N.Y.C. Admin. Code § 24-201. Citizen Reporters may serve complaints to DEP for violations of the Noise Control Code and can provide DEP with evidence of such violations. N.Y.C. Admin. Code § 24-261(a). After 30 days, a Citizen Reporter may serve upon the alleged violator a notice of violation (a "summons") if the DEP failed to serve its own notice of violation and the DEP did not serve the Citizen Reporter with written notice that it had determined that the complaint was "frivolous or duplicitous." <u>Id.</u> § 24-261(b).

The Noise Control Code prohibits a person from operating "any sound reproduction device, for commercial or business advertising purposes or for the purpose of attracting attention to any performance, show, sale or display of merchandise, in connection with any commercial or business enterprise."[2] N.Y.C. Admin. Code § 24-244(b). The code's penalty schedule, set forth

---

[2] Plaintiff has not identified a specific section of the Noise Control Code that was cited in the summonses Swing 46 received. It seems that the most applicable provision is § 24-244(b),

in Chapter 47 of Title 15 of the Rules of the City of New York ("R.C.N.Y."), outlines the penalties for violations of the Noise Control Code. The penalty schedule provides that the first violation of Administrative Code § 24-244(b) is $440, then $880 for a second violation, and $1,320 for a third violation. 15 R.C.N.Y. § 47-02. The Citizen's Complaint Program authorizes an award to Citizen Reporters for a successful prosecution of a reported violation of the Noise Control Code, and the award is a statutorily set share of any penalties collected from the violator following the successful prosecution.[3] N.Y.C. Admin. Code § 24-261(d), (e).

Summonses issued for violations of the Noise Control Code are adjudicated by the Environmental Control Board ("ECB"). See N.Y.C. Charter §§ 1049-a(c)(1)(d), 1049-a(d)(1)(a). ECB is a subpart of the New York City Office of Administrative Trials and Hearings ("OATH"), which is responsible for conducting administrative adjudicatory hearings. See id. §§ 1048(1), 1049-a.

Before a hearing with the ECB, a party is entitled to limited pre-hearing discovery and may seek the names of witnesses and documents intended to be submitted as evidence via a written request at least five business days prior to the scheduled hearing date. 48 R.C.N.Y. § 6-07(a). All other applications or motions for discovery must be made to the Hearing Officer at the commencement of the hearing and the Hearing Officer may order such further discovery as they

---

given the discussion in the complaint about the establishment and its speakers. See ECF No. 1 at ¶ 9.

[3] At the time the complaint was filed, an award to a Citizen Reporter was capped at 25% of the proceeds collected when the DEP brought a complaint after receiving a complaint from a Citizen Reporter, or 50% of the proceeds collected when the proceeding was brought by the Citizen Reporter themselves. N.Y.C. Admin. Code § 24-261(d). Effective January 6, 2024, the award is now $5, when the proceeding is brought by the DEP, or $10, when the proceeding is brought by the Citizen Reporter. N.Y.C. Admin. Code § 24-261(e). Notwithstanding the amount of civil penalties outlined in N.Y.C. Admin. Code § 24-261(d) and (e), the maximum amount of a civil penalty is $50. 2024 N.Y.C. Local Law No. 16 § 2.

deem appropriate. Id. § 6-07(b). If a party fails to properly respond to a lawful discovery order or request, or wrongfully refuses to answer questions or produce documents, "the Hearing Officer may take whatever action he or she deems appropriate including but not limited to preclusion of evidence or witnesses." Id. § 6-07(c). A decision rendered by ECB after a hearing may be administratively appealed under 48 R.C.N.Y. § 6-19, and a final determination after an administrative appeal may be challenged in a proceeding in state court pursuant to Article 78 of the CPLR. Id.

The failure of a party named in a summons to appear for their hearing date in front of the ECB may result in a default decision being entered against them. See N.Y.C. Charter § 1049-a(d)(1)(d)(i). However, a party may seek a stay of a default and request a hearing before a judgment based on the default is entered. Id. § 1049-a(d)(1)(h). A respondent in default may move to vacate the default and receive a new hearing under 48 R.C.N.Y. § 6-21(a)-(c), but the default may not be administratively appealed. See 48 R.C.N.Y. § 6-19(a)(2). A denial of a request for a new hearing after default may only be challenged in a proceeding under Article 78 of the CPLR. 48 R.C.N.Y. § 6-21(j). The default penalties issued when a summons recipient fails to appear for a scheduled hearing before the ECB are $1,750 for the first violation, $3,500 for a second violation, and $5,250 for a third violation. Id.

3. Procedural Background

Plaintiffs commenced the instant action on July 28, 2023. See ECF No. 1. On October 27, 2023, the Honorable Jessica G.L. Clarke issued an Order to Show Cause directing Plaintiffs to submit a letter to the Court showing good cause as to why they had failed to serve the summons and compliant on Defendants within the 90-day period prescribed by Federal Rule of Civil Procedure 4(m). See ECF No. 5. Subsequently, Plaintiffs filed certificates of service for

Eisenberg on November 14, 2023, and November 15, 2023, indicating service on Eisenberg at his residence and his place of business.[4] See ECF Nos. 20, 23.

On November 27, 2023, Eisenberg moved to dismiss the complaint. See ECF No. 28 at 1. Plaintiffs filed their reply in opposition to the motion on January 2, 2024. See ECF No. 34. Eisenberg filed a reply brief on April 22, 2024. See ECF No. 68.

On January 26, 2024, the City Defendants separately moved to dismiss the complaint. See ECF No. 42 at 1, 18. Plaintiffs filed their reply in opposition to the motion on April 18, 2024. See ECF No. 67. The City Defendants filed their reply brief on May 1, 2024. See ECF No. 71.

## LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint seeking relief "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "This Rule does not countenance pleadings that are conclusory; it requires factual allegations that are sufficient to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 182 (2d Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Where the well-pleaded facts in a complaint "do not permit the court to infer more than the mere possibility of misconduct," because the complaint has only "alleged—but it has not 'show[n]—that 'the pleader is entitled to relief,'" the complaint must be dismissed. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."

---

[4] Plaintiffs also filed certificates of service for the City Defendants. See ECF Nos. 13-14, 21-22.

Twombly, 550 U.S. at 570. A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In considering a motion to dismiss, a district court must "accept[ ] all factual claims in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor." Lotes Co., Ltd. v. Hon Hai Precision Indus. Co., 753 F.3d 395, 403 (2d Cir. 2014) (quoting Famous Horse Inc. v. 5th Ave. Photo Inc., 624 F.3d 106, 108 (2d Cir. 2010)) (internal quotation marks omitted).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Similarly, "[b]ald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations and will not defeat" a motion to dismiss. N.J. Carpenters Vacation Fund v. Royal Bank of Scot. Grp., PLC, 720 F. Supp. 2d 254, 261 (S.D.N.Y. 2010) (quoting Garber v. Legg Mason, Inc., 537 F. Supp. 2d 597, 610 (S.D.N.Y. 2008)). "[R]ather, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, i.e., enough to make the claim plausible." Arista Recs., LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 555) (internal quotation marks, alteration, and citation omitted).

**DISCUSSION**

A.  Lack Of Personal Jurisdiction

Eisenberg seeks to dismiss the claims against him on the grounds that the Court lacks personal jurisdiction because Plaintiffs did not properly serve him with the summons and complaint. See ECF No. 28 at 8. For the reasons discussed below, Eisenberg is correct and dismissal for lack of personal jurisdiction is appropriate.

Federal Rule of Civil Procedure 4(a) provides that a summons must "be directed to the defendant." Fed. R. Civ. P. 4(a)(1)(B). Additionally, Rule 4(e) provides the standards for serving a summons and complaint on an individual located within the United States. See Fed. R. Civ. P. 4(e). Under Rule 4(e), service can be effectuated by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," by delivering a copy of the summons and compliant "to the individual personally," or through service consistent with the state law requirements for service "in the state where the district court is located or where service is made."[5] Fed. R. Civ. P. 4(e)(1)-(2). New York law allows for service "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business . . . and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business." N.Y. C.P.L.R. § 308(2).

Plaintiffs attempted to serve Eisenberg at both his residence and his place of business.[6] See ECF Nos. 20, 23. First, Plaintiffs' counsel attempted to serve Eisenberg twice at his place of

---

[5] Service can also be made by delivering copies of the summons and complaint to the individual personally or by delivering copies to an agent authorized by appointment or by law. See Fed. R. Civ. P. 4(e)(2)(A), (C). Eisenberg attests that he has never appointed anyone at the 405 Lexington Avenue address or any residential apartment building as his agent for service of process. See ECF No. 69 at ¶¶ 5-6.

[6] Both summonses were directed to "Eric I. Eisenberg." ECF No. 19. Eisenberg's correct middle initial is "M" and Plaintiffs acknowledge this error. See ECF No. 34 at 9. Plaintiffs describe the wrong name provided on the summonses as "a ministerial error that can be easily cured" via an amended complaint. Id. The Second Circuit has excused such errors, including the mislabeling of the proper defendant, where the plaintiff made clear who the intended defendant was, despite inaccuracies in the summons. See Datskow v. Teledyne, Inc., Continental Prods. Div., 899 F.2d 1298, 1301 (2d Cir. 1990) (waiving ministerial error in service of process where plaintiff addressed the summons to "Teledyne, Inc." rather than "Teledyne Industries, Inc.," the corporate defendant's proper name). As such, this ministerial error can be corrected by Plaintiffs if leave to amend the complaint is granted.

business, at 405 Lexington Avenue, 48th Floor, in Manhattan.[7] See ECF No. 23 at ¶¶ 5-9. On the first attempt, Plaintiffs' counsel was told by an employee in the building's lobby that no one was present at the identified office, and he was not allowed to access the elevator to proceed to the 48th Floor. See ECF No. 34 at 7. Plaintiffs' counsel returned the next evening and a different employee in the building's lobby told counsel that he could not go up to the 48th floor. Id. at 7-8. Plaintiffs' counsel left the summons and complaint with the employee in the lobby after telling the employee his purpose for leaving the papers. Id.

Under New York law, service at a defendant's place of business is sufficient if it is executed properly. See Fed. R. Civ. P. 4(e)(1), (2)(B); N.Y. C.P.L.R. § 308(2). Here, however, it was not executed properly. Eisenberg argues that leaving the summons and complaint with an individual in the building's lobby, rather than with an individual inside Eisenberg's office on the 48th Floor, is insufficient. See ECF No. 28 at 11. Whether Eisenberg is correct that the summons and complaint had to be delivered to his office on the 48th floor need not be decided, because Plaintiffs did not also provide proof of mailing. See ECF No. 22.

Under CPLR § 308(2), when a plaintiff serves an individual at their place of business, the plaintiff must also mail the summons to the person at his last known residence, or mail the summons, via first-class mail marked as "privileged and confidential," to the person's actual place of business. The proof of service filed by Plaintiffs does not indicate that Plaintiffs also mailed the summons and complaint, as required under Section 308(2). Accordingly, service on Eisenberg's place of business was deficient. See Opt Out of IEAM, LLC v. Indus. Enters. of Am., Inc., No. 11-CV-8470 (DLC), 2012 WL 6135819, at *3 (S.D.N.Y. Dec. 11, 2012) (finding

---

[7] Although Eisenberg does not explicitly concede that this is the address for his place of business, he does not dispute it. See, e.g., ECF No. 28 at 10-11.

that service was not effective where the process server's affidavit stated that "summons and complaint were timely delivered to a 'doorman/secretary' at [defendant's] offices," but did not indicate that it was mailed, and no proof of service was filed with court clerk).

Plaintiffs' counsel also attempted to serve Eisenberg at his residence in an apartment complex located at 454 West 46th Street in Manhattan.[8] See ECF No. 20 at ¶ 5. Plaintiffs' counsel was directed by the building's superintendent to Eisenberg's apartment, but no one was home. See id. ¶ 6. Plaintiffs' counsel spoke with the building's superintendent and explained that he was there to serve a summons and complaint; the superintendent accepted the papers on Eisenberg's behalf. See id. ¶ 7.

Service on a doorman or employee in the lobby of an apartment building is sufficient where there was an attempt by the process server to proceed to the defendant's apartment and that attempt was blocked by the employee in the lobby. See McCormack v. Goldstein, 611 N.Y.S.2d 185, 186 (1st Dep't 1994) (affirming dismissal for insufficient service under § 308(2) where the summons and complaint were delivered to a doorman but the process server was not barred from proceeding to the defendant's apartment); Lombardo v. 333 East 49th P'ship, LP, 2022 WL 624611, at *3 (N.Y. Sup. Ct., Mar. 3, 2022) ("Plaintiff's service of pleadings on [defendant] by delivery to her alleged doorman is insufficient absent an indication that the doorman refused to provide access to [defendant's] apartment."). Here, Plaintiffs' counsel does not allege that the superintendent blocked his access to Eisenberg's apartment. To the contrary, the certificate of service indicates that the superintendent directed counsel to Eisenberg's apartment within the building. See ECF No. 20 at ¶ 6. Moreover, under CP.L.R. § 308(2), where service is made at a person's dwelling, the summons must also be mailed to the person "at his or

---

[8] Eisenberg does not dispute that his residence is located at this address. See, e.g., ECF No. 28 at 8-10.

her last known residence or by mailing the summons by first class mail to the person to be served

at his or her actual place of business." There is no indication in the certificate of service that the

summons and complaint were also mailed to Eisenberg. See ECF No. 20 at ¶¶ 6-7.

I thus recommend that the claims against Eisenberg be dismissed for lack of personal

jurisdiction given the insufficient service of process. Because I recommend below that leave to

amend the complaint be granted as to certain claims, Plaintiffs can correct the spelling of

Eisenberg's name and perfect service on him should they be afforded an opportunity to file an

amended complaint.[9]

B.  Failure To State A Claim

1.  *Plaintiffs' abandonment of his claims by his failure to respond to the City Defendants' arguments for dismissal.*

As an initial manner, Plaintiffs failed to address or respond to the City Defendant's

arguments for dismissal of the Due Process, Equal Protection, First Amendment, infliction of

emotional distress, and fraud claims. It is well settled that a plaintiff will be deemed to have

abandoned a claim where the plaintiff fails to respond to a defendant's argument for dismissal of

that claim. See Hauschild v. United States Marshals Serv., No. 21-CV-7580 (CS), 2023 WL

---

[9] Eisenberg also contends that the complaint should be dismissed for lack of ripeness because Plaintiffs have not yet exhausted the administrative procedures for challenging a noise summons or a default. See ECF No. 28 at 4-5. Separately, the City Defendants briefly argue that Plaintiffs lack standing to seek injunctive relief. See ECF No. 42 at 18. As explained with regards to Plaintiffs' procedural due process claim (see infra Section B.3.15), it is not clear from the allegations in the complaint whether Plaintiffs pursued any of the administrative remedies available to challenge the issuance of a summons or the entry of a default. Nor is it clear whether the administrative agency reached a final determination on the noise complaints. For a state administrative action to be ripe for federal judicial review, the state administrative action must be final. See Lacewell v. Office of Comptroller of Currency, 999 F.3d 130, 148 (2d Cir. 2021) ("In the administrative context, the ripeness doctrine . . . protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."). If Plaintiffs are granted leave to amend, they should include in their amended complaint factual allegations concerning their pursuit, if any, of the administrative procedures available for challenging the summonses and the default.

2413934, at *12 (S.D.N.Y. Mar. 8, 2023) (citing Horsting v. St. John's Riverside Hosp., No. 17-CV-3230 (CS), 2018 WL 1918617, at *6 (S.D.N.Y. Apr. 18, 2018)) ("At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim."); Johnson v. City of N.Y., No. 15-CV-8195 (GHW), 2017 WL 2312924, at *17 (S.D.N.Y. May 26, 2017) ("By failing to address Defendant's arguments in support of dismissing this claim, it is deemed withdrawn or dismissed as abandoned."); Bonilla v. Smithfield Assocs. LLC, No. 09-CV-1549 (DC), 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009) (concluding that claims were abandoned where defendants raised three arguments for dismissal and plaintiff responded to only one).

Here, Plaintiffs' memorandum of law in opposition to the City Defendants' motion to dismiss responds to none of the arguments raised by the City Defendants for dismissal of the claims. The memorandum of law includes only a brief, three-paragraph legal argument that does not address any specific contention raised by the City Defendants for dismissal of the claims. See ECF No. 67 at 3. As such, Plaintiffs should be deemed to have abandoned their claims and dismissal of the complaint on this basis alone is appropriate. As discussed below, there are other grounds for dismissal as well.

### 2. *Plaintiffs' First Amendment claim*

Count III of the complaint alleges that the City Defendants denied Plaintiffs' right to Free Expression under the First Amendment—presumably based on the fact that Swing 46 provides live music and entertainment—although the complaint does not make the basis of the claim clear. See ECF No. 1 at ¶¶ 38-45. The City Defendants concede that music constitutes expression protected by the First Amendment. See ECF No. 42 at 12; see also Genco Importing Inc. v. City of N.Y., 552 F. Supp. 2d 371, 380 (S.D.N.Y. 2008) ("It is common ground that music is a form

of expression protected by the First Amendment."). However, the "First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." Heffron v. Int. Soc. for Krishna Consciousness, Inc., 452 U.S. 640, 647 (1981); see also Olivieri v. Ward, 801 F.2d 602, 605 (2d Cir. 1986), cert. denied, 480 U.S. 917 (1987) ("The First Amendment does not guarantee an absolute right to anyone to express their views any place, at any time, and in any way they want."). For this reason, municipalities may "constitutionally impose reasonable time, place, and manner regulations" on speech and expression so long as the regulation does not discriminate based on the content of the expression, is narrowly tailored, and leaves open ample alternative channels for communication. See Barr v. Am. Assoc. of Pol. Consultants, Inc., 591 U.S. --, 140 S. Ct. 2335, 2346 (2020) (citing Hudgens v. N.L.R.B., 424 U.S. 507, 520 (1976)); see also Genco Importing, 552 F. Supp. 2d at 380.

Noise ordinances, like the one Plaintiffs appear to be challenging here, have repeatedly been upheld as lawful, content neutral, time, place, and manner regulations. See e.g., Marcavage v. City of N.Y., 918 F. Supp. 2d 266,  270-75 (S.D.N.Y. 2013) (concluding that New York City law that required a license to use a sound application device and restricted the time and place in which such devices could be used was a content neutral regulation permissible under the First Amendment); Costello v. City of Burlington, 632 F.3d 41, 45-47 (2d Cir. 2011) (upholding city noise ordinance against First Amendment challenge where ordinance was content neutral and narrowly tailored); Genco Importing, 552 F. Supp. at 386 (dismissing First Amendment claim brought by owner of a bar alleging that certain City Noise Code prohibitions were unconstitutional).

The complaint fails to state a claim for violation of the First Amendment. As pled, all of Plaintiffs' claims stem from the receipt of several summonses for noise complaints. See ECF No.

1 at ¶ 15. However, Plaintiffs fail to provide any details about the summonses. There are no allegations concerning the number of summonses received, the dates they were issued, who they were issued to, or even the specific conduct that allegedly led to the issuance of the summonses. See ECF No. 1 at ¶¶ 15, 17, 27. Further, there are no allegations in the complaint explaining how the City Defendants are impeding Plaintiffs' ability to play music at Swing 46. Id. More problematic, Plaintiffs have failed to identify a specific provision of the Noise Control Code that they claim violates the First Amendment.[10]

In short, Plaintiffs have failed to plausibly allege a First Amendment violation based on the issuance of noise summonses. I thus recommend that this claim be dismissed. "Courts generally grant leave to amend unless doing so would be futile or would result in prejudice to the non-pleading party." See IMH Broadway Tower Senior Lender, LLC v. Hertz, 415 F. Supp. 3d 455, 463 (S.D.N.Y. 2019); see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."). Plaintiffs have not yet had an opportunity to amend their complaint. "Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015). Further, given the lack of

---

[10] It is not clear if Plaintiffs are raising a Free Exercise claim under the First Amendment. Plaintiffs allege that the City is issuing summonses based on its desire to force specific establishments out of business due to "the presence of religious zealotry within the ranks of City Hall." See ECF No. 1 at ¶ 43. However, Swing 46 is not a religious establishment and there is no allegation that the speech or expression taking place there has any religious purpose. See Espinoza v. Mont. Dep't of Revenue, 581 U.S. 464, 475 (2020) ("The Free Exercise Clause . . . protects religious observers against unequal treatment and against laws that impose special disabilities on the basis of religious status.") (internal citations and quotations omitted). Other than the conclusory assertion that there is "religious zealotry within the ranks of City Hall," there are no well-pled factual allegations to support a claim based on a violation of the Free Exercise clause.

concrete factual details in the complaint, it is not readily apparent that leave to amend would be futile. I thus recommend that Plaintiffs be afforded an opportunity to amend to potentially allege facts to support a viable First Amendment claim.

### 3.  Plaintiffs' Due Process claims

Count II of the complaint alleges "Constitutional Violations by Defendants against Plaintiffs." See ECF No. 1 at 11. Plaintiffs claim that the City Defendants' acts or omissions denied them "the right of equal protection under the law, due process, a fair trial, right to a defense, and as with [P]laintiff Akhtar, a right to be free of discrimination." Id. ¶¶ 36-37. As an initial matter, to the extent Plaintiffs contend that they have been denied the "right to a defense" or the right to a fair trial, those are constitutional rights guaranteed only to criminal defendants. See Ramchair v. Conway, 601 F.3d 66, 73 (2d Cir. 2010) (explaining that "the right to a fair trial is guaranteed to state criminal defendant[s]") (internal citation and quotations omitted); United States v. Campbell, 266 F. Supp. 3d 624, 631 (E.D.N.Y. 2017) (attributing the "right to present a defense" to the Sixth Amendment, which only applies to criminal defendants). It is thus not applicable to a civil administrative proceeding.

### a.  Plaintiffs' Equal Protection claim

Plaintiffs allege that the City Defendants infringed their equal protection rights. See ECF No. 1 at ¶¶ 36-37. The Equal Protection Clause of the Fourteenth Amendment requires that "all persons similarly situated should be treated alike."[11] See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). The Second Circuit has explained that "there are several ways for a plaintiff to plead intentional discrimination that violates the Equal Protection Clause." Elliot v.

---

[11] The Equal Protection Clause extends to corporate entities like Swing 46. See Santa Clara Ctny v. S. Pac. R. Co., 118 U.S. 394, 396 (1886) (stating that the Equal Protection Clause applies to corporations).

City of N.Y., No. 23-CV-352 (AT) (VF), 2024 WL 1119275, at *7 (S.D.N.Y. Mar. 14, 2024) (internal quotations omitted) (citing Brown v. City of Oneonta, 221 F.3d 329, 337 (2d Cir. 2000)). Plaintiffs have not identified which theory of equal protection they rely on in the complaint. However, the complaint alleges that Akhtar is ethnically Bangladeshi and is thus "particularly susceptible to government overreach." See ECF No. 1 at ¶¶ 30-31. I thus interpret Plaintiffs to be raising a selective-enforcement claim. Such a claim requires a plaintiff to show that "they were treated differently than an identifiable, similarly situated group of individuals for malicious reasons, including but not limited to racial prejudice." Doe v. Vill. of Mamaroneck, 462 F. Supp. 2d 520, 543 (S.D.N.Y. 2006) (citing LeClair v. Saunders, 627 F.2d 606 (2d Cir. 1980)). To make out this type of equal protection violation, a plaintiff must identify a "comparator who received more favorable treatment from the defendants." Id. (citing Hu v. City of N.Y., 927 F.3d 81, 91 (2d Cir. 2019)).

Plaintiffs have also failed to allege a plausible Equal Protection Clause violation. First, Plaintiffs have not identified any similarly situated group of individuals or businesses that were treated differently than Akhtar or Swing 46. There are no allegations in the complaint that similar restaurants, bars, or night clubs in Manhattan did not receive noise complaints or summonses despite playing loud music or emitting loud noise. See ECF No. 1 at ¶ 18. In fact, the only mention in the complaint of another business suggests that those businesses also received noise complaints like Swing 46. See id. ¶¶ 18, 27 ("[Some merchants] are under assault with noise complaints to put them out of business . . . ."). The failure of Plaintiffs to plead the existence of a similarly situated comparator who was treated differently is fatal to their Equal Protection claim based on a selective-enforcement theory. See Lepper v. Village of Babylon, No. 18-CV-7011 (JMA) (AYS), 2022 WL 939719, at *19-20 (E.D.N.Y. Mar. 29, 2022) (dismissing claim where

plaintiffs failed to establish that they were treated differently than their provided comparators or that the comparators were similarly situated in all respects, as is required to make a claim of selective enforcement).

Second, to the extent Plaintiffs suggest that Akhtar was treated differently because of his Bangladeshi ethnicity (see ECF No. 1 at ¶ 31), the allegation is conclusory and unsupported by factual allegations. See Twombly, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement of relief requires more than labels and conclusions . . . ."). There are no allegations indicating or suggesting that the City Defendants or Eisenberg were even aware of Akhtar's ethnicity. There thus are no factual allegations to support a plausible inference that Akhtar or Swing 46 were treated differently because of ethnic or racial prejudice by Defendants.

Accordingly, Plaintiffs have not plausibly alleged an Equal Protection violation. I thus recommend that this claim be dismissed. Here, too, I recommend permitting Plaintiffs one opportunity to amend. Plaintiffs have not previously amended their allegations and it is not apparent that Plaintiffs could not include additional allegations to plausibly state a claim.

   b. *Plaintiffs' Procedural Due Process claim*

Plaintiffs allege that their right to due process was infringed by the City Defendants. ECF No. 1 at ¶ 36. Plaintiffs do not specify whether they are alleging a procedural or substantive due process violation. See id. However, a substantive due process claim is limited to the deprivation of a fundamental right. Goe v. Zucker, 43 F.4th 19, 30 (2d Cir. 2022) ("To determine whether a government regulation infringes a substantive due process right, we first determine whether the asserted right is fundamental.") (internal citation and quotations omitted). Fundamental rights are

those implicit in the concept of "ordered liberty, or deeply rooted in the nation's history and tradition." Id. The complaint does not include any allegations suggesting the infringement of a fundamental right. Further, to the extent Plaintiffs could be said to be raising a violation of a right to work or operate a business, such a right has not been recognized as a fundamental right. See Golden Glow Tanning Salon, Inc. v. City of Columbus, Miss., 52 F.4th 974, 979 (5th Cir. 2022) ("The Supreme Court does not now recognize a fundamental right to work . . . ."). Accordingly, I construe Plaintiffs to be raising only a procedural due process claim.

"[T]he deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Zinermon v. Burch, 494 U.S. 113, 125 (1990) (citations, emphasis, and internal quotation marks omitted). A procedural due process claim requires the "(1) possession by the plaintiff of a protected liberty or property interest, and (2) deprivation of that interest without constitutionally adequate process." Tooly v. Schwaller, 919 F.3d 165, 173 (2d Cir. 2019) (citation omitted); 689 Eatery Corp. v. City of N.Y., No. 18-CV-3732 (LJL), 2024 WL 519967, at *68 (S.D.N.Y. Feb. 9, 2024) (internal citation and quotations omitted). "The availability of adequate pre-deprivation and post-deprivation remedies under state law will defeat a § 1983 action brought against state actors . . . so long as the claimant had sufficient notice of such remedies." Rackley v. City of N.Y., 186 F. Supp. 2d 466, 481 (S.D.N.Y. 2002) (citing Zinerman, 494 U.S. at 127-28). "Particularly where they are backstopped by full adversarial proceedings in state court, pre-deprivation proceedings 'need not be elaborate' so long as they offer 'notice and an opportunity to respond' to the allegations." Oles v. City of N.Y., No. 21-CV-9393 (LGS), 2022 WL 1808905, at *6 (S.D.N.Y. June 2, 2022) (quoting Rivera-Powell v. N.Y.C. Bd. of Elections, 470 F.3d 458, 467 (2d Cir. 2006) (internal quotations omitted)).

Here, the City Defendants do not dispute that Plaintiffs have a property interest in their finances. See ECF No. 42 at 6-9. However, the City Administrative Code provides ample pre- and post-deprivation procedures following the issuance of a noise summons, and the complaint is silent as to whether Plaintiffs made any use of those procedures for challenging a summons. See ECF No. 1 at ¶ 20. Pre-deprivation administrative procedures were available to Plaintiffs prior to the issuance of a default or final judgment. See supra Statutory Background; see also N.Y.C. Charter §§ 1049-a(c)(1)(d), 1049-a(d)(1)(a); 48 R.C.N.Y. § 6-07(a). Plaintiffs have an opportunity to have a hearing before the ECB and may seek a stay of the entry of default and request a hearing to challenge that default. See N.Y.C. Charter § 1049-1(d)(1)(h). As for discovery, Plaintiffs can submit a written request for discovery five days prior to the scheduled hearing before the ECB. See 48 R.C.N.Y. § 6-07(a). And if a party fails to respond to a proper discovery request, Plaintiffs can raise the issue at the hearing where the Hearing Officer may take "whatever action he or she deems appropriate." Id. at § 6.07(c). Plaintiffs state they made a "formal demand to DEP" for evidence, but they do not allege any facts showing that they availed themselves of the proper procedures for obtaining pre-hearing discovery. See ECF No. 1 at ¶¶ 16, 20; 48 R.C.N.Y. § 6-07(a)-(c).

Further, Plaintiffs do not allege that they attempted to utilize the administrative procedures to vacate a default. See N.Y.C. Charter § 1049-a (d)(1)(h). They do not allege that they submitted a request, by application, for a new hearing after the default. 48 R.C.N.Y. § 6-21(a)-(c). Plaintiffs could also challenge the summonses, including the alleged default decision, in a proceeding in New York Supreme Court pursuant to Article 78 of the CPLR. See 48 R.C.N.Y. § 6-19(g)(2). In short, Plaintiffs have not alleged a violation of their procedural due process rights, because the provisions of the Noise Control Code provide an individual who has

received a noise complaint with notice and a hearing prior to any final administrative action and with procedures for challenging in state court a final administrative decision on the noise complaint. See Mordukhaev v. Daus, 457 F. App'x 16, 21 (2d Cir. 2012) (affirming the dismissal for failure to state a claim where the plaintiff did not avail himself of an Article 78 proceeding and availability of that proceeding confirmed that state law afforded him adequate process); see also Nestle Waters N. Am., Inc. v. City of N.Y., 689 F. App'x 87, 88 (2d Cir. 2017) (stating that "Article 78 review procedures clearly satisfy the requirements of procedural due process").

I thus recommend that Plaintiffs' procedural due process claim be dismissed. Here, too, it is not apparent that leave to amend will be futile. I thus recommend that Plaintiffs be afforded leave to amend.

### 4.  Plaintiffs' Section 1983 claim

Plaintiffs appear to be raising a stand-alone Section 1983 claim in Count I of the complaint. See ECF No. 1 at ¶¶ 30-34. To the extent Plaintiffs are attempting to assert a violation of Section 1983, the claim necessarily fails. "Section 1983 does not create any independent substantive right, but rather is a vehicle to 'redress . . . the deprivation of [federal] rights established elsewhere.'" Laface v. E. Suffolk Boces, 349 F. Supp. 3d 126, 153 (E.D.N.Y. 2018) (quoting Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999)); see also Rosa R. v. Connelly, 889 F.2d 435, 440 (2d Cir. 1989) ("It is fundamental . . . that § 1983 creates no independent, substantive constitutional rights but rather is a vehicle for enforcing such rights.") (citation omitted).

I recommend that any stand-alone Section 1983 claim be dismissed. See Rosa R., 889 F.2d at 440 (upholding the district court's dismissal of claim alleging that plaintiffs were entitled to redress under § 1983 because it did not constitute an independent claim or ground for relief).

As to this claim, leave to amend would be futile, and I therefore recommend that dismissal be with prejudice.

### 5.  *Plaintiffs' state-law claims*

In addition to their federal claims, Plaintiffs also allege two state-law claims: infliction of emotional distress in Count IV and fraud in Count V. See ECF No. 1 at ¶ 47. As a threshold matter, Plaintiffs' state-law tort claims should be dismissed as to the City Defendants because the complaint fails to allege that they filed a Notice of Claim prior to commencing the action. See N.Y.C. Admin. Code § 7-201(a); N.Y. Gen. Mun. L. § 50-e; Cortlandt v. Westchester Ctny., No. 07-CV-1783 (MDF), 2007 WL 3238674, at *8 (S.D.N.Y. Oct. 31, 2007) (dismissing a claim of fraud against Westchester County, in part, for failure to file notice of claim); Heim v. Dougherty, No. 19-CV-01160 (JLS) (MJR), 2020 WL 5659440, at *7 (W.D.N.Y. Aug. 31, 2020) (dismissing state law claim for negligent infliction of emotional distress for plaintiff's failure to allege that he served notice of claim on defendants).

Plaintiffs do not allege that they filed the required Notice of Claim in their complaint. See ECF No. 1 at ¶¶ 46-50. But even if Plaintiffs did not file a Notice of Claim prior to commencing this action, a state court may forgive the failure and accept a late Notice of Claim. See N.Y. Gen. Mun. Law § 50-e(5) ("[T]he court, in its discretion, may extend the time to serve a notice of claim . . . . An application for leave to serve a late notice shall not be denied on the ground that it was made after commencement of an action . . . ."). As such, the failure to plead whether they filed a Notice of Claim requires dismissal of the two state-law claims, but because Plaintiffs may still be able to file a Notice of Claim (if they have not already done so), it is not apparent that leave to amend would be futile. Consequently, this failure alone should not bar Plaintiffs from being afforded an opportunity to replead their state-law claims.

21

> a.  *Infliction of Emotional Distress*

Akhtar asserts tort-based claims for infliction of emotional distress arising from the acts

or omissions of all Defendants in Count IV of the complaint.[12] See ECF No. 1 at ¶ 47. He asserts

three different claims against all Defendants: (1) intentional infliction of emotional distress, (2)

reckless infliction of emotional distress, and (3) negligent infliction of emotional distress. Id. As

against DEP, the claim for intentional infliction of emotional distress must be dismissed because

such claims are prohibited against governmental entities. See Shahid v. City of N.Y., 208 A.D.3d

1380, 1380 (2d Dep't 2022) ("[P]ublic policy bars claims sounding in intentional infliction of

emotional distress against a governmental entity.") (quoting Lauer v. City of N.Y., 240 A.D.2d

543, 544 (2d Dep't 1997)).

As to the remaining City Defendants and Eisenberg, Plaintiffs also fail to plead the

required elements of a claim for intentional infliction of emotional distress. In New York, the tort

of intentional infliction of emotional distress has four elements: "(1) extreme and outrageous

conduct, (2) intent to cause, or disregard of a substantial probability of causing, severe emotional

distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional

distress." See Doe v. Alsaud, 224 F. Supp. 3d 286, 295 (S.D.N.Y. 2016) (internal citations and

quotations omitted). To constitute "extreme and outrageous conduct," the conduct "must be so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."

Tebbenhoff v. Electronic Data Sys. Corp., 244 F. App'x 382, 383 (2d Cir. 2007) (internal

---

[12] Though not specified in the complaint, this claim necessarily must be limited to Akhtar because a corporation cannot suffer emotional distress. See Forest Bay Contr. N.Y., Inc. v. Dir. Door Corp., 271 A.D.2d 484, 484 (2d Dep't 2000) (finding that judgment improperly awarded a corporation damages for emotional distress); see also Perry v. Manocherian, 675 F. Supp. 1417, 1430 (S.D.N.Y. 1987) ("[S]ince this court fails to see how an entity can suffer emotional distress," the infliction of emotional distress claim fails on behalf of the corporate defendants).

citations and quotations omitted). "The standard of outrageous conduct is strict, rigorous and difficult to satisfy." Scollar v. City of N.Y., 74 N.Y.S.3d 173, 178 (1st Dep't 2018) (internal quotations omitted). Further, a plaintiff's "conclusory allegations that he suffered emotional distress" are insufficient to state a claim. Specht v. City of N.Y., 15 F.4th 594, 606 (2d Cir. 2021).

The conduct alleged by Akhtar falls far short of the "extreme and outrageous" conduct required to plausibly plead a claim for intentional infliction of emotional distress. At its core, Akhtar complain about the issuance of noise complaint summonses to his business. See ECF No. 1 at ¶¶ 16, 24. This conduct is well outside the realm of conduct that courts in New York have found satisfies the "extreme" and "outrageous" standard for a claim of intentional infliction of emotional distress. See Cowan v. City of Mount Vernon, 95 F. Supp. 3d 624, 657 (S.D.N.Y. 2015) (concluding that instances of sexual battery repeated over a nearly year-long period constituted extreme and outrageous conduct for an IIED claim); Kohlhausen v. SUNY Rockland Cmty. Coll., No. 10-CV-3168, 2011 WL 1404934, at *16 (S.D.N.Y. Feb. 9, 2011) (concluding that allegations of "a longstanding campaign of intimidation and harassment" that included discriminatory conduct, "extremely offensive language," and "several physical threats" were sufficiently extreme and outrageous to adequately state IIED claim), abrogated on other grounds by Leitner v. Westchester Cmty. Coll., 779 F.3d 130 (2d Cir. 2015).

Further, even if Akhtar had plausibly alleged the existence of extreme and outrageous conduct by Defendants, the complaint fails to include non-conclusory allegations that Akhtar suffered severe emotional distress as a result of that conduct. See Tantaros v. Fox News Network, LLC, No. 17-CV-2958 (GBD), 2018 WL 2731268, at *10 (S.D.N.Y. May 18, 2018). Akhtar alleges that the noise complaints are risking the viability of his business and the "risk of

losing his business has caused [him] severe distress, affecting his heath [sic] and well being [sic]." <u>See</u> ECF No. 1 at ¶¶ 24, 26. He further alleges that defendants have inflicted "severe emotional distress resulting in damage and serious harm." <u>Id.</u> ¶ 47. All of these allegations are conclusory.

Akhtar does not include any factual allegations concerning the severity or duration of his emotional distress or mental anguish. He does not explain how the distress has impacted his daily activities. Nor does Akhtar describe how Defendants' conduct has affected his health. Plaintiffs' conclusory allegations of emotional distress do not suffice to plausibly allege the injury prong of a claim of intentional infliction of emotional distress.[13] <u>See</u> <u>Specht</u>, 15 F.4th at 606 (explaining that "conclusory allegations" that plaintiff suffered emotional distress were "insufficient to state a claim"); <u>Medcalf v. Walsh</u>, 938 F. Supp. 2d 478, 490 (S.D.N.Y. 2013) (dismissing IIED claim where the complaint did not make "any non-conclusory allegation that [the plaintiff] suffered severe emotional distress"); <u>Lyman v. City of N.Y.</u>, No. 96-CV-2382 (PKL), 1997 WL 473976, at *3 (S.D.N.Y. Aug. 20, 1997) (dismissing IIED claim where plaintiff alleged "in a conclusory manner that as a result of [defendant's] conduct she has suffered 'severe emotional distress . . . and substantial emotional anguish'").

In the alternative, Akhtar also pleads a claim for negligent infliction of emotional distress. <u>See</u> ECF No. 1 at ¶ 47. "To plead a negligent infliction of emotional distress claim under New York law, a plaintiff must allege (1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and

---

[13] To the extent Akhtar also pleads a claim for reckless infliction of emotional distress, such a stand-alone claim does not exist. <u>See</u> <u>Roe v. United States</u>, No. 18-CV-2644 (VSB), 2019 WL 1227940, at *6 (S.D.N.Y. Mar. 15, 2019) (There is no separate and distinct cause of action for reckless infliction of emotional distress in New York but "reckless conduct is encompassed within the tort of intentional infliction of emotional distress.") (quoting <u>James v. Flynn</u>, 19 N.Y.S.3d 618, 620 (3d Dep't 2015)).

(4) circumstances providing some guarantee of genuineness of the harm." Francis v. Kings Park Manor, Inc., 992 F.3d 67, 81 (2d Cir. 2021) (construing New York law). "To establish the fourth element, the plaintiff generally must plead that the breach endangered his physical safety or caused him to fear for his physical safety." Id. at n.57 (citing Taggert v. Costabile, 14 N.Y.S.3d 388, 396 (2d Dep't 2015)).

Akhtar fails to plausibly allege the existence of a duty owed to him from any Defendant. See Francis, 992 F.3d at 81 (affirming dismissal of negligent infliction of emotional distress where the plaintiff failed to allege that defendant breached a duty owed to plaintiff). To plead a claim for negligence, "[a] plaintiff must establish not only that the defendant owed a general duty of care to society as a whole, but also that the defendant owed a *specific* duty to the particular plaintiff." Vega v. Fox, 457 F. Supp. 2d 172, 183 (S.D.N.Y. 2006) (citations omitted and emphasis added). Courts have found the existence of a duty where there is a special relationship, such as where the defendant is in the "best position to protect against the risk of harm," like master-servant, parent-child, and common carrier-passenger relationships. Hamilton v. Beretta U.S.A. Corp., 727 N.Y.S.2d 7, 13 (N.Y. 2001); see also Crum & Forster Specialty Co. v. Safety Fire Sprinkler Corp., 405 F. Supp. 2d 223, (E.D.N.Y. 2005) (stating that contractual relationships may give rise to tort duty in certain circumstances). The complaint contains no allegations from which to plausibly suggest the existence of any duty.

Moreover, although Akhtar alleges that his health and wellbeing were impacted due to the stress caused by the noise complaints (see ECF No. 1 at ¶¶ 24, 26), he has also failed to allege that he feared for his physical safety. See Winslow v. N.Y.-Presbyterian/Weill-Cornell Med. Ctr., 161 N.Y.S.3d 775, 776 (1st Dep't 2022) (finding that a negligent infliction of emotional distress claim failed where a complaint did not allege that defendant "breached a duty

owed to plaintiff, unreasonably endangering his physical safety or causing him to fear for his own safety"). What's more, Akhtar does not allege that any Defendant acted negligently, pleading instead the commission of intentional acts such as harassment, schemes to "fraudulently collect 'evidence,'" refusal to provide evidence, and the issuance of summonses. See ECF No. 1 at ¶¶ 9, 20, 27, 29, 30. A claim for negligent infliction of emotional distress must fail where "no allegations of negligence appear in the pleadings." Santana v. Leith, 985 N.Y.S.2d 147, 149 (2d Dep't 2014) (affirming the lower court's dismissal of a negligent infliction of emotional distress claim for failure to state a cause of action where the claim was premised on intentional conduct and not negligence).

I thus recommend that Akhtar's claims for infliction of emotional distress be dismissed. Further, given the high bar to plead extreme and outrageous conduct for a claim of intentional infliction of emotional distress coupled with the nature and circumstances of the conduct here, Akhtar will be unable to plausibly allege a claim even if permitted an opportunity to amend his allegations. See e.g., Biberaj v. Pritchard Indus., 859 F. Supp. 2d 549, 557, 565 (S.D.N.Y. 2012) (determining that supervisors' repeated direction of profanities at employee, including calling her a "[b]itch, slut, [and] whore," were insufficiently extreme and outrageous to support an IIED claim); Elmowitz v. Exec. Towers at Lido, LLC, 571 F. Supp. 2d 370, 379 (E.D.N.Y. 2008) (determining that publicly shouting derogatory remarks and hitting plaintiff multiple times with a telephone was insufficiently extreme and outrageous for an IIED claim); Kaye v. Trump, 58 A.D.3d 579, 579 (1st Dep't 2009) (determining that rude remarks, commencing baseless lawsuits, filing criminal complaints towards plaintiff, and frightening plaintiff's daughter did not constitute extreme and outrageous conduct sufficient to sustain a claim). Additionally, given that a claim for negligent infliction of emotional distress requires the existence of a duty and

allegations that a plaintiff feared for his physical safety, leave to amend this claim would be futile, in light of the conduct alleged in the complaint. I thus recommend that dismissal of Akhtar's claim for intentional, reckless, and negligent infliction of emotional distress be dismissed with prejudice.

  *b. Fraud*

  Plaintiffs also purport to allege a claim of fraud against the City Defendants and Eisenberg. Plaintiffs allege that all Defendants are engaging in "fraudulent conduct" by "issuing, or causing to be issued summonses, and wrongfully prosecuting plaintiffs with the use of fraudulently obtained 'evidence.'" ECF No. 1 at ¶¶ 49-50.

  In New York, a claim for fraud requires that a plaintiff demonstrate "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Sullivan v. Gelb, No. 23-CV-5195 (GHW), 2024 WL 1836435, at *13 (S.D.N.Y. Apr. 25, 2024) (citing Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 421 (1996)). A fraud claim under New York law brought in federal court must also satisfy Federal Rule of Civil Procedure 9(b)'s "heightened pleading standard." Duran v. Henkel of Am., Inc., 450 F. Supp. 3d 337, 353 (S.D.N.Y. 2020) (citing Matana v. Merkin, 957 F. Supp. 2d 473, 484 (S.D.N.Y. 2013)). Under Rule 9(b), a party "must state with particularity the circumstances constituting fraud" and "conclusory allegations of fraud may be dismissed under Rule 9(b)." Trinity Bui v. Indus. Enters. of Am., 594 F. Supp. 2d 364, 371 (S.D.N.Y. 2009) (citing Shemtob v. Shearson, Hammill & Co., 448 F.2d 442, 444 (2d Cir. 1971)). To satisfy this heightened pleading standard, a complaint alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3)

state where and when the statements were made, and (4) explain why the statements were

fraudulent." <u>United States ex rel. Gelbman v. City of N.Y.</u>, 790 F. App'x 244, 247 (2d Cir. 2019)

(quoting <u>United States ex rel. Chorches v. Am. Med. Response, Inc.</u>, 865 F.3d 71, 81 (2d Cir.

2017)) (quotations omitted).

 Plaintiffs have failed to plausibly plead a fraud claim, given the heightened pleading

standard of Rule 9(b). As a threshold issue, Plaintiffs have not identified any particular statement

or omission of material fact by any Defendant. Nor have Plaintiffs alleged who made any such

statement or omission, or when or where such statement or omission was made. Additionally,

given that Plaintiffs have not identified any specific statement or omission, Plaintiffs have also

necessarily failed to explain why any statement or omission by any Defendant was false and

pertained to a material fact. Given these insufficiencies, I recommend that the fraud claim also be

dismissed. As to this claim, I recommend that Plaintiffs be granted leave to amend as it is not

readily apparent that Plaintiffs could not include sufficient factual detail to plausibly allege a

claim against Defendants.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Eisenberg's motion to dismiss be **GRANTED**. I further recommend that the City Defendants' motion to dismiss also be **GRANTED**. As to Counts I and IV in the complaint, I recommend that the claims be dismissed with prejudice. And as to Counts II, III, and V, I recommend that those counts be dismissed without prejudice and that Plaintiffs be granted leave to amend.

DATED:    New York, New York
          June 5, 2024                    Respectfully submitted,

_____
VALERIE FIGUEREDO
United States Magistrate Judge


## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

**Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the Honorable Jessica G.L. Clarke. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).**