## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Mohamed John Akhtar and La Buca Restaurant, Inc. d/b/a Swing 46 Jazz and Supper Club, <br><br> Plaintiffs, <br><br> v. <br><br> Eric M. Eisenberg, and John and Jane Does One through Thirty, <br><br> Defendants. | Case No. 23-cv-6585 (JGLC)(VF) <br><br> Jury Trial: X Yes    No <br><br> Plaintiffs' First Amended Complaint |

Plaintiffs  Mohamed John Akhtar and Swing 46 Dinner & Dance Club plead as follows:

## I. The Parties

1.   Plaintiff  Mohamed John Akhtar (hereinafter "plaintiff Akhtar"), is a person  and citizen of the United States of American, with a business address of 349 46th Street, Borough of Manhattan, New York, NY 10036, and is within the jurisdiction of the United States District Court for the Southern District of New York.

2.  Plaintiff Akhtar is a naturalized United States Citizen from the Country of Bangladesh. As such, he is within a protected class for the purposes of federal civil right's litigation.

3.  La Buca Restaurant, Inc., d/b/a as Swing 46 Jazz and Supper Club Dinner

1

(hereinafter " plaintiff Swing 46") is a corporation with a business address of 349 46th Street, Borough of Manhattan, New York, NY 10036. Swing 46 is owned by plaintiff Akhtar and is within the jurisdiction of the United States District Court for the Southern District of New York.

4.  Defendant Eric M. Eisenberg, (hereinafter "defendant Eisenberg") was, during the relevant time period, a resident of the Borough of Manhattan, New York, where he stills maintains property, and is within the jurisdiction of the United States District Court for the Southern District of New York.

5.  Defendant Eric M. Eisenberg lists a business address of 405 Lexington Avenue,  48th Floor, New York, NY 10174.  He also maintains a residential address of 454 West 46th Street, Apt. 1ES, New York, NY 10036.

6.  John & Jane Does One through Thirty are fictitious names for elected office holders, persons, corporations, New York City employees, agents, servants, and contractors, or other entities whose identities are presently unknown but will be identified as soon as the names become available.  Alternatively, if known, will be identified if facts develop such that there is a legal basis to be named in the complaint herein.

7.  During the relevant time period, defendant Eisenberg  acted as a for-

profit agent or servant for the City of New York's by issuing summonses for
"noise" complaints. Upon information and belief, the majority of complaints were
made against plaintiffs at the  address of  349 46th Street, Manhattan.

8.  Starting in or about the summer of 2022, defendant Eisenberg began to
issue fraudulent noise complaints and  summonses against plaintiffs in which he
could earn commissions, based upon fraudulent "evidence" through the City of
New, or one of its administrative entities.  At the time Eisenberg issued these
summonses and complaints, he knew, or should have known, they were based upon
fraudulent, nonexistent "evidence." He did this knowingly to harass plaintiff and
attempt to extract money from plaintiff  Akhtar and his business. Resulting money
damages being bad enough, plaintiff Akhtar was the only Muslim and person of
color in the vicinity of his business where the summonses were issued.

9.  Defendant Eisenberg had been observed, on numerous occasions,
engaging in a scheme to fraudulently collect "evidence" against plaintiffs.  Often
he would be observed placing a "listening device," that according to witnesses
appeared to be a cell phone, directly against speakers or glass windows of
plaintiffs' establishment.  Defendant Eisenberg, an attorney at the time, would
trespass onto plaintiffs' property after being warned not to do so, and enter plaintiff
Akhtar's business.  Shortly thereafter plaintiffs would receive fraudulently issued
noise complaints.

10.  At all relevant times, street noise was so loud that a person could not, between traffic, music blaring from tourist tricycles, along with other establishments, discern the source of the noise. Defendant Eisenberg essentially admits by his own actions that, in order to file a false complaints, he had to trespass upon plaintiffs' property or placing a purported listening device against a speaker or window of plaintiff Akhtar's establishment.

11.  With the fraudulent evidence, defendant Eisenberg would claim plaintiffs were violating a City of New York noise code.  Defendant Eisenberg would then file complaints against plaintiffs. If the complaints were sustained, he could fraudulently collect a "bounty" that, based upon the number of violations, could exceed thousands of dollars.  The City of New York currently claims it is owed by plaintiffs somewhere in the area of $15,000.00, and possibly more.  Since the City of New York has refused to respond to defense discovery requests, the full amount is unknown.  In any case, some of that money owed by plaintiffs, can still be handed over to defendant Eisenberb.

12.  One such summons, of the many issued by defendant Eisenberg, No. 0216 392  386, alleges there was an occurrence on October 11, 2022, a purported second offense.  Defendant Eisenberg lists himself as the "Enforcement Agency," and for "Agency Contact Information," defendant lists himself with an email address of ERICNOISE@HOTMAIL.COM  .  In that summons, defendant

Eisenberg, swore under the penalty of perjury, "that he personally observed [sic] the commission of the…charged offense."   How the fraudulent offense was "observed"  may appear to be a minor point, but defendant Eric M. Eisenberg, an attorney at the time, should have known the importance of the distinction for evidentiary purposes.

13.   The foregoing summons indicated that for "hearing options," plaintiffs could have the offense adjudicated through the New York City Office of Administrative Trials and Hearings, hereinafter "OATH."  By any account OATH appears as the preverbal "kangaroo court."  When plaintiff Akhtar attempted to contact OATH, he was subjected to extraordinary wait times taking his attention away from his business responsibilities.  At other times, when plaintiff Akhtar attempted to contact OATH, he would be transferred to voicemail.  The messages plaintiff would leave would often not be followed up with a return call.

14.   When plaintiff Akhtar was successful in reaching a live individual, he would often be given misleading or wrong information.   He had been told to appear for a hearing, then informed that it was adjourned, without giving him advance notice, causing him to lose a portion of his workday.  Plaintiff Akhtar was never advised when the hearing would be rescheduled.

15.   There were times when OATH  failed to notify plaintiff Akhtar of a

hearing date and he was unable to defend himself and his business. It became clear

the OATH main business was to collect fines without any regard to due process of

law and without protection of United States Constitutional rights. OATH operates

as a secretive entity, no information is provided on who the hearing officers, nor

what their credentials might be. It gives credence to the belief its sole existence is

collect fine money.

16.   In pursuant of defendant Eisenberg's fraudulent complaints, it is, upon

information and believe, he has utilized "wires" and/or services of the United

States Postal Service to transmit his summonses and complaints.

## II.   Jurisdiction and Venue

17.   Subject matter jurisdiction exists pursuant Article III of the United States

Constitution and the power vested in the federal courts giving authority to address

federal constitutional questions, along with federal law such as, but not limited to,

the Civil Rights Act of 1964, Title 42 United States Code § 1983, as amended, and

the Civil Rights Act of 1866, Title 42, United States Code §§ 1981-1982.

18. Supplemental jurisdiction exists pursuant to 28 United States Code § 1367

because the additional claims are so related to the facts herein, they form part of

the same case or controversy.

19.   Venue is proper in this Court pursuant to 28 United States Code

§ 1391(b)(1) and (2) because private defendants operate or do business within the Southern District of New York, and a substantial part of defendants' acts or omissions giving rise to plaintiffs' claims occurred in this District.

## Facts of the Case

20.    Plaintiffs provide a forum that, in addition to dining, includes live singing, music, and dance.  Patrons can have diner and engage in "swing dancing," an art form of dance dating back to the early jazz era. Lately, the dance has been undergoing a revival, drawing both local talent and, most significantly, tourists looking for something uniquely of a New York style.

21. In or about 2022, plaintiffs began receiving summonses over alleged noise complaints issued by private citizens, primarily from defendant Eric M. Eisenberg.  It became clear the City of New York was relying on a civilian "police force" for issuing noise summonses without, to the deprivation of its own citizens, providing neither training nor supervision.  Defendant Eisenberg continued to issue fraudulent complaints from in or about 2022 through 2023 when plaintiffs filed their first federal complaint in this Court.

22.    The civilian summonses are submitted to defendant New York City Department of Environmental Protection where ultimately a fine may be imposed, and, as in plaintiffs' case, without due process of law. These fines are extreme  and

because of the number of summonses plaintiffs have received, they face crippling debt.

23.   The fines are then ultimately converted to legal judgments, which can damage plaintiffs' credit rating, and among other items, prevent the business from obtaining loans. The speed for which this process is conducted is unusual for an agency of the City of New York. The conduct is highly suspicious, which gives credence to plaintiffs' concern that defendant Eisenberg and co-conspirators, are, among other schemes, trying to run plaintiffs out of business.

24.   This is not as farfetched as some skeptics appear to believe. It was recently reported that an attempt was made upon a proprietor of a similar business, in the Borough of Brookline, who was subjected to an extortion demand of $2,500 for an inside way of clearing up noise complaint fines. The extortioner is the brother of a high-level political appointee, now resigned, of the Mayor Eric Adams' administration for the City of New York.

25.   It is no coincidence that a business similar to plaintiffs' was subjected to crippling fines for alleged noise complaints. The only difference was, at least for now, the Brooklyn entity was forced out of business.

26.   As the scheme goes, upon collection of the imposed fine, a cut was made To civilians making the noise complaints. In other words, the City of New York was participating in a shady, modern-day bounty system, while utilizing defendant

Eisenberg as the willing bounty hunter. The City of New York was not trying to eliminate varmints for bounty, but rather, for running merchants into the ground with excessive fines based, and as is known in many cases, upon fraudulently obtained "evidence," for what appears to be nefarious reason. Among them are alleged to be to eliminate small businesses to make way for casino gmabling.

27. This comes as no surprise because within the current New York City Administration, fire safety is not immune from miscreant current or former New York employees, along with the well connected, seeking "off the books" money to solve problems. Not that plaintiff Akhtar would be ever inclined to do so, he does not have the money to go to high office staffers, or the well connected, to obtain relief from constitutional right's violations.

28. As an example of plaintiff Akhtar's attempt to defend within the "system," as has been suggested plaintiffs should be doing, on or about May 12, 2023 plaintiffs made a formal demand to co-conspirator NYC DEP for the production of any evidence that would support the charges brought against plaintiffs. NYC DEP refused to comply with the demand making it impossible to defend on defendant Eisenberg's fraudulent complaints. This refusal by the City of New York to provide "evidence" before hearing or trial, in support of defendant Eisenberg's noise complaints made against plaintiffs, has continued to this date.

29. By correspondence, dated July 1, 2023, to New York City Corporation

Counsel, a/k/a the New York City Law Department, the Hon. Sylvia O Hinds-

Radix, (now resigned), with copies to Mayor Eric Adams and NYC DEP

Commissioner Rohit T. Aggarwala, notice was giving in writing about the

fraudulent noise complaints. That correspondence was reinforced through phone

calls to attorneys for the New York City Office of Corporate Counsel, but to no

avail and no official ever bothered to respond. It was not until the fines were later

significantly reduced by legislation, which is an obvious concession that something

was wrong, and the filing of plaintiffs first federal complaint in this Court, the

harassment with fraudulent noise summonses and complaints were abated.  But for

plaintiffs, still facing crippling fines from the fraudulent complaints, amended

legislation was too little,  and too late.   Even upon being given ample and

multiple notices to the responsible officials, among them Mayor Adams and NYC

DEP Commissioner Aggarwala,  they still refused to take appropriate action to stop

the fraud that defendant Eisenberg, and possibly others, were perpetrating.

30.    In a glaring example of bureaucratic indifference, on Wednesday, July

26, 2023, Commissioner Aggarwala made a public televised appearance in behalf

of himself and NYC DEP.  Aggarwala made admissions that he was aware of the

financial motivation to fraudulently issue noise complaints by civilians for

monetary gain. Even with this admission by a high-level public official, defendant

Eisenberg continued with his fraudulent scheme, and the governmental entities that could have stopped him instead did nothing.

31.    Plaintiffs' have been damaged by defendant Eisenberg's scheme to fraudulently issue noise complaints, risking the viability of the plaintiff Akhtar's business. The risk of losing his business has caused plaintiff Akhtar severe distress, affecting his health and wellbeing, so sick he was often confined to bed. Plaintiff Akhtar, an lawful immigrant from the Country of Bangladesh, and now a naturalized United States Citizen, is fearful that a business he built himself, over a period of more than thirty years, is at risk because of the fraudulent scheme perpetrated by defendant Eisenberg, along with his government co-conspirators.

32.    Plaintiffs deny the sound of music from within the establishment would warrant such harsh treatment and punishment.  This fact goes beyond circumstantial evidence that plaintiff Akhtar was targeted because of his race, religion, and national origin.

33.    Plaintiff  Mohamed John Akhtar and his business, plaintiff  La Buca Restaurant, Inc., have provided entertainment to the local community and supporting the tourist trade for many years.  Members of the New York entertainment community have gotten their first opportunity at Swing 46 and are dependent on its viability to keep their jobs.  This also pertains to restaurant staff

who reside in the community. The collateral damage caused by defendant

Eisenberg, along with his governmental co-conspirators, is inestimable.

CAUSES OF ACTION

Count One
Title 42 United States Code §1983
Violations of Plaintiff Mohamed John Akhtar's Civil & Constitutional  Rights

34.  Plaintiffs repeat the allegations in each and every paragraph and line

above as if set forth at length herein.

35.  Notwithstanding the fact that plaintiff Akhtar is an emigre from the

County of Bangladesh and a Muslin, he retains, as does his business, the absolute

right as a United State Citizen to be free from harassment by individuals and

governmental entities, for which defendant Eisenberg co-conspired, because of his

national origin, race, color, and creed.

36.   Plaintiff Akhtar, as an ethic Bangladeshi and a Muslim, occupies a narrow

niche within American society. He is, by any account, a minority among

minorities.  As a result, he is particularly susceptible to government overreach and

has ample reason, as this case has shown, to be fearful. He holds legitimate

concerns he does not have a means to defend himself against powerful individuals

and governmental entities.

37.   Defendant Eisenberg, and while using the power of governmental office

of the co-conspirators within the City of New York, Mayor Eric Adams by design

or neglect, the New York City Department of Environmental Protection, and

unnamed John and Jane Does of the City of New York's employees, agents,

servants, and contractors, harassed and made fraudulent claims against plaintiffs,

for which defendant Eisenberg has financially profited by seeking out the only

minority business operator in the vicinity of plaintiffs' address at 349 46th Street,

Manhattan, New York.

38. The conduct of defendant Eisenberg, along with his governmental co-

conspirators, was blatantly unconstitutional and unlawful under United States

constitutional and statutory law, resulting in the deprivation of plaintiffs' rights to

privacy, free speech, equal protection,  assembly, liberty, along with all other rights

as enumerated in the United States Constitution and its amendments.

39.    As a result of defendant Eisenberg's fraudulent conduct, plaintiffs have

been financially damaged and suffered serious and potentially irreparable harm.

Individually, plaintiff Athkar has suffered physically and emotionally over the

potential loss of his business that he worked to build over a thirty-year period. He

fears that having been targeted as a Muslim and person of color, his personal safety

may be at risk as well.

Wherefore, plaintiffs seek judgment against defendant Eric M. Eisenberg for

compensatory and punitive damages, court costs, attorney's fees, and other just relief.

Count Two

Titles 42 United States Code §§ 1981-1982
Violations of Plaintiff Mohamed John Akhtar's Civil & Constitutional
Rights as Protected by the Civil Rights Act of 1866

Plaintiffs repeat the allegations in each and every paragraph and line above as if set forth at length herein.

40.   Plaintiffs, and particularly plaintiff Akhtar, because of is race and creed, are entitled to federal constitutional and statutory safeguards against unlawful acts, among them the fraudulent noise complaints made by defendant Eisenberg alleging false offenses causing severe financial penalties that could result in the potential loss of plaintiff's business.  In acting upon his scheme to defraud, defendant Eisenberg used the City of New York, its employees, agents, servants, and contractors, as a conspirator and instrument of defendant's unlawful conduct.

41.     Under the United State Constitution, along with its amendments, plaintiffs' have rights to privacy, free speech, equal protection, assembly, liberty, along with all other enumerated constitutional amendments and federal statutory rights. In particular,  plaintiffs have a right to Due Process of law, in which defendant Eisenberg's governmental co-conspirators have blatantly denied.

42.   As a result of defendant Eisenberg's issuance of fraudulent noise

complaints, and while using the power of governmental offices of the co-conspirators City of New York, Mayor Eric Adams, New York City Department of Environmental Protection, the City of New York's employees, agents, servants, and contractors,  plaintiffs have been damaged and suffered serious and potentially irreparable harm, and will continue to suffer harm into the future.

Wherefore, plaintiffs seek judgment against defendant Eric M. Eisenberg for compensatory and punitive damages, court costs, attorney's fees, and other just relief.

## Count Three

Pendent Jurisdiction
Intentional and/or Reckless Infliction of Emotional Distress
upon Plaintiff Akhtar by Defendant Eisenberg's Unlawful Conduct

43.   Plaintiffs repeat the allegations in each and every paragraph and line above as if set forth at length herein.

44.   As a result of all defendant Eisenberg's intentional and/or reckless acts as stated above, and by issuing fraudulent noise complaints and summonses,  defendant Eisenberg has inflicted serious harm upon plaintiff Akhtar causing severe emotional and physical distress.     Plaintiff Akhtar has been stricken and will suffer into the future.

Wherefore, plaintiffs seek judgment against defendant Eric M. Eisenberg for

compensatory and punitive damages, court costs, attorney's fees, and other just relief.

## Count Four
## Statutory and Common Law Fraud

45.   Plaintiffs repeat the allegations in each and every paragraph and line above as if set forth at length herein.

46.   Defendant Eisenberg caused harm to plaintiffs by issuing unlawful and fraudulent noise complaints against plaintiffs using false and/or nonexistent obtained "evidence."

47.   Defendant Eisenberg's fraudulent conduct was based upon personal animus against plaintiffs, particularly against plaintiff Akhtar because of his race and creed, and to fraudulently take money, through fake noise complaints, for which he was not entitled.

48.   As a result of defendant Eisenberg's fraudulent conduct, plaintiffs have been severely damaged and will continue to be damaged through existing fines imposed by the government of the City of New York.  Because of the aforementioned conduct,  defendant Eisenberg is guilty of statutory and common fraud for the offenses perpetrated against plaintiffs.

Wherefore, plaintiffs seek judgment against defendant Eric M. Eisenberg for

compensatory and punitive damages, court costs, attorney's fees, and other just relief.

Dated: September 16, 2024

Anthony N. Iannarelli Jr.
Attorney for Plaintiffs

Rule 11 Acknowledgement by Attorney Anthony N. Iannarelli Jr.

Under Federal Rule of Civil Procedure R. 11, and by signing below, I certify to the best of my knowledge, or upon information and belief, the complaint (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or not by frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically identified, will likely have factual support after a reasonable opportunity for investigation or discovery; and (4) the complaint otherwise complies with Rule 11.

Dated:  September 16, 2024

Anthony N. Iannarelli Jr.
74 Lafayette Avenue
Suite 202 #116
Suffern, NY 10901
212-431-1031
Attorney for Plaintiffs