UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Mohamed John Akhtar and La Buca Restaurant, Inc. d/b/a Swing 46 Jazz and Supper Club,<br><br>    Plaintiffs,<br><br>    v.<br><br>Eric Adams, Mayor of the City of New York, Rohit T. Aggarwala, New York City Department of Environmental Protection, Eric I. Eisenberg, and John and Jane Does One through Thirty,<br><br>    Defendants. | Case No.  23-cv-6585 (JGLC)(VF) |

**The Report and Recommendation of Magistrate Judge Valerie Figueredo, dated February 6, 2027, should not be disturbed and plaintiffs will comply with the directives therein, and oppose defendant Eric M. Eisenberg's Request for Modification**

**Report of Relevant Facts that are Required to be Brought by Counsel to the Court's Attention**

**Dated:  February 18, 2025**

**Anthony N.  Iannarelli Jr.**
**Attorney for Plaintiffs**
**74 Lafayette Avenue**
**Suffern, New York 10901**
**212-431-1031**
**anilaw2@gmail.com**

1

Table of Contents

Page(s)

Declaration of   Anthony N. Iannarelli Jr. ……………..……….3-24

Counsel's Need for an Reasonable Accommodation…………….3

By clear and convincing evidence, defendant Eisenberg
has made material misrepresentations to the Court as to
his residential status in the City of New York…………………. 6

It is believed that Defendant Eisenberg has now
 been served at his New York address so this
issue may be moot……………………………………………… 10

Plaintiffs' Response in opposition to defendant Eric M.
Eisenberg's contention that the Amended Order
overlooked and failed to address the "Notice of Motion"
was procedurally improper……………………………..……...…11

Prior Attempts at Service of Summons
 and Amended Complaint……………………………………….14

Defendant Eisenberg has been given an unfair advantage
with filing requirements…………………………….…………17

Defendant Eisenberg's is wrong in his contention the
Amended Order overlooked and failed to address attorney
Iannarelli supported the "Notice of Motion" with a
falsified document…………………………………….………..19

Defendant Eisenberg's remaining contentions have been
examined and plaintiffs have addressed them in the
 paragraphs above, and otherwise deny any remaining
 allegations …………………………………………………….…23

Conclusion………………………………………………………...24

## Declaration of Anthony N. Iannarelli Jr.

I, Anthony N. Iannarelli Jr., of full age declares and affirms, under the penalty of perjury, to the truth of the following. I make these statements upon my direct knowledge, and if not within my direct knowledge, upon information and belief, gathered from reliable and reputable individuals, that are willing to testify at trial.

1. I am the attorney for plaintiffs Mohamed John Akhtar and La Buca Restaurant, Inc. d/b/a Swing 46 Jazz and Supper Club (hereinafter "plaintiff").

2. I make this affirmation in acknowledgement of the Order, dated February 6, 2025, entered by the Hon. Valerie Figueredo, United States Magistrate Judge. Counsel has reviewed the Order with plaintiff Mohamed John Akhtar, owner of plaintiff La Buca Restaurant, Inc. Plaintiffs accept the directive to serve defendant Eric M. Eisenberg (hereinafter defendant Eisenberg) at his Miami, Florida address, and do not object to the Magistrate Report and Recommendation in that regard. However, the commentary by the defendant Eisenberg , dated February 7, 2025, calls for a response in rebuttal.

### Counsel's Need for a Reasonable Accommodation

3. Before I go further, I have previously advised the court that I am laboring under the burden of vision impairment, and I am still undergoing treatment. I have not asked for much in the way of accommodation, and indeed, the accommodations I have requested in the past have been for short spurts of additional

3

time to complete certain tasks. They are neither unusual nor burdensome and fall within accepted practices of an attorney asking for additional time under most circumstances.

4. In early February 2024, when I first brought the disability to the Courts attention, I requested that my personal medical information be kept under seal. ECF 50. However, there was an objection by defendant Eisenberg questioning my "truthfulness' and moved to unseal the record pertaining to the medical issue I was confronting. ECF 57. By correspondence to the court dated March 11, 2024, defendant Eisenberg took it one step further, and when I realized there might be protracted ligation over my privacy rights, I relented. ECF #s 57-60. I disclosed to the court, and in full public view, the medical issue I was confronting, along with statement from my physician. ECF # 61.

5. This left me troubled, here I was confronting the possibility of blindness, while at the same time I was under character attack by defendant Eisenberg. These attacks would permeate the case with defendant Eisenberg often asking, one step short of demanding, the court to sanction me.

6. Once again, I am embarrassed and humiliated by having to make personal medical information public, which I have by law the right to keep private. But If I do not make the information public, I will be subjected to character attacks

4

from defendant Eisenberg and it will result, as it did last time, in a distraction to the merits of plaintiffs' case. My goal is to keep the case moving.

7. My vision defect requires that I need more time to read documents than what I am accustomed to. Staring into a computer screen for extended periods while writing is extremely uncomfortable. Based upon the most recent assessment by my ophthalmologist, Tamara Lenis, M.D., I must ask again for an accommodation as to time. Exhibit 1. And as I make this most current disclosure, I do so for limited purposes and this is not a general waiver of any other privacy and medical rights that I am entitled to as a matter of law.

8. My request for accommodation is not meant for each and every task; rather, when I am in actual need of an accommodation. Among other items, my condition requires that once a month I must receive an injection directly through my eyeball and into the retina. If it sounds harrowing, it is, along with the emotional toll of the consequences if the treatment does not work over the long term. As long as I keep receiving treatments, my prognosis is fair.

9. This is very embarrassing and humiliating for me, and I would rather make these disclosures under seal. But I believe the needs of my client, along with the entertainment community members whom my client employs, outweigh any loss of dignity under the circumstances as they exist.

10. If, for whatever reason, my request for an accommodation is not

going be acceptable, even though I believe I can perform well with a reasonable accommodation, I will then need to be relieved from this case and have new counsel appointed.

11. When I say appointed, I mean finding an attorney that would volunteer to take the case, or perhaps an attorney from the Court's *pro bono* panel. I agreed to take on the case because my clients, and the greater jazz community, were victims suffering from egregious conduct perpetrated upon them as stated in the now amended complaint. From the beginning my clients have not had, nor do they currently have, the resources to pay attorney's fees. They are unable to retain an attorney. I took the case on because I believed it to be a worthwhile cause, and I would also be supporting the musical and dance arts community in the City of New York. My eye disorder did not manifest itself until I was deeply involved in the case.

12. I wish to continue with my representation, as do my clients. My physician believes I can work well with an accommodation, as do I.

<u>By clear and convincing evidence, defendant Eisenberg has made material misrepresentations to the Court as to his residential status in the City of New York.</u>

13. The Court has directed Plaintiffs to serve the summons and amended

Complaint on defendant Eisenberg at a Miami, Florida address by March 10, 2025. ECF 121. Plaintiffs intend on complying and are in the process of making that attempt.

14. It is noteworthy that the only evidence supporting defendant Eisenberg's claim to be located at the Miami, Florida address is, by him saying so, and as now written into the heading of the docket sheet.

15. Plaintiffs came to believe defendant Eisenberg resided in the City of New York, the place where the offenses occurred, and prepared a summons listing a residential address of 454 West 46th Street, New York, New York. Plaintiffs can produce documentary evidence that it is, in fact, defendant Eisenberg's legal residence. Defendant Eisenberg has misled the Court to believe otherwise. The basis for plaintiffs' beliefs are:

   a. A voter website, https://voterlookup.elections.ny.gov, maintained by the State of New York, reflecting a date of February 2, 2025, reveals a voter information address for "Eisenberg, Eric M. 454 West 46 Street, 1ES, New York 10036-1003. Exhibit   2.

   b. A filings of a Verified Complaint, with the New York County Clerk dated 01/27/2022, that contains the statement "… the plaintiff, Eric Eisenberg, was and still is a resident of the County, City and State of

New York."   To the best of my knowledge, there does not appear to be any amended pleadings changing that address.  Exhibit 3 at ¶ 1.

c.  A New York State Unified Court System report, dated 02/04/2025 reveals an attorney's name of Eric Mitchell Eisenberg, with an business address of PO Box 2452 New York, NY 10198-2452 (New York County).   The listed email address, ERICEIS@gmail.com appears to be the same email address used by defendant Eisenberg, and utilized with this Court's electronic filing system. Exhibit 4.

d.  A current "Registered Voter Found" website NYCvotersearch.com, that is, upon information belief, maintained by the New York City Board of Elections that lists an Eric M. Eisenberg with a residential address of 454 46 Street 1ES, New York, NY 10036. Exhibit 5.

e.  The mailing of legal papers by me via U.S. Priority Mail, Tracking Number:  9505 5158 4608 5007 7187 96, addressed to a Mr. Eric Eisenberg, 454 W. 46 Street, Apt 1ES, New York, NY 10036-8804. The tracking reveals a delivery date of January 11, 2025.  Besides postal confirmation of delivery, that mailing has not been returned as "undeliverable." Exhibit 6.

f.  Personal knowledge of defendant Eisenberg's residence. On the early evening of Tuesday, February 11, 2024 I arrived at 454 West 46th

8

Street, New York, where defendant Eisenberg is known to reside. Exhibit 7. It is a gated community with an outer unlocked gate that leads into a foyer. In the foyer is an electronic residential directory. On that directory, I found the name of Eric Eisenberg. Exhibit 8. I tried calling the apartment several times but did not get an answer. I then left a message on the intercom that I had some papers for Eric M. Eisenberg, and waited for several minutes but did not get a response. I then called the number for the superintendent stating that I was there to deliver papers for Eric Eisenberg. The superintendent, whom I had met on an earlier occasion and identified himself as Larry Caputo, came to the inner locked gate. I asked if he knew if an Eric Eisenberg still resided at that location. He replied, "yes," that he knew Eric Eisenberg did in fact reside there, but did not know if he was home. I asked permission to go to the Eisenberg residence so I could leave papers for defendant Eisenberg. He agreed and lead me to unit 1ES where there is a door that has a large E letter attached. Exhibit 9. On the floor by the door was a U.S. postal service priority package addressed to Eric M. Eisenberg. Exhibit 10. As there had been no response from anyone within the dwelling, and in the presence of the superintendent, I taped one copy of plaintiffs summons and amended

9

complaint to the door, and left a second summons and amended complaint by the door alongside the priority mail package. I then was accompanied by the superintendent to the exit.

g. A Miami-Dade County, Florida tax record with a mailing address of 454 West 46th Street, Apt. 1ES, New York, NY is 10036. It refers to a Christine Yu who is believed to an associate of defendant Eisenberg. Upon information and belief, Christine Yu is the owner of the property located at 1300 S Miami Avenue at # 1408.  Exhibit 11.

h. A Miami-Dade County Property Assessor's report making reference to the property located at 1300 S. Miami, Avenue, Unit 1408, Miami, FL. Christina Yu is listed as the owner. Significantly, it lists the property as a "non-Homestead" property, meaning it is not the primary residence of the owner. Exhibit 12.

i. A Voter Information Lookup for the State of Florida reveals that that no one by the name of Eric M. Eisenberg is registered to vote in that State. Exhibit 13.

16.  These documents and events, clearly and convincing, reveal defendant Eisenberg's legal residence is 454 West 46th Street, Apt. 1ES, New York, New York.  Why he has presented otherwise to the Court is unclear, but it shows a conscious intention to mislead the Court.  For plaintiffs' purposes, the record reflects

defendant Eisenberg remains within the jurisdiction of this U.S. District Court for
the Southern District of New York.

It is believed that Defendant Eisenberg has now been served at his New York
addressed so this issue may be moot.

17. As stated above, on Tuesday, February 18, 2025, counsel was granted
access to 454 West 46 Street, New York, N.Y. and escorted to the door where
defendant resides, unit 1ES. It was determined that defendant Eisenberg was not
present, or did not answer the door, and one copy of the summons and amended
complaint were taped to this door. Exhibit 14. A second summons and amended
complaint was left next to a priority mail package, also addressed to defendant
Eisenberg, leaning against the door. That was followed by mailing, through the U.S.
Postal Service by regular and priority mail, the summons and complaint in envelopes
marked personal and confidential. Exhibit 15.

18. Nevertheless, plaintiffs are aware they are still obligated, consistent
with the Courts' Order, to serve defendant Eisenberg at his Miami address.

Plaintiffs Response in opposition to defendant Eric M. Eisenberg's contention
that the Amended Order overlooked and failed to address the "Notice of
Motion" was procedurally improper.

19. Counsel acknowledges that what had been titled as a Notice of
Motion (hereinafter) should have submitted as a letter to the Magistrate Judge
Figueredo. ECF 117. But and as explained further below, a detailed explanation was

11

necessary to explain why plaintiffs had been unsuccessful in serving defendant Eric M. Eisenberg (hereinafter defendant Eisenberg). (See LR I. Communication with Chambers a. Letters.) Counsel has also learned, and has a reasonable belief it is true, that defendant has engaged in misconduct that counsel must report. It is unfortunate, but there is no discretion in reporting requirements.

20. The issues defendant Eisenberg complains about are largely caused by his own behaviors. He objects to the number of pages in the plaintiffs' request for alternative service. See Eisenberg Objections dated February 7, 2025; ECF 122. But as it has been described above, had it not been for defendant Eisenberg's misconduct and deceit, plaintiffs would not have had to request the relief sought herein.

21. As to the ten pages defendant Eisenberg claims of, it can be partly explained by the fact I was utilizing a large font type with enhanced line spaces. If the font and spacing were compacted to a standard size the document would be reduced, but admittedly still over the three pages consistent with Magistrate-Judge Figueredo local rules. But with that limitation, and in a search for the truth, it would be impossible to explain what has happened, and that is in the interests of justice.

22. Plaintiffs' pleading now before the Court should be viewed as a

12

notice of misconduct by an attorney, and a memorandum law would not explain why defendant Eisenberg has engaged in such egregious misconduct, as has already been detailed above, with more to follow below.

23. In his pleadings in opposition, dated February 7, 2025, defendant Eisenberg lists a series of grievances as to why this Court should not adopt the Magistrate's Report and Recommendation, and instead deny plaintiffs' request for the opportunity to prefect service upon him by way of alternative service. ECF 122. Plaintiffs' request for alternative service, over objection, had been followed by the Order to serve defendant Eisenberg at a Florida address he has provided to the Court. ECF 121.

24. The driving force that necessitated plaintiffs' request to allow for alternative service was because of obstruction, intentional and structural. Defendant Eisenberg lives in a gated community at 454 West 46th Street, New York, New York. For his registration as an attorney at law, he uses a post office as his legal contact address.

25. Of course, defendant Eisenberg could not be served at the post office box. And, until very recently, defendant Eisenberg could not be served at his 46th Street residential address. The unit where he resides, unit 1ES, lies beyond a locked gate that is unattended. For personal service, that would require the chance of encounter somewhere outside of the gated community.

13

26. This may be a case of first impression on several issues, but as the facts have played out, defendant Eisenberg has gotten the advantage because he resides inside a gated community and is  beyond the reach of the Courts' legal process until very recently.  As our society has become more economically divided, this is an important question.

### Prior Attempts at Service of Summons and Amended Complaint

27. Given defendant lives in a gated community, and maintains a post office box for purposes of attorney registration, it came down to a matter of chance to serve the summons and complaint upon defendant Eisenberg.

28.  On the evening of January 3, 2025, and before the January 5th deadline for service, I arrived at 454 West 46 Street residence of  defendant Eisenberg, with a summons and amended complaint. As has been described, the location has an outer gate that leads into a small hallway, and directly opposite is a locked second gate that leads into a courtyard and the actual residences. That second locked gate is not operated by a person, rather a resident can "buzz" the gate which releases the locking device allowing for entry.

29.  On the wall of that small hallway is a directory of residents with an intercom. That directory lists Eric M. Eisenberg as a resident. I pressed the button on the directory associated with defendant Eisenberg, but did not get an answer.

14

30. I remained at the location for a period of time, and eventually I observed someone that might be an employee of the gated community. I asked if an individual by the name Eric M. Eisenberg resided there, and he replied that defendant Eisenberg did. I asked if he knew that Eric M. Eisenberg was an attorney, and he replied in the affirmative. Without identifying the documents, I then asked I if I could leave some papers for attorney Eisenberg and he replied that he could.

31. Subsequent to leaving the papers for defendant Eisenberg, I later mailed a copy of the summons and complaint to an Eric M. Eisenberg , 454 West 46th Street, Apt. 1ES, New York, New York. That mailing has never been returned stamped "not at this address;" however, I am not sure this constituted adequate service. The reason is because I do not recall if I redacted the "Attorney at Law" that appears under my name on the return address. And I believe that is a requirement for alternate service under New York law. The only one that would know is defendant Eisenberg, but he has not acknowledged service nor returned the envelope.

32. The Court's Order of January 21, 2025, directs plaintiffs to file a "Certification" of service by January 31, 2025. ECF 116 (emphasis added). As I have stated above, I am not sure that service was perfected for want of redaction of "Attorney at Law." I will not certify to anything that I cannot be sure is correct;

15

therefore, I could not in good faith file a certification of service as directed by the Court.

33. I can argue to the facts as they occurred, and that attempts to serve shows good faith efforts to serve by January 5, 2025 deadline, but I cannot certify as to adequate service

34. Before the expiration of the January 31, 2025 deadline to file a certificate of service, I filed a (letter) motion asking the Court to take judicial notice of service resulting from defendant's use of the Court's electronic filing system, or, to allow for an extension to attempt alternative service. ECF 119. Over opposition to that request, and upon amendment of an earlier Order this Court allowed plaintiffs to serve defendant Eisenberg at his Miami, Florida address as listed on the docket by March 10, 2025. ECF 121.

35. Plaintiffs want and deserve their day in court, and defendant Eisenberg has done his best to stop that from happening, including lying to the Court. Defendant Eisenberg is an attorney, and he knows being served does not mean one is giving up a right to a defense.

36. As directed by the Court, plaintiffs will attempt service in Florida, but will maintain the position that defendant Eisenberg is a New York resident if there is an attempt to transfer the case to another jurisdiction. The acts that defendant

Eisenberg is alleged to have committed by plaintiffs all occurred in the district of this Court.

Defendant Eisenberg has been given an unfair advantage with filing requirements

    37.  Not utilizing electronic filing, when previously defendant Eisenberg had been a regular user, and giving the Court a Florida address so plaintiffs must copy and pay to ship their pleading, is very suspicious. It is placing a financial burden on plaintiffs of whom are virtually without assets.  This is an attempt to close the door to relief sought by plaintiffs through the courts.

    38.  I cannot explain this to my client Mohamed Akhtar, operator of a small business, why it is that defendant Eisenberg can suddenly announce he no longer uses electronic filing.  How is it that defendant Eisenberg demands of the Court to compel plaintiff Akhtar to make hard copies of papers, then pay shipping to Florida for Eisenberg's convenience, but at the same time Eisenberg can file papers electronically—as what is happening in this very motion herein.  There is a double standard, a lack of equal protection, and it is unfairly being applied against plaintiffs to defendant Eisenberg's advantage.

Plaintiffs made good faith efforts to timely serve plaintiffs' summons and complaint

    39. Defendant Eisenberg's counting of dates is not consistent with the facts.  See Eisenberg Response, p . 1, ECF 122. The Court had ordered plaintiffs to file their Amended Complaint by September 16, 2024, and it was filed on that date.

ECF #s 84 & 99.  At the time of that September 17th filing there were technical

issues, such as wrong selections chosen for EM ECF categories and the naming of

all parties.  There was nothing substantively defective with the filing of the amended

complaint and it was eventually docketed on October 7, 2024. *Id.* at 104. The

summonses were also defective for technical, non-substantive reasons, and in one

case because a letter was dropped from a name. The summons had to be corrected

several times and finally issued November 14, 2024. ECF 112.

40. Nothing about this is indicative of acting in bad faith or intentionally

breaking any of the rules, and plaintiffs have described above how difficult it had

been to serve defendant Eisenberg.  There are ministerial errors that do not call for

extreme consequences of dismissal in the absence of bad faith.  Since defendant

Eisenberg was actively evading service, he should not benefit from interfering with

the administration of justice.

41. Plaintiffs alerted the Court, before the expiration of the January 31,

2025 date that plaintiffs were to file a Certification of Service. The Order that

ultimately allowed plaintiffs to serve defendant Eisenberg in Florida by March 10,

2025 ensued.  ECF 121.

42. Moreover, there is still an open question as to whether plaintiffs

timely served defendant Eisenberg on January 3, 2025, and before the January 5,

2025 deadline.  And that is a factual question related to whether the return address

of the required mailing of the summons and complaint had the "attorney at law" designation redacted from the return address.

43.   If there are any gaps in time, they were short in duration. The mistake would then be for not asking for an extension of time earlier. If that is the case, and for all the reasons as stated above, plaintiffs' ask for an extension of time *nunc pro tunc*.   In balancing the equities, they weigh heavily in favor of plaintiffs, as the complaint alleges, were preyed upon by defendant Eisenberg.

Defendant Eisenberg is wrong in his contention that the Amended Order overlooked and failed to address attorney Iannarelli supported the "Notice of Motion" with a falsified document.

44.   Since the attorney Iannarelli, who defendant Eisenberg refers to is me, I will address this in the "first person."

45.   First, I will offer a general denial of the defendant Eisenberg's allegations dated February 7, 2025 in his Objections to the Magistrate's Report, and then I will address the issues more specifically.  While defendant Eisenberg is making his allegations over purportedly "fraudulent" filings, by his own statement he places himself at plaintiffs address at 349 W 46th St, New York, N.Y. on October 7, 2024. He does this while he has told the Court throughout he is not in New York, but rather in Miami, Florida where he wants plaintiffs pleadings shipped.

46. Plaintiffs' complaint was originally filed in July of  2023. Over a year

19

into plaintiffs' complaint pending in a federal court, then for over a year, he is back at plaintiffs' Swing 46 location, by his own admission, and causing trouble again. See Exhibit 16, Declaration of plaintiff Mohamed John Akhtar, dated February 14, 2025.

47. Nothing seems to deter this individual. He cannot even be honest with his pleadings with this Court. He knows no bounds and guardrails have never been put in place to the great detriment of plaintiffs.    And it is no wonder he is emboldened, because he has gotten away with inappropriate actions for so long.

48.   I have been an attorney for thirty-six years, served as a judicial law clerk, an educator, public servant, an assistant prosecutor/assistant district attorney in two states, served a 4 year term on the New Jersey Supreme Court's District Attorney Ethic's Committee, provided for the indigent, as the client herein, and I have never been accused of what the defendant Eisenberg alleges I have done. I most emphatically deny his allegations and find it unfortunate that defendant is making such a claim.

49.   It is very troubling that he would question my honestly and integrity. He seems to equate me with his party opponents.  I am just an attorney in the case, and I have to go by what witnesses tell unless I believe the statements are false. I have no reason to believe anyone connected with plaintiffs' case has spoken untruthfully.

50. I have made numerous mistakes over the course of my career, and I am sure I have made some herein, but nothing, ever, would suggest I have been untruthful in my advocacy on behalf of a client as defendant Eisenberg is alleging.

51.   As to that date of statement of Sarah Hayes, I have come to believe it was incorrectly dated as September 9, 2024. In actuality, and as will be further corroborated below, the document was signed and witnessed on October 9, 2024. For the record I wish to have the date corrected to Wednesday October 9, 2024. I make this assertion upon information provided to me by plaintiff, Mohamed John Akhtar, and offer what I believe to be reliable documentary evidence.

52.   Ms. Hayes is currently underway as an entertainer on a seagoing vessel, but I was able to communicate with her by phone. She has affirmed to me that the date of September 9, 2024 on the document is incorrect, rather, the date of the document, along with the events she described, occurred on October 9, 2024. She affirmed her statement was truthful and I was present when she signed it.

53.   Ms. Hayes also advised me that she took photographs of the events as they unfolded, and as described in her now corrected statement of October 9, 2024.  She has forwarded an array of photos she took on her cell phone with a date stamp of "Oct 9, 2024 Manhattan."   She asserts these are photos of defendant Eisenberg outside, and in the vicinity of, Swing 46 on that October date. See Exhibit 17, photographs purporting to be defendant date stamped Oct 9,  2024.

54.   Given the severity of defendant Eisenberg's allegations, in a stroke of good fortune Ms. Hayes gratuitously photographed the attorney that was present at the time she signed the document, that is, me. Ms. Hayes affirmed to me the photo was taken on October 9, 2024, the day I had been asked to come to the club because of an incident that occurred outside the premises with the defendant Eisenberg. Ms. Hayes statement speaks for itself as to what happened, and there is no need for me to address that here.

55.   Significantly, in defendant Eisenberg's statement of February 7, 2025, defendant Eisenberg admits he was present at the club on October 9, 2024. He places himself in the jurisdiction by a month more recent, from the current time, than the erroneous September 9, 2024 date. He also corroborates Ms. Hayes' recollection that the events occurred on October 9, 2024.

56.   Based upon consulting with Ms. Hayes by phone, reviewing the date photo of defendant Eisenberg, and the Declaration of plaintiff Akhtar, I believe the September 9, 2024 date is incorrect, and the date of October 9, 2024 is correct.

57.   As I examine the document my signature appears both underneath the the date and signature for Ms. Hayes. It tells me nothing more than I was present, when a person known to me as Sarah Hayes signed the document. I was present when she signed the document, and it was only her, and no one else signed it.

58.   There is nothing more to this other than a misdating of a document

22

that has, for the record, been corrected.

59. I have asked Mr. Eisenberg to retract his statement, but he refuses. And I am not going to further burden the court with this nonsense.

<u>Defendant Eisenberg's remaining contentions have been examined and plaintiffs have addressed them in the paragraphs above, and otherwise deny any remaining allegations</u>

The contentions are repetitive and have already been fully addressed in plaintiffs' paragraphs above and incorporate by reference.

60. If any burden or prejudice that might have occurred, it is because Defendant Eisenberg's own behavior. Defendants Eisenberg's conduct is unorthodox, venomous, and meanspirited.

61. Plaintiffs will comply with the Court's Order to serve defendant Eisenberg at the Miami, Florida address.

Conclusion

62. The Report and Recommendation by Magistrate Judge Valerie Figueredo, dated February 6, 2025, should not be disturbed and plaintiffs will comply with the directives therein.

63. Unless directed otherwise, counsel is of the belief that any reporting requirements for the issues described above have been satisfied with the filing of this document.

I affirm to the truth of the foregoing, and I am aware that I may be subject to

punishment for statements knowingly made false.

Dated: Feb18, 2023

Anthony N. Iannarelli Jr.
Attorney for Plaintiffs

24

Exhibit 1



**Formerly Retina Associates of NJ**

www.njretina.com

Richard M. Klein, MD
Michael J. Harris, MD
Stuart W. Noorily, MD
Christopher M. Seery, MD
Steven A. Madreperla, MD, PhD
Leonard Feiner, MD, PhD
David Y. Kim, MD
Vinod B. Voleti, MD

January 3, 2025

To Whom It May Concern:

I have been treating Anthony Iannarelli Jr. for macular degeneration over the past year. He may experience long-term limitations in the vision of his left eye. He has scheduled retinal appointments every 4 weeks for necessary treatment.

Any consideration that can be offered to alleviate his functional challenges at work would be greatly appreciated. If he requires time extensions for his tasks, please make the necessary accommodations.

Please contact me if you have any questions.

Thank you,

Tamara Lenis, MD

628 Cedar Lane
Teaneck, NJ 07666
T: 201-837-7300
F: 201-836-6426

1044 Route 23 North
Wayne, NJ 07470
T: 973-633-8808
F: 973-633-3892

5 Franklin Avenue, Suite G5
Belleville, NJ 07109
T: 973-450-5100
F: 973-450-9494

2952 Vauxhall Road
Vauxhall, NJ 07088
T: 908-349-8155
F: 908-349-8134

3196 Kennedy Boulevard
Union City, NJ 07087
T: 201-867-2999
F: 201-867-4440

200 S. Broad Street
Ridgewood, NJ 07450
T: 201-445-6622
F: 201-445-0262

182 South Street, Suite 5
Morristown, NJ 07960
T: 973-630-7700
F: 973-605-5807

Exhibit 2

SKIP TO MAIN CONTENT

Poll Site, Registration, and Mail Ballot Information

---

**Polling Place Information**

**Early Voting Poll Site**

For Early Voting locations and times in your area, please follow this link
through to your County Board of Elections
(https://findmypollsite.vote.nyc/) website.

**Election Day Poll Site**

**Please click on the following link to find your polling place**

**https://findmypollsite.vote.nyc/** (https://findmypollsite.vote.nyc/)

---

**Voter Information**

**Name :** EISENBERG, ERIC M
**Address :** 454 WEST 46 STREET 1ES, NEW YORK 10036-1003
**Mailing Address (if any) :**
**Political Party :** Democratic
**Voter Status :** Active

---

**Voter District Information**

**Election District :** 51
**County Legislative District :** 0
**Senate District :** 47
**Assembly District :** 75
**Congressional District :** 12
**Town :** NEW YORK
**Ward :**

---

New Search

Exhibit 3

FILED: NEW YORK COUNTY CLERK 01/27/2022 03:33 PM    INDEX NO. 150852/2022
NYSCEF DOC. NO. 1                                    RECEIVED NYSCEF: 01/27/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------------------X

ERIC EISENBERG,

                        Plaintiff,

           -against-

AMAZON LOGISTICS, INC., "ALPHA CARTING
COMPANY" (name being fictitious as the true identity
is currently unknown) and "BETA CARTING COMPANY"
(name being fictitious as the true identity is currently
unknown), BERNARD WILSON, ANTONIO "DOE"
(name being fictitious as the true identity is currently
unknown), KURT "ROE" (name being fictitious as the
true identity is currently unknown),

                        Defendants.

-----------------------------------------------------------------------------X

Index No.:

**VERIFIED COMPLAINT**

       Plaintiff, ERIC EISENBERG, by his attorneys, the LAW OFFICE OF RICHARD M.

KENNY, complaining of the defendant, alleges the following upon information and belief:

       1.     That at all times herein mentioned, the plaintiff, ERIC EISENBERG, was and still

is a resident of t he County, City and State of New York.

       2.     That at all times herein mentioned, the defendant, AMAZON LOGISTICS INC.,

(hereinafter referred to as "AMAZON"), was and still is a foreign business corporation doing

business within the State of New York, with a principal place of business located in Seattle,

Washington.

       3.     That at all times herein mentioned, the defendant, ALPHA CARTING

COMPANY, (hereinafter referred to as "ALPHA"), was and still is a domestic corporation, duly

existing under and by virtue of the laws of the State of New York.

1

Exhibit 4

# New York State Unified Court System

Skip To:   Content | Navigation

## Attorney Online Services - Search

**Close**

### Attorney Detail Report *as of 02/04/2025*

| | |
|---|---|
| **Registration Number:** | 4771804 |
| **Name:** | ERIC MITCHELL EISENBERG |
| **Business Name:** | ERIC EISENBERG |
| **Business Address:** | PO BOX 2452<br>NEW YORK, NY 10108-2452<br>(New York County) |
| **Business Phone:** | (518) 573-2714 |
| **Email:** | ERICEIS@GMAIL.COM |
| **Date Admitted:** | 12/08/2009 |
| **Appellate Division Department of Admission:** | 1st |
| **Law School:** | Columbia Law School |
| **Registration Status:** | Attorney - Currently Registered |
| **Next Registration:** | Jul 2025 |

### Disciplinary History

*No record of discipline*



The Detail Report above contains information that has been provided by the attorney listed, with the exception of REGISTRATION STATUS, which is generated from the OCA database. Every effort is made to insure the information in the database is accurate and up-to-date.

The good standing of an attorney and/or any information regarding disciplinary actions must be confirmed with the appropriate Appellate Division Department. Information on how to contact the Appellate Divisions of the Supreme Court in New York is available at <u>www.nycourts.gov/courts</u>.

  **Attorney Services**

Close

Exhibit 5



**BOARD OF ELECTIONS**
**IN THE CITY OF NEW YORK**

🔍 Registered Voter Found

👤 Poll Site Information ▸

**VOTER INFORMATION**

**Voter Serial Number (VSN):** 413398549

**Name:** ERIC M EISENBERG

**Residential Address:** 454 WEST 46 STREET 1ES, NEW YORK, NY 10036

**Mailing Address (if any):**

**Party:** DEM                          **Status:** Active

**VOTER DISTRICT INFORMATION**

**Assembly District:** 75               **Election District:** 051

**Congressional District:** 12          **Senate District:** 47

**City Council District:** 03           **Civil Court District:** 03

Back to search

1-866-VOTE-NYC

Exhibit 6



USPS Tracking®

Tracking Number:

**9505515846085007718796**

Copy    Add to Informed Delivery

Remove ✕

**Latest Update**

Your item was delivered in or at the mailbox at 3:37 pm on January 11, 2025 in NEW YORK, NY 10036.

⊘ **Delivered**

**Delivered, In/At Mailbox**

NEW YORK, NY 10036
January 11, 2025, 3:37 pm

See All Tracking History

What Do USPS Tracking Statuses Mean?

Exhibit 7



Exhibit 8



Exhibit 9



Exhibit 10



Exhibit 11

Paid By  FIRSTBANK FLORIDA

Miami-Dade County, Florida

Paid  11/26/2024    Receipt # EEX-25-000249                    $7,574.84

# 2024   Real Estate Property Taxes
## Notice of Ad Valorem Tax and Non-Ad Valorem Assessments
### S E E   R E V E R S E   S I D E   F O R   I M P O R T A N T   I N F O R M A T I O N

| FOLIO NUMBER | MUNICIPALITY | MILL CODE |
|---|---|---|
| 01-4139-126-2700 | MIAMI | 0101 |

CHRISTINA YU
454 W 46 ST APT 1ES
NEW YORK, NY   10036

Property Address
1300 S MIAMI AVE 1408

Exemptions:

| AD VALOREM TAXES | | | | |
|---|---|---|---|---|
| TAXING AUTHORITY | ASSESSED VALUE | MILLAGE RATE PER | $1,000 OF TAXABLE VALUE | TAXES LEVIED |
| Miami-Dade School Board | | | | |
| School Board Operating | 388,200 | 5.46800 | 388,200 | 2,122.67 |
| School Board Debt Service | 388,200 | 0.13400 | 388,200 | 52.02 |
| Voted School Operating | 388,200 | 1.00000 | 388,200 | 388.20 |
| State and Other | | | | |
| Florida Inland Navigation District | 384,318 | 0.02880 | 384,318 | 11.07 |
| South Florida Water Management District | 384,318 | 0.09480 | 384,318 | 36.43 |
| Okeechobee Basin | 384,318 | 0.10260 | 384,318 | 39.43 |
| Everglades Construction Project | 384,318 | 0.03270 | 384,318 | 12.57 |
| Childrens Trust Authority | 384,318 | 0.50000 | 384,318 | 192.16 |
| Miami-Dade County | | | | |
| County Wide Operating | 384,318 | 4.57400 | 384,318 | 1,757.87 |
| County Wide Debt Service | 384,318 | 0.42710 | 384,318 | 164.14 |
| Library District | 384,318 | 0.28120 | 384,318 | 108.07 |
| | | | | |
| Municipal Governing Board | | | | |
| Miami Operating | 384,318 | 7.13640 | 384,318 | 2,742.65 |
| Miami Debt Service | 384,318 | 0.25360 | 384,318 | 97.46 |
| Miami Miscellaneous | 384,318 | 0.43120 | 384,318 | 165.72 |

| NON-AD VALOREM ASSESSMENTS | | | |
|---|---|---|---|
| LEVYING AUTHORITY | RATE | FOOTAGE/UNITS | AMOUNT |
| | | | |

| AMOUNT IF PAID BY (pay only one amount) | | | | Combined Taxes and Assessments |
|---|---|---|---|---|
| Nov 30, 2024 $0.00 | | | | $7,890.46 |

⬥ RETAIN FOR YOUR RECORDS ⬥

---

## 2024  Real Estate
## Property Taxes

⬥   DETACH HERE AND RETURN THIS PORTION WITH YOUR PAYMENT  ⬥

01-4139-126-2700
FOLIO NUMBER

1300 S MIAMI AVE 1408
PROPERTY ADDRESS

LEGAL DESCRIPTION
1300 S MIAMI AVENUE CONDO
UNIT 1408
UNDIV 0.00141218%
INT IN COMMON ELEMENTS
OFF REC 28717

CHRISTINA YU
454 W 46 ST APT 1ES
NEW YORK, NY   10036



* 1 + 0 1 4 1 3 9 1 2 6 2 7 0 0 + 2 0 2 4 *

Mail your payment, in U.S. Funds from a U.S. bank, and payable to:
MIAMI-DADE OFFICE OF THE TAX COLLECTOR
200 NW 2nd Avenue, Miami, FL 33128

Scan to pay

| PAY ONLY ONE AMOUNT | |
|---|---|
| If Paid By  Please Pay | |
| Nov 30, 2024  **$0.00** | |
| | |
| | |
| | |
| | |

100000000000000000001413912627002024000000000000000000000000005

Exhibit 12



| HOME | EXEMPTIONS & OTHER | REAL ESTATE | TANGIBLE PERSONAL PROPERTY | PUBLIC RECORDS | ONLINE TOOLS | TAX ROLL ADMINISTRATION | ABOUT US | CONTACT US |

ADDRESS    OWNER NAME    SUBDIVISION NAME    FOLIO

**SEARCH:**   Owner Name    🔍    Back to Search Results

## PROPERTY INFORMATION ⓘ

**Folio:** 01-4139-126-2700

**Sub-Division:**
1300 S MIAMI AVENUE CONDO

**Property Address**
1300 S MIAMI AVE   UNIT: 1408

**Owner**
CHRISTINA YU

**Mailing Address**
454 W 46 ST APT 1ES
NEW YORK, NY 10036

**PA Primary Zone**
6408 RAPID TRANSIT-HIGH DENSIT

**Primary Land Use**
0407 RESIDENTIAL - TOTAL VALUE : CONDOMINIUM - RESIDENTIAL

| | |
|---|---|
| Beds / Baths /Half | 1 / 1 / 1 |
| Floors | 0 |
| Living Units | 1 |
| Actual Area | |
| Living Area | 649 Sq.Ft |
| Adjusted Area | 649 Sq.Ft |
| Lot Size | 0 Sq.Ft |
| Year Built | 2016 |

🔍 🔍 ▦ ⬚ ↻ ↗ 🔒 ZOOM    Map View ▼    Layers ▼

SW 13TH ST \ CORAL WAY

2024 Aerial Photography
60 ft

## Featured Online Tools

| | | |
|---|---|---|
| Comparable Sales | Glossary | PA Additional Online Tools |
| Property Record Cards | Property Search Help | Property Taxes |
| Report Discrepancies | Report Homestead Fraud | Special Taxing Districts and Other Non-Ad valorem Assessments |
| Tax Comparison | Tax Estimator | TRIM Notice |
| Value Adjustment Board | Tax Visualizer | |

## ASSESSMENT INFORMATION ⓘ

| Year | 2024 | 2023 | 2022 |
|---|---|---|---|
| Land Value | $0 | $0 | $0 |
| Building Value | $0 | $0 | $0 |
| Extra Feature Value | $0 | $0 | $0 |
| Market Value | $368,790 | $349,380 | $283,672 |
| Assessed Value | $368,790 | $349,380 | $262,770 |

## TAXABLE VALUE INFORMATION ⓘ

| Year | 2024 | 2023 | 2022 |
|---|---|---|---|
| COUNTY | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $368,790 | $349,380 | $262,770 |
| SCHOOL BOARD | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $368,790 | $349,380 | $283,672 |
| CITY | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $368,790 | $349,380 | $262,770 |
| REGIONAL | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $368,790 | $349,380 | $262,770 |

## BENEFITS INFORMATION ⓘ

| Benefit | Type | 2024 | 2023 | 2022 |
|---|---|---|---|---|
| Non-Homestead Cap | Assessment Reduction | | | $20,902 |

Note: Not all benefits are applicable to all Taxable Values (i.e. County, School Board, City, Regional).

## FULL LEGAL DESCRIPTION ⓘ

1300 S MIAMI AVENUE CONDO
UNIT 1408
UNDIV 0.00141218%
INT IN COMMON ELEMENTS
OFF REC 28717-2894

## SALES INFORMATION ⓘ

| Previous Sale | Price | OR Book-Page | Qualification Description | Previous Owner 1 |
|---|---|---|---|---|
| 11/23/2022 | $514,000 | 33487-4045 | Qual by exam of deed | PATAGONIA ESTATES LLC |
| 11/14/2016 | $397,900 | 30315-4107 | Qual by exam of deed | PRH 1300 S MIAMI AVENUE LLC |

Exhibit 13

# Voter Information Lookup

This site requires JavaScript to be enabled.

registration.elections.myflorida.com/en/CheckVoterStatus

Versión en Español

## CHECK YOUR REGISTRATION AND VOTING STATUS

**Check here for your voter registration status.** To find your polling place, sample ballot, and vote-by-mail ballot status, check your Supervisor of Elections website.

Please allow 1-2 business days for newly entered voter registration information to appear on this website.

No record found because the record:
- Does not exist.
- Is not yet available for lookup.
- Belongs to a preregistered voter and/or
- Is protected pursuant to section 119.071(2), (4) or (5), Florida Statutes.

For more information, please contact your county Supervisor of Elections.

### ONLINE VOTER REGISTRATION

Visit RegisterToVoteFlorida.gov to submit a new registration or to update your existing record.

RegisterToVoteFlorida.gov

Your name and date of birth must be entered as it appears in your registration record to find your information. (*) indicates required field.

* First Name : eric
* Last Name : eisenberg
* Birth Date (MM/DD/YYYY): [redacted]

[ Submit ] [ Cancel ]

* ☑ I understand and agree.

This website is intended for use by a registered voter to determine his or her voter registration and voting status. It is unlawful to knowingly alter another person's voter registration information or to attempt, assist with, or otherwise commit fraud in connection with the right to vote. See §§ 104.011, 104.041, and 104.41, Fla. Stat. For more information, visit our Voter Registration Information webpage.

Close your browser when done with your search.

Exhibit 14



Exhibit 15



**UNITED STATES POSTAL SERVICE.**

WYCKOFF
411 GREENWOOD AVE
WYCKOFF, NJ 07481-9998
(800)275-8777

02/14/2025                                04:37 PM

----------------------------------------------
Product              Qty   Unit      Price
                           Price
----------------------------------------------
Priority Mail®        1              $10.50
    New York, NY 10036
    Weight: 1 lb 5.70 oz
    Expected Delivery Date
        Tue 02/18/2025
    Tracking #:
        9505 5158 4608 5045 7297 92
    Insurance                        $0.00
        Up to $100.00 included
Total                                $10.50

----------------------------------------------
Grand Total:                         $10.50
----------------------------------------------
Credit Card Remit                    $10.50
    Card Name: VISA
    Account #: XXXXXXXXXXXX4416
    Approval #: 09034D
    Transaction #: 897
    AID: A0000000031010        Chip
    AL: VISA CREDIT
    PIN: Not Required
----------------------------------------------

Text your tracking number to 28777 (2USPS)
to get the latest status. Standard Message
and Data rates may apply. You may also
visit www.usps.com USPS Tracking or call
1-800-222-1811.

Save this receipt as evidence of
insurance. For information on filing an
insurance claim go to
https://www.usps.com/help/claims.htm
or call 1-800-222-1811

Preview your Mail
Track your Packages
Sign up for FREE @
https://informeddelivery.usps.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.

Tell us about your experience.
Go to: https://postalexperience.com/Pos
or scan this code with your mobile device.



or call 1-800-410-7420.

----------------------------------------------

UFN: 339330-0714
Receipt #: 840-50700204-3-5800529-2
Clerk: 22

Exhibit 16

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Mohamed John Sohel Akhtar and
La Buca Restaurant, Inc. d/b/a
Swing 46 Jazz and Supper Club,

        Plaintiffs,

            v.

Eric Adams, Mayor of the City of
New York, Rohit T. Aggarwala, New
York City Department of
Environmental Protection, Eric I.
Eisenberg, and John and Jane
Does One through Thirty,

        Defendants.

Case No. 23-cv-6585 (JGLC)(VF)

### Declaration of John Akhtar

I, Mohamed John S. Akhtar, of full age and the plaintiff herein, declare
and affirm, to the truth of the following:

1. I am a resident of the City of New York and own and operate
plaintiff La Buca Restaurant, Inc., d/b/a Swing 46 Jazz and Supper Club
(hereinafter "Swing 46").

2. The attorney for Swing 46, Anthony N. Iannarelli Jr., brought to
my attention a statement made by one the club's singers, Sarah Hayes,
might have been incorrectly dated as September 9, 2024. Upon my review
of "date stamped" photographs taken by Ms. Hayes, I recall the events as

1

having occurred on October 9, 2024, not on the September 9th date. I also recall the day because of the seriousness of the situation caused by the defendant Eric Eisenberg.

3. I now recall that on Wednesday, October 9, 2024, Ms. Hayes was to be at the club Swing 46 decorating. She called me to say she saw defendant Eisenberg standing on the patio of Swing 46 and staring at her through the club's main window. She told me he continued to linger and watch her as she worked by herself inside. She said she found his conduct unsettling and she became quite upset.

4. When I arrived Eisenberg was there and I asked him to leave, but he refused. Eventually, a Times Square security guard, employed by a private community workforce, showed up and defendant Eisenberg left.

5. At some point I called the club's attorney, Anthony N. Iannarelli Jr., who arrived after Eisenberg had already left. Ms. Hayes gave a written statement as to what happened and signed it in the presence of the attorney.

6. Based upon my review of "date stamped" photos of defendant Eisenberg taken by Sarah Hayes, my recollection tells me without a doubt these events occurred on Wednesday, October 9, 2024. This included Ms. Hayes signing her statement in the presence of the attorney Anthony Iannarelli.

2

7.  The dates can be confusing because of frequency that defendant Eisenberg would come and linger outside of the club for no apparent reason. I continued to see defendant through the late fall of 2024.  Previous to that time period, the defendant would regularly come by the club lingering and pointing with a handheld device. He continued to do this in spite of an ongoing federal complaint that I brought against him in an effort to get him to stop this behavior.

8.  To make it clear, I have had the benefit of reviewing defendant Eisenberg's statement of February 7, 2025. In his statement he claims my attorney Anthony Iannarelli was not present when Sarah Hayes signed her statement. Defendant Eisenberg's statement is false because I observed Ms. Hayes sign the document in my attorney's presence with my own eyes. The month is incorrect, the date was in October rather than September. I believe defendant Eisenberg is lying to hurt my case that I brought against him in my attempt to stop his harassing behavior.

9.  I also note that defendant Eisenberg claims he has been traumatized by the lawsuit brought against him on my, and the club's, behalf. Defendant Eisenberg's claim in itself is strange because he continued to reappear at Swing 46—the place that is purported to be his source of trauma--and for a period of hours on that October 9, 2024 date.

3

I affirm to the truth of the foregoing based upon my personal

knowledge, along with information and belief of credible witnesses.

Dated: February 14, 2025

Mohamed John Akhtar
President La Buca, Inc.

4

Exhibit 17



