UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

| |
|---|
| MOHAMED JOHN AKHTAR and LA BUCA |
| RESTAURANT, INC. d/b/a SWING 46 JAZZ |
| AND SUPPER CLUB, |

                    Plaintiffs

          -against-                           23-CV-6585 (JGLC) (VF)

ERIC M. EISENBERG and JOHN AND JANE
DOES ONE THROUGH THIRTY,

                    Defendants

_____

**MEMORANDUM OF LAW IN SUPPORT OF ERIC M. EISENBERG'S MOTION TO
DISMISS AMENDED COMPLAINT PURSUANT TO RULES 12(B)(1), 12(B)(2), 12(B)(5),
12(B)(6) AND 12(B)(7)**

## **Table of Contents**

*Table of Contents*……………………………………………………………………......*i*

*Table of Authorities*……………………………………………………………….....*ii*

PRELIMINARY STATEMENT……………………………………………………....1

ARGUMENT………………………………………………………………………....3

      The Court Should Dismiss the Amended Complaint for Lack of Ripeness, and because it seeks Avoiding Legally Authorized OATH Noise Ticket Proceedings (F.R.C.P. 12(b)(1)) …………………………………………………………………………………………....3

      The Court Should Dismiss the Complaint for Lack of Personal Jurisdiction over the Undersigned, in light of Insufficient Service of Process (F.R.C.P. 12(b)(2), and (5)) …………………………………………………………………………………………..7

      The Court Should Dismiss the Complaint for Failure to State a Claim (F.R.C.P. 12(b)(6)) ………………………………………………………………………………………..9

            General Legal Standard Regarding 12(b)(6) Motions to Dismiss …….………….9

            Administrative, Quasi-Judicial Matters of Which the Court May Take Judicial Notice…………………………………………………………….…..………….9

            Plaintiffs were Barred from Repleading Count One (Violation of §1983) and Count Three (Infliction of Emotional Distress) of the Amended Complaint ……………………………………………….……………………………………..12

            Plaintiffs Fail to State a Claim for Violation of §§1981-1982 (Count Two) …...……………………………………………………………………………..13

            Plaintiffs Fails to State a Claim for Fraud (Count Four)………………….…...19

            All Other Counts Must Also Be Dismissed Under Rule 9(b)'s Heightened Pleading Requirements ……………………...………………………………..26

            All Counts Must Be Dismissed Under N.Y. Civ. Rights Law §76-A……………27

      The Court Should Dismiss the Complaint for Failure to Join a Required Party (F.R.C.P. 12(b)(7)) ………………………………………………………………………………28

CONCLUSION………………………………………………………………………..29

CERTIFICATE OF COMPLIANCE WITH WORD COUNT REQUIREMENTS……………..31

## Table of Authorities

<u>**Caselaw**</u>

*5-star Management, Inc. v. Rogers*, 940 F.Supp. 512 (E.D.N.Y. 1996)…………………………10

*Ah Sin v. Wittman*, 198 U.S. 500 (1905)……………………………………………………………18

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)…………………...9, 20

*AVAIL 1 LLC v. Kanwaldeep S. Kalsi*, No. 23-cv-1641, D.I. 66 (LJL) (S.D.N.Y. Nov. 6, 2023)……………………………………………………………………………………………8

*Brown v. City of Oneonta*, 221 F.3d 329 (2d Cir. 2000)…………………………………..16, 17

*The City of New York v. Lloyd Myers*, 2023 NY Slip Op 34065(U), Index No. 450975/2022, MotionSeq. No. 0001 (S.Ct. N.Y. Cty. Nov. 15, 2023 (J. Machelle Sweeting)……………......2, 11

*Duran v. Henkel of America, Inc.*, 450 F.Supp.3d 337 (S.D.N.Y. 2020)………………………...26

*In re Fyre Festival Litigation*¸ 399 F.Supp.2d 203 (S.D.N.Y. 2019)……………………20, 23, 24

*Gallop v. Cheney*, 642 F.3d 364 (2d Cir. 2011)……………………………………………………...15

*Givens v. City of New York*, No. 11-Civ-2568 (PKC)(JCF) (S.D.N.Y. Jan. 10, 2012)…………...10

*Kavowras v. New York Times Co.*, 328 F.3d 50 (2d Cir. 2003)…………………………………..10

*Lacewell v. Office of Comptroller of Currency*, 999 F.3d 130 (2d Cir. 2021)…………………4, 5

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006)…………………………………………...23

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015)….…..…24

*Luckett v. Bure*, 290 F.3d 493 (2d Cir. 2002)………………………………………………....3

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000)……………………………………………3

*Mangiafico v. Blumenthal*, 471 F. 3d 391 (2d. Cir. 2006)……………………………………..10

*Mendez v. Banks*, 65 F.4th 56 (2d Cir. Apr. 12, 2003)...……………………………..…….5

*Munno v. Town of Orangetown*, 391 F. Supp. 2D 263 (S.D.N.Y. 2005)…………………………12

*Parkcentral Glob. Hub. Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198 (2d Cir. 2014)..........9

*Rivera v. U.S.*, 928 F.2d 592 (2d Cir. 1991)……………………………………………………...16

*Rapoport v. Banco Mexicano Somex, S.A.*, 668 F.2d 667, (2d Cir. 1982)………………….....29

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004)……………………………………………….26-27

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000)…………………………………………………10

*United States v. Armstrong,* 517 U.S. 456 (1996)…………………………………………17, 18

## Administrative Decisions

*Dietmar Detering (CC) v. Westhouse Hotel New York*, Appeal No. 2300439 (OATH Appeals Division, June 29, 2023) (available at https://archive.citylaw.org/wp-content/uploads/sites/12/ecb/2300439.pdf).................…....22, 25

*NYC v. M-R La Casa Delos Hits*, Appeal No. 1300125 (OATH Appeals Division, May 30, 2013) (available at https://archive.citylaw.org/wp-content/uploads/sites/12/ecb/Long%20Form%20Orders/ 2013/1300125.pdf).................………………………………………………………...22, 25

## State Statute or Local Law

N.Y. Civ. Rights Law §76-A…………………………………………………………3, 27, 29

N.Y.C. Admin. Code. § 24-202………………………………………………………….27-28

N.Y.C. Admin. Code. § 24-261……………………………………………..……...1, 25, 27

N.Y.C. Charter Section 1049-a(d)(1)(d)(i)……………………………………………….1, 11

N.Y.C. Charter Section 1049-a(d)(1)(h)…………………………………………………14

## Rules

Fed.R.Civ.P. 9(b)………………………………………………………….....3, 26, 27, 29

Fed.R.Civ.P. 12………………………………………….………………………………*passim*

Fed.R.Civ.P. 19(a)(1)……………………………………………………………...3, 28-29

N.Y. C.P.L.R. § 308……………………………………………………………………………..7

OATH Hearing Division Rules of Practice, Subchapter B, § 6-07……………………………6, 15

OATH Hearing Division Rules of practice, Subchapter C, § 6-12(b)………………….…...21, 22

OATH Hearing Division Rules of Practice, Subchapter E, § 6-20(b)………………..…...1-2, 11

OATH Hearing Division Rules of Practice, Subchapter E, § 6-21……………….……....4, 5, 14

I respectfully submit this memorandum of law in support of my motion to dismiss the Amended Complaint for lack of subject matter jurisdiction (F.R.C.P. 12(b)(1)), lack of personal jurisdiction F.R.C.P. 12(b)(2) based on insufficient service of process (F.R.C.P. 12(b)(5)), failure to state a claim (F.R.C.P. 12(b)(6)), and failure to join required parties (F.R.C.P. 12(b)(7)).

## PRELIMINARY STATEMENT

The Amended Complaint largely mirrors the original Complaint (D.I. 1), which was fully dismissed. Indeed, the original Complaint's Section 1983 and infliction of emotional distress counts, dismissed "with prejudice," (D.I. 72, pp.20-21, 27) have been repled as Counts One and Three of the Amended Complaint. The dismissal-with-prejudice is law of the case, and these improperly repled counts must again be dismissed.

More generally, Plaintiffs again allege receipt of administrative noise summonses issued by plural "private citizens", (D.I. 104, Amended Complaint, ¶21) which they disagree with, but, instead of attending any OATH hearings, chose to circumvent and collaterally attack the legally authorized administrative and Article 78 process, and unduly burden the undersigned, by bringing federal suit. Absent an OATH merits determinaton and/or state court Article 78 proceeding, there is no Article III case or controversy, the dispute is unripe, and this Court should exercise its discretion to allow the subject of this dispute (noise summonses) to proceed before OATH, as per New York City Council's legislative design. N.Y.C.Ad.Code §24-261(b).

In any event, the only identified summons, OATH-filed summons number 0216392386 (*see* D.I. 104, ¶12), for which Plaintiffs failed to attend a hearing and thereby defaulted, amounts to no more than a binding admission that (1) Plaintiffs violated the noise code and (2) the statements thereon regarding Plaintiffs' illegal, sidewalk-audible, outdoor noise speaker, were accurate. N.Y.C. Charter Section 1049-a(d)(1)(d)(i); OATH Hearings Division Rules of Practice,

Subchapter E, § 6-20(b); *The City of New York v. Lloyd Myers*, 2023 NY Slip Op 34065(U), Index No. 450975/2022, MotionSeq. No. 001, (S.Ct. N.Y. Cty. Nov. 15, 2023) (J. Machelle Sweeting); Accompanying Eisenberg Decl., ¶¶2-3, Exhs. 1-2.

Plaintiffs' failure to take advantage of OATH's specifically authorized discovery procedures for this summons, appear at the scheduled hearing, attempt to reopen the default, or file an Article 78 proceeding, leaves Plaintiffs with only an admission of playing music, from the exterior speaker within their awning to the public sidewalk to advertise a show or performance, dooming their Amended Complaint. Plaintiffs cannot plausibly allege any constitutional violation inherent in enforcing the noise code, a reasonable "time, place and manner" restriction, against Plaintiffs blasting their music to the public sidewalk for business advertising purposes from an exterior hidden speaker.

Nor, especially given Plaintiffs' admission-via-default, have Plaintiffs pled *facts* giving rise to a plausible inference that the summons for the October 11, 2022 noise violation was issued due to ethnic, racial, or religious discrimination, as opposed to due to the simple fact that Plaintiffs, admittedly, had an exterior, sidewalk-audible sound setup that violated the noise code. Plaintiffs have not identified even one 'comparator' business that was likewise playing music from an exterior speaker audible on the public sidewalk or likewise in violation of the noise code, but treated more favorably. Nor have Plaintiffs plausibly pled facts that, by the October 11, 2022 violation occurrence date, I possessed knowledge that the business was owned by a Bangladeshi, Muslim, or person of color, or that I have even ever made any derisive comments with respect to a person having such characteristics.

Plaintiffs claim for fraud, embedded in every Count, also fails. First of all, their vague objections to such, conclusorily-labeled-as-"fraudulent," evidence as may support the noise

summons is contradicted by their admission-by-default of both the noise summon's charge and its supporting allegations. Plaintiff fails to plead the elements of fraud, or the heightened pleading requirements of Fed.R.Civ.P. 9(b), or the "actual malice" requirements of anti-SLAPP Section 76-A of the Civil Rights Law.

Plaintiffs' email service of process is moreover insufficient, including for reasons provided at D.I. 160, and other reasons showing that other forms of service weren't impracticable.

Lastly, and again requiring dismissal, given the as-alleged central role of unjoined government bodies and officials as purported "co-conspirators," as well as the unjoined City of New York's direct monetary interest in the summonses-at-issue, Plaintiffs failed to join a required party. Fed.R.Civ.P. 12(b)(7); Fed.R.Civ.P. 19(a)(1).

## **ARGUMENT**

### **The Court Should Dismiss the Amended Complaint for Lack of Ripeness, and because it seeks Avoiding Legally Authorized OATH Noise Ticket Proceedings (F.R.C.P. 12(b)(1))**

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of establishing that jurisdiction exists by a preponderance of the evidence. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In ruling on such a motion, a court may consider evidence outside of the pleadings without converting the motion to dismiss into a motion for summary judgment. *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002).

This Court has explained to Plaintiffs that "For a state administrative action to be ripe for federal judicial review, the state administrative action must be final." D.I. 72, p. 11, n. 2 (June 5, 2024 R&R), *citing Lacewell v. Office of Comptroller of Currency*, 999 F.3d 130, 148 (2d Cir. 2021). This Court further explained, that to meet their pleading burden as to ripeness, (and/or as to exhaustion of administrative procedure) Plaintiffs would need to "include in their amended complaint factual allegations concerning their pursuit, if any, of the administrative procedures available for challenging the summonses and the default." D.I. 72, p. 11, n. 2. Plaintiffs have utterly failed to do so.

The only (allegedly "fraudulent") summons specifically identified in the Complaint is OATH-adjudicatable summons 0216392386, relating to a noise violation by Plaintiffs on October 11, 2022. D.I. 104, ¶12. Plaintiffs failed to appear at the hearing for this summons and thereby defaulted. Accompanying Eisenberg Decl., ¶¶2-3, Exhs. 1-2.

This alleged default is not a final determination of OATH, as OATH has procedures for vacating such determinations. OATH Hearing Division Rules of Practice, Subchapter E, Rule §6-21, *titled* "Request for a New Hearing after a Failure to Appear (Motion to Vacate a Default)." While the required showing varies with timing, OATH has procedures available for seeking to vacate a default within 75 days after the default (§6-21(b)), 76 days through one year of the default (§ 6-21(c)), and more than one year of the default (§6-21(f)). As applies to defaults, only two types of OATH decisions are "the Tribunal's final determination" – but still subject to review via Article 78: (1) a "second default decision" issued as to a particular summons (*i.e.* where the respondent misses a scheduled OATH hearing *twice*) (§6-21(e)); and (2) a "denial of a request for a new hearing after default." (§6-21(j)).

4

Plaintiffs, despite this Court's guidance, have not provided any factual allegations concerning challenging the summons by appearing at a hearing before OATH or concerning any pursuit of the administrative procedures (*i.e.*, under §6-21) available for challenging the (first) default on identified summons 0216392386. Nor have they pled that they have undertaken any Article 78 proceeding to obtain further review of the state administrative default decision. As a result of Plaintiffs failing to plead that they undertook these efforts, the state administrative default decision is not final, and the instant dispute concerning administrative noise summonses is not "ripe for federal judicial review." D.I. 72, p. 11, n. 2 (June 5, 2024 R&R), *citing Lacewell,* 999 F.3d at 148.

Moreover, while Swing 46 may assert that the OATH-returnable noise summons(es) issued against it are meritless and based on an inappropriate or even "fraudulent" or "nonexistent" form of evidence, this Court should not permit that dispute to be litigated in Federal Court in the first instance, when it belongs in front of OATH. The Second Circuit recently explained that:

> Ripeness is a constitutional prerequisite to exercise of jurisdiction by federal courts. For a cause of action to be ripe, and therefore justiciable, it must present a real, substantial controversy, not a mere hypothetical question. A claim is not ripe if it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all. The doctrine's major purpose is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements... [Plaintiffs'] prediction, however likely to become true, does not suffice to ripen Plaintiffs' claims because it relies on state administrative decisions that have not yet been made."

*Eileen Mendez v. David C. Banks*, 65 F.4th 56 (2d Cir. Apr. 12, 2023) (citations omitted).

Plaintiffs' claims likewise rely upon the outcome of future administrative decisions (of OATH). In the absence of these decisions, Plaintiffs' claims are not real and substantial but rather are merely hypothetical. Numerous questions as to the purportedly problematic noise summonses

and their outcome and effect on Plaintiffs can only be answered by Swing 46 choosing to engage, and actually engaging, with the OATH tribunal (and perhaps afterwards with a State Court Article 78 proceeding) as to its noise summons(es). For example:

- Will Swing 46 seek to or be able to have OATH reopen (vacate) the one default in the one summons it specifically identifies, so that it can obtain a noise hearing before OATH on the merits?

- Will Swing 46 make a rules-compliant request for discovery under OATH Hearings Division Rules of Practice, Subchapter B, §6-07?

- Will OATH order additional production of evidence at the hearing?

- Will OATH issue evidentiary or other sanctions against any party for alleged wrongful withholding of evidence?[1]

- What evidence will be offered in support of the noise summons at any merits-based hearing?

- Will that evidence be found legitimate, or somehow non-existent or fraudulent?

- Will that evidence, when weighed in combination with Swing 46's defenses, be found sufficient by OATH to make out a noise violation?

- What monetary penalty, if any, will be imposed by OATH against Swing 46 at that hearing (and will Swing 46 even bother to pay that penalty)?

- Will the reasoning of the Hearing Officer in issuing a merits decision be legally in error?

- Will such error be fixed by an appeal to OATH's Appeals Unit?

- Will any errors be corrected via an Article 78 proceeding?

---

[1] Plaintiffs do not plead that they requested the undersigned to produce any evidence, even as to identified summons 0216392386.

At the current stage, as alleged, Plaintiffs have suffered no legally cognizable harm. Swing 46 has received one specifically-identified noise summons. It has received a potentially vacatable default decision against it on that summons because Swing 46 didn't appear at the scheduled OATH hearing. There is no reason for this Court to entangle itself in a completely abstract, hypothetical, unripe dispute whose outcome is contingent on so many future occurrences before an administrative tribunal. Rather, Swing 46 should, at least in the first instance, seek to vacate its default decision, and then appear at a merits-based hearing before OATH, where it can present its arguments regarding the merits and lawfulness of the noise summonses, and regarding production of and sufficiency of evidence, so that the many hypothetical aspects of this dispute can be made more real and particularized. Or, if Swing 46 makes a Rules-compliant attempt to reopen its default and is denied, it should seek Article 78 review of that refusal in state court.

Dismissal is respectfully requested under F.R.C.P. §12(b)(1) (lack of subject matter jurisdiction).

## The Court Should Dismiss the Complaint for Lack of Personal Jurisdiction over the Undersigned, in light of Insufficient Service of Process (F.R.C.P. 12(b)(2) and (5))

Service of process is insufficient, and personal jurisdiction over the undersigned is thus lacking. While Plaintiffs have certified to emailing the Summons and Amended Complaint to the undersigned, direction of such alternative service under N.Y. C.P.L.R. 308(5) can only be made by the Court when service is impracticable (that is, in general, could not have been made) under C.P.L.R. 308(1), 308(2) and 308(4). N.Y. C.P.L.R. §308(4). This showing has not been made.

These arguments are more fully presented in my Rule 72(a) objections to the Magistrate Judge's authorization of email, at D.I. 160. The undersigned incorporates those arguments herein.[2]

      The undersigned also notes that personal, 'in-hand' service was also not shown to be impracticable. Due to my multiple filings in this case including the address in my signature block, Plaintiffs have been aware of the Florida apartment at which I was staying during the period encompassing all attempts to serve the Summons and Amended Complaint. The papers supplied by Plaintiffs only specifically describe a single service attempt for the Summons and Amended Complaint in Florida – At 4:52 PM on March 5, 2025, at the identified apartment's door at a time when only a woman was home and was on the phone (that is, I was out). D.I. 134, Page 4 of 9 (text entry at bottom under "Other:"). There was no showing or explanation provided as to why it would have been impracticable to serve me, for example 'in-hand', at another time of the day when I was actually in the Florida apartment or, for that matter, outside of the apartment door or apartment building as I enter or leave. *See AVAIL 1 LLC v. Kanwaldeep S. Kalsi*, No. 23-cv-1641, D.I. 66, at pp. 3-4, and n. 2 (LJL) (S.D.N.Y. Nov. 6, 2023) (finding 'in-hand' service was not shown to be impracticable, as "personal service need not be effected on Defendant at her residence" and noting possibility of service "as she enters or exits her apartment building") (also finding 'nail-and-mail' service not to be impracticable where plaintiffs failed to show they lacked access to a usable 'door').

      As email service is beyond the power of this Court to authorize, the purported email service of process is insufficient and dismissal is respectfully requested under F.R.C.P. 12(b)(2)

---

[2] While this Court did not find a clear abuse of discretion in the Magistrate Judge's finding, it also did not directly address *AVAIL 1* or additional arguments made herein or find that the authorization was necessarily based on the correct view of the law.

(lack of personal jurisdiction with respect to the undersigned), and 12(b)(5) (insufficient service of process).

## **The Court Should Dismiss the Amended Complaint for Failure to State a Claim (F.R.C.P. 12(b)(6))**

### General Legal Standard Regarding 12(b)(6) Motions to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), Fed R. Civ. P. "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotations omitted). A court must disregard legal conclusions, which are "not entitled to the assumption of truth" and instead examine the well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S.Ct. 1937. "Dismissal is appropriate when it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Parkcentral Glob. Hub. Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 208-209 (2d Cir. 2014) (quotations and citation omitted).

### Administrative, Quasi-Judicial Matters of Which the Court May Take Judicial Notice

The Amended Complaint identifies Summons 0216392386 as issued by the undersigned, as well as selected language on the face of the summons as allegedly fraudulent, but fails to include a copy of the Summons. D.I. 104, ¶¶12-13. The second paragraph of Plaintiffs' "Facts of the Case" section also highlights Plaintiffs' receipt of the summonses issued by other private citizen(s): "...plaintiffs began receiving summons over alleged noise complaints issued **by**

**private citizens**…"-again failing to include copies of these other-citizen summonses Plaintiffs received. D.I. 104, ¶21 (emphasis added). The public, governmental records showing these summonses and their handling at OATH, including those from OATH's public "ECB Ticket Finder", (available at https://a820-ecbticketfinder.nyc.gov/searchHome.action) can be considered on this motion to dismiss without conversion into a motion for summary judgment. *Givens v. City of New York*, No. 11-Civ-2568 (PKC)(JCF) (S.D.N.Y. Jan. 10, 2012) ("The Court consults the state administrative record because plaintiff references...her [OATH-adjudicated] termination hearing...but does not fully describe the proceeding[] or its outcome[s].") (taking judicial notice of records of OATH proceeding and dismissing the Amended Complaint) (citations omitted); *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) ("Pursuant to Fed.R.Evid. 201(b), we take judicial notice of the Midway complaint as a public record. *See, e.g., 5-star Management, Inc. v. Rogers*, 940 F.Supp. 512, 518 (E.D.N.Y. 1996) (taking judicial notice of pleadings in other lawsuits attached to defendants' motion to dismiss)"); *Mangiafico v. Blumenthal*, 471 F. 3d 391, 398 (2d. Cir. 2006)(affirming reliance on docket sheet in deciding motion to dismiss); *Theodore Kavowras v. New York Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003) ("Judicial notice may be taken of public filings…") (proper to consider plaintiff's NLRB charge on defendants' motion to dismiss).

Summons 0216392386, as to which, per these governmental records, Plaintiffs failed to attend the scheduled December 11, 2023 hearing and thereby "DEFAULTED",[3] states that, on October 11, 2022, "I [ERIC EISENBERG] OBSERVED RESPONDENT PLAYING MUSIC TO DRAW ATTENTION TO SHOW/PERFORMANCE FROM SPEAKER (E.G. IN AWNING) OUTSIDE OF JAZZ CLUB (AUDIBLE ON SIDEWALK)…" and further states that "I [Eric

---

[3] Plaintiffs also appear to admit to defaulting through nonappearance before OATH at D.I. 104, ¶15.

Eisenberg] personally observed the commission of the [noise] violation(s) charged above."
Accompanying Eisenberg Decl., ¶¶2-3, Exhs. 1-2.

By their default, Plaintiffs admitted to the noise violation charged, and the facts stated on
the summons. N.Y.C. Charter Section 1049-a(d)(1)(d)(i) ("Where a respondent has...failed to
appear on a designated hearing date...such failure to...appear shall be deemed, **for all purposes**,
to be an admission of liability and shall be grounds for rendering a default decision and order...")
(emphasis added); OATH Hearings Division Rules of Practice, Subchapter E, § 6-20(b) ("Upon
such default . . . **all facts alleged in the summons will be deemed admitted**, [and] the
Respondent will be found in violation…") (emphasis added); *The City of New York v. Lloyd
Myers*, 2023 NY Slip Op 34065(U), Index No. 450975/2022, MotionSeq. No. 001, (S.Ct. N.Y.
Cty. Nov. 15, 2023) (J. Machelle Sweeting) (applying preclusive effect to OATH defaults, and
precluding relitigation of substantive merits issue that could have been raised before OATH or in
a state court Article 78 proceeding).

Plaintiffs also admitted to the noise violations and similar facts stated on the five
summonses they received from the *other private citizen*, as Plaintiffs defaulted on those as well
and have not had those defaults vacated. *Id.*; D.I. 104, ¶11 (reference to "$15,000, and possibly
more," a penalty sum reached due to the plural summonses by the other citizen), ¶12 (receipt of
summonses from "private citizens"); accompanying Eisenberg Decl., ¶¶2-3, Exhs. 1-2 (*e.g.* "I
personally observed this restaurant [Swing 46] deploy at least one speaker, hidden inside the
awning, outside, playing music, in order to attract attention for this business. | *NINTH
OFFENSE* of this respondent…I affirm under penalty of perjury that I personally observed the
commission of the violation(s) charged above").

11

In short, Plaintiffs have admitted to, and are estopped from denying, that they have been in violation of New York City's noise code, playing music to and audible on the public sidewalk, from at least one outdoor speaker hidden inside the Swing 46 jazz club's awning, in order to attract attention to this business and its shows/performances. They have also admitted to such violations being observed by the issuing citizens.

As will be discussed further below, such admitted facts, in the context of the Amended Complaint, confirm that the Counts therein are not plausibly pled. *See Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268-69, 273 (S.D.N.Y. 2005) (taking judicial notice of state court records contradicting plaintiff's allegations in the complaint, and dismissing the complaint). For example, Plaintiffs have failed to provide any well-pleaded factual allegations that plausibly demonstrate summonses were issued to Swing 46 based on racial, ethnic, or religious discrimination (as opposed to based on the admitted fact that Swing 46 had an outdoor sound system playing music to the sidewalk in violation of the noise code). Plaintiffs cannot plausibly, or logically, plead fraud based on alleged untruthfulness of the exact statements on the 0216392386 summons that Plaintiffs themselves admitted to by defaulting before OATH. *See* D.I. 104, ¶12. It is thus clear, as further discussed below, that Plaintiffs' claims are barred as a matter of law.


<u>Plaintiffs were Barred from Repleading Count One (Violation of §1983) and Count Three (Infliction of Emotional Distress) of the Amended Complaint</u>

The original Complaint's Section 1983 and infliction of emotional distress counts were dismissed "with prejudice." D.I. 72, pp. 20-21, 22, 27. (dismissing with prejudice as to "*Plaintiffs' Section 1983 Claim*" and "*Infliction of Emotional Distress*") (italics in original). The

Court's Order adopting the R&R in its entirety could not have been clearer as to what Plaintiffs were and were not allowed to replead. D.I. 85 ("Plaintiffs shall have **one opportunity** to amend with respect to Counts II, III, and V of the Complaint. … Counts I [Section 1983 Claim] and IV [Infliction of Emotional Distress] of the Complaint are DISMISSED with prejudice.") (emphasis in original). The dismissals are now law of the case, and Plaintiffs' remedy lies with appealing the dismissals-with-prejudice at the appropriate time, not with repleading these counts contrary to a prior court order. Dismissal of these two Counts of the Amended Complaint appears mandatory.

<u>Plaintiffs Fail to State a Claim for Violation of §§1981-1982 (Count Two)</u>

Plaintiffs' Count Two for violation of 42 U.S.C. §§1981-1982 appears awkwardly pled, with a shotgun-like approach, but might be read as asserting either a kind of Due Process violation that allegedly interfered with Plaintiffs defending from allegedly "fraudulent noise complaints," or alternately as asserting some form of selective-enforcement of noise complaints.

Supporting the selective-enforcement interpretation, Plaintiffs' Count Two has a non-numbered preamble incorporating prior portions of the Amended Complaint, which may include, for example, the immediately preceding numbered paragraph (D.I. 104, ¶39) stating that Plaintiff Akhtar fears "having been targeted as a Muslim and person of color." The Count further indicates that Plaintiffs and Akhtar should be safeguarded from the undersigned's allegedly "fraudulent" noise complaints "because of [Akhtar's] race and creed." (D.I. 104, ¶40). The Count alleges harm due to the undersigned's allegedly "fraudulent" noise complaints. (D.I. 104, ¶42).

Supporting the due process interpretation, Count Two, after a boilerplate recitation of "all...enumerated constitutional amendments and federal statutory rights," specifies what appears

13

to be the "particular" right purportedly being asserted: "In particular, plaintiffs have a right to Due Process of law, in which defendant Eisenberg's governmental co-conspirators have blatantly denied." (D.I. 104, ¶41). This might be read as a reference to the Amended Complaint's allegations that "OATH appears as the preverbal (*sic: proverbial?*) 'kangaroo court'" that Akhtar found difficult to navigate, (D.I. 104, ¶13) or to the allegation that NYC DEP did not respond to Plaintiffs' demand for evidence (D.I. 104, ¶28).

*The "Due Process" approach should be dismissed:*

With respect to such "Due Process" issues, which appear to be in the nature of procedural due process concerns, as was amply explained in the R&R dismissing the original Complaint, pre- and post-deprivation processes are available at OATH and via Article 78 with respect to challenging summonses, reopening (vacating) defaults, and obtaining evidence. (D.I. 72, pp. 4-5, 17-20). Many of the same procedural due process pleading failures are present in the Amended Complaint as were deemed fatal as to the original Complaint's procedural due process claim. Specifically, in the Amended Complaint, the "complaint is silent as to whether Plaintiffs made any use of [the City Administrative Code's ample pre- and post-deprivation procedures following the issuance of a noise summons] for challenging a summons." D.I. 72, p. 19. Plaintiffs appear not to have pled that took advantage of their "opportunity to have a hearing before the ECB," and plainly did not plead that they in any way "s[ought] a stay of the entry of default" or otherwise "challenge[d] that default." *Id;* N.Y.C. Charter § 1049-a(d)(1)(h); OATH Hearing Division Rules of Practice, Subchapter E, Rule §6-21. As for discovery, Plaintiffs failed to plead that they "submitt[ed] a written request for discovery five days prior to the scheduled hearing before the ECB" – indeed Plaintiffs do not plead that they even contacted the undersigned as to discovery on the sole identified summons, 0216392386, despite email and

postal contact information for the opposing party, "ERIC EISENBERG," being written on that summons. *See* D.I. 72, p. 19; Eisenberg Decl., ¶2, Exh. 1; 48 R.C.N.Y. §6-07(a) (providing for receipt of certain evidence "**from the opposing party**") (emphasis added). Nor did Plaintiffs plead attempting to raise discovery issues before a Hearing Officer, or for that matter plead attending a hearing at which that could occur. *See* D.I. 72, p. 19. Nor did Plaintiffs plead they challenged the summons or the default in New York Supreme Court via Article 78. *Id*. Given these many pleading failures as to availment of available administrative remedies, "[i]n short, Plaintiffs have not alleged a violation of their procedural due process rights." *See* D.I. 72, pp. 19-20 (collecting authority).

Additionally, notwithstanding vague speculation as to a co-conspiracy existing, the complaint has failed to plausibly plead that I in any way caused or am responsible for any alleged "Due Process of law" denial, which not defendant Eisenberg, but rather "defendant Eisenberg's [alleged] governmental co-conspirators have [allegedly] blatantly denied." D.I. 104, ¶41. Moreover, no facts, such as specific conversations, are alleged creating a plausible inference of any sort of conspiracy between myself and the government actors. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (Absent facts corroborating a meeting of the minds among the alleged conspirators, affirming dismissal of complaint and finding allegations of conspiracy to be baseless, noting "It is well settled that claims of conspiracy containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.") (citation and quotation marks omitted).

*Any §§1981-1982 claim requires racial discrimination and is limited to enumerated activities:*

Any interpretation of Count Two must pass additional hurdles in that Count Two is for violation of 42 U.S.C. §§1981-1982 (again, a shotgun approach, failing to identify even the

particular United States Code section purportedly at issue in this Count). One required element of these sections, based on their statutory language, is that the deprivation be based on differential treatment as compared to "white citizens," that is, discrimination with respect to race, ancestry or ethnic characteristic. *Rivera v. U.S.*, 928 F.2d 592, 607 (2d Cir. 1991) (affirming dismissal absent a sufficient showing as to such discrimination). As with U.S.C. § 1982, (given its similar construction) "[t]o establish a claim under 42 U.S.C. § 1981, plaintiffs must allege facts supporting the [] elements [of]...(2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities." *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000). "Section 1981, like the Equal Protection Clause, only prohibits intentional racial discrimination." *Id* (citation omitted) (dismissing claim).

Plaintiffs have not plausibly pled any facts leading to a plausible inference that, say, OATH poorly handled its processes, or DEP mishandled discovery requests, leading to a denial of due process, *because of Akhtar's race*. Plaintiffs do speculate as to the City's government motives: "OATH appears as the p[roverbi]al 'kangaroo court'" whose "sole [reason for] existence is [to] collect fine money"(D.I. 104, ¶¶13, 15); extortioners connected to Eric Adams' are demanding $2,500 "in the Borough of Brookline" (D.I. 104, ¶24); "The City of New York... [has] nefarious reason[s including] eliminat[ing] small businesses to make way for casino g[am]bling." (D.I. 104, ¶26) These governmental motives are of pure corruption and greed, as opposed to racial discrimination, and do not support a §§1981 or 1982 claim.

Moreover, there does not appear to be any pleading that, to the extent any racial discrimination may exist, it relates to any of Section 1981 or 1982's "enumerated activities."

*The "Selective-Enforcement" approach should be dismissed:*

To the extent Count Two may relate to alleged selective enforcement or prosecution by the undersigned of noise complaints, it is also insufficiently and implausibly pled. "[I]f a plaintiff seeks to prove selective prosecution on the basis of his race, he 'must show that similarly situated individuals of a different race were not prosecuted.'" *Brown v. City of Oneonta*, 221 F.3d at 337, *quoting United States v. Armstrong,* 517 U.S. 456, 465 (1996).

Here, as discussed above, Plaintiffs have admitted, repeatedly, via defaulting on OATH-returnable citizen summonses, that they have been in violation of New York City's noise code, by playing music to and audible on the public sidewalk, from at least one outdoor speaker hidden inside the Swing 46 jazz club's awning, in order to attract attention to this business and its shows/performances.

Accordingly, the key question becomes whether Plaintiffs have pled the existence of similarly situated businesses, with similarly illegal noise setups, but associated with owners of a different race, who were not prosecuted. Indeed, this Court has previously brought  a similar requirement to Plaintiffs' attention in the analogous context of a selective-enforcement claim under the Equal Protection Clause. D.I. 72, p.16 ("...Plaintiffs have not identified any similarly situated group of individuals or businesses that were treated differently than Akhtar or Swing 46. There are no allegations in the complaint that similar restaurants, bars, or night clubs in Manhattan did not receive noise complaints or summonses despite playing loud music or emitting loud noise…. The failure of Plaintffs to plead the existence of a similarly situated comparator who was treated differently is fatal to their Equal Protection claim based on a selective-enforcement theory.") (citations omitted).

Plaintiffs have not identified any such similarly situated, noise law-violating, comparator business that was treated more favorably, which is thus fatal to any §§1981-1982 selective enforcement claim. Plaintiffs' (preposterous) claim that Akhtar is the only person of color in his area of Hell's Kitchen is a *non sequitur*. D.I. 104, ¶8 ("Akhtar was the only…person of color in the vicinity of his business where the summonses were issued."). The mere assertion that a party asserting a selective-prosecution claim is a racial minority and has been prosecuted-and even a stronger (here unmade) assertion that only a particular racial minority has been prosecuted-is insufficient to support such claim, absent identification of similarly situated comparators who have not been prosecuted. *U.S. v. Armstrong*, 517 U.S. 456, 465-66 (1996) ("The requirements for a selective-prosecution claim draw on ordinary equal protection standards...To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted") (further explaining, with respect to *Ah Sin v. Wittman*, 198 U.S. 500 (1905) that mere allegation of enforcement "solely and exclusively against persons of the Chinese race and not otherwise" failed to make out Equal Protection selective-prosecution claim absent similarly situated non-Chinese comparators).

Beyond this lack of an identified comparator, there are no other "factual allegations to support a plausible inference that Akhtar or Swing 46 were treated differently because of ethnic or racial prejudice by" the undersigned. *See* D.I. 72, Page 17. There are only labels and conclusions. The clearest explanation of Plaintiffs' conclusory reasoning is at D.I. 104, ¶32 ("Plaintiffs deny the sound of music from within the establishment would warrant such harsh treatment and punishment. This fact goes beyond circumstantial evidence that plaintiff Akhtar was targeted because of his race, religion and natural origin").[4] Firstly, the illegal noise setup, as

---

[4] Even balder labels or conclusions as to discrimination appear at D.I. 104, ¶¶35, 37, and 47.

18

Swing 46 admitted through defaulted-to summonses issued by plural citizens, involves an exterior speaker hidden in the business's awning that is audible on the sidewalk, not an indoor speaker. Accompanying Eisenberg Decl., ¶¶2-3, Exhs. 1-2. Secondly, it does not follow, merely because a business is treated harshly or receives (allegedly excessive) noise summonses, that the business is being treated harshly or receiving those summonses *because of the race or other protected characteristic of its owner*; strikingly, even though Plaintiffs allege every person in Swing 46's vicinity (other than Plaintiff Akhtar) is white, (D.I. 104,¶8) Plaintiffs have failed to identify even one similarly noisy, white-owned, business treated less harshly. Third, Plaintiffs do not even sufficiently allege they were treated that harshly, only specifically identifying a single summons I issued to them-0216392386.

Moreover, identified summons 0216392386 involves an (admitted-by-default) noise violation that occurred and was observed on October 11, 2022. Accompanying Eisenberg Decl., ¶¶2-3, Exhs. 1-2. No facts are pled giving rise to a plausible inference that, as of that date, I even knew Akhtar's race or knew he was Swing 46's owner.

Nor does the Amended Complaint allege, let alone identify, a single negative statement I have made with respect to any person being Bangladeshi, Muslim, or a person of color.

Plaintiffs Fail to State a Claim for Fraud (Count Four)

Plaintiffs' threadbare and conclusory allegations as to fraud are largely similar to those supporting the fraud claim in the original Complaint, which was dismissed. The allegations involve (1) conclusorily labeling unidentified collected evidence (or the resulting complaints or summonses) as to Swing 46's noise violations, as "fraudulent," "fake," "false", "non-existent", or "fraud" (D.I. 104, ¶¶8-12, 16, 21, 26, 29-31, 37, 39-40, 42, 44); (2) claiming some evidence

was collected by placing a listening device (identified as a cell phone) against a speaker or window (D.I. 104, ¶¶9-10); and (3) pointing to inaccurately quoted language in 0216392386 of "that he personally observed [sic] the commission of the … charged offense" ("[sic]" in original) as somehow inaccurate (D.I. 104, ¶12; *compare to actual summons at* Accompanying Eisenberg Decl., ¶2, Exh. 1) Plaintiffs further allege the use of "'wires' and/or services of the United States Postal Service to transmit [my] summonses and complaints." (D.I. 104, ¶16).

Such allegations are plainly insufficient to plead fraud. "Under New York law, fraud requires proof of (1) a material misrepresentation or omission of fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." *In re Fyre Festival Litigation*¸ 399 F.Supp.2d 203, 213 (S.D.N.Y. 2019) (collecting authority) (internal quotations and footnote omitted).

Plaintiffs, when disregarding, per *Ashcroft v. Iqbal*, their legal conclusions that various aspects of the N.Y.C. Admin Code § 24-261 authorized citizen complaint process are "fraudulent" or "fake" or the like, fail with respect to each element of fraud.

Plaintiffs cannot successfully plead "a material misrepresentation or omission of fact." The only actual statement they appear to reference is a misquote from summons 0216392386. In any event, as discussed *supra*, Plaintiffs have admitted to all statements written on that summons by virtue of having defaulted on that summons, as well as admitting to the charged violation of the noise code. They are thus estopped from challenging the accuracy of the summons.

While Plaintiffs (falsely)[5] allege I collected evidence by placing a cell phone directly against speakers or glass windows of the Swing 46 establishment, there is no plausible explanation of how gathering such evidence would constitute a misrepresentation or omission of fact, let alone a material one–especially given that Plaintiffs have admitted that, *not only* have they violated the law on the date-in-question by playing music from the exterior speaker in their awning so as to be audible on the public sidewalk outside Swing 46, to draw attention a show/performance, *but also* that I personally observed that violation–that is, observed the sound being audible on the sidewalk and coming from that exterior speaker. Given such sworn to, and admitted-to, observation, which itself creates a sufficient *prima facie* case to support an in-violation finding, (OATH Hearings Division Rules of Practice, Subchapter C, § 6-12(b)) gathering additional video evidence from a cell phone from other locations, would not be misleading but rather further clarifying (should it, hypothetically, be presented to a Hearing Officer) as to where the music might be, or might not be, coming from. Stated differently, since my mere, admitted-to, observation of the violation by hearing Swing 46's speaker noise on the sidewalk is sufficient to demonstrate the charge, how could gathering additional evidence be a material misrepresentation?

Moreover, Plaintiffs (somewhat preposterously and contrary to common experience of how ears work) appear to assert that, at all relevant times, due to other sources of noise and music on the street, "a person [on the street] could not...discern the source of the noise," (D.I. 104, ¶10) *i.e.,* the source of the jazz music that Plaintiffs have admitted was observed by plural

---

[5] This paragraph is not an admission that I touched Plaintiffs' speaker or window–I have consistently clarified I have not done so. Indeed, while I do not ask the Court to consider it as to this motion unless doable without conversion to a Summary Judgment motion, pre-Amended Complaint I even provided the evidence video sent to DEP showing jazz music from Swing 46's external speaker audible on the public sidewalk on October 11, 2022, with no speaker/window touching occurring. D.I. 69, ¶12 (Apr. 22, 2024).

citizens coming from the outdoor speakers of the Swing 46 jazz club and audible on the public sidewalk. Particularly given such (alleged) difficulty, getting some cell phone video footage from closer to the speakers would, under those alleged circumstances, not be materially misleading but rather helpfully clarifying as to "discern[ing] the source" of Swing 46's music. Particularly so where Swing 46 has admitted-via-default that the source of its illegal music was "at least one speaker, hidden inside the awning." Accompanying Eisenberg Decl., ¶¶2-3, Exhs. 1-2. Dispelling Plaintiffs' subterfuge-via-hiding would not be "fraudulent."

Plaintiffs also fail to plead facts supporting a plausible inference of my knowledge of any applicable, specific fact's falsity. While Plaintiffs state that an attorney "should have known the importance of the distinction for evidentiary purposes" as to "[h]ow the fraudulent offense was 'observed'", (D.I. 104 ¶12) the First Amended complaint fails to clarify what specific "distinction" Plaintiffs may be referring to, or what "evidentiary purposes" are at issue – no evidentiary rule applicable at OATH or elsewhere is cited in the Amended Complaint. Again, as discussed *supra*, Plaintiffs have admitted-via-default I observed audible attention-drawing music on the sidewalk, coming from Swing 46's outdoor awning speaker, and moreover such observation is all that is required to demonstrate a violation. OATH Hearing Rule, § 6-12(b) (sworn statements on summons create *prima facie* case); *NYC v. M-R La Casa Delos Hits*, Appeal No. 1300125 (OATH Appeals Division, May 30, 2013) (finding low sound level legally irrelevant)                                (available                                at https://archive.citylaw.org/wp-content/uploads/sites/12/ecb/Long%20Form%20Orders/ 2013/1300125.pdf); *Dietmar Detering (CC) v. Westhouse Hotel New York*, Appeal No. 2300439 (OATH Appeals Division, June 29, 2023) (same for citizen-prosecuted violation) (available at https://archive.citylaw.org/wp-content/uploads/sites/12/ecb/2300439.pdf).

And Plaintiffs fail to plead I had an intent to induce reliance by Plaintiffs, or justifiable reliance by Plaintiffs on any inducement. Plaintiffs, for example, do not allege that I intentionally made a statement to Plaintiffs to trick them into paying a fine pre-hearing rather than defending themselves at an OATH hearing on the actual merits of the noise violation. Plaintiffs do not allege that they justifiably relied on such a statement by paying the fine. Rather, Plaintiffs have been clear that, far from being intentionally induced to justifiably rely on any statement or action or omission of mine, Plaintiffs disagree that they violated the noise code, and appear to have attempted, albeit apparently not following any of the proper procedures, to obtain evidence and fight such assertions at OATH. (*see e.g.* D.I. 104, ¶¶13-15, 28).

Damages are likewise not pled. There is no allegation that Swing 46 paid ***any amount*** of money towards any noise summons. While Plaintiffs speculate that "fines are then ***ultimately*** converted to [credit-harming] legal judgments," (D.I. 104, ¶23) (emphasis added) Plaintiffs have not identified a single legal judgment that has, currently or at the time of the Amended Complaint, been entered against them. With respect to Plaintiffs' (non-final and potentially correctable) 0216392386 summons default, as discussed *supra*, Plaintiffs have not pled attempting to vacate such default.

Plaintiffs' fraud allegations are even more deficient when F.R.C.P. 9(b)'s heightened fraud-pleading requirements are considered. F.R.C.P. 9(b) requires a complaint sounding in fraud to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Fyre Festival*¸ 399 F.Supp.2d at 213 (S.D.N.Y. 2019) quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). As to scienter, the plaintiff must "provide facts giving

rise to a strong inference of fraudulent intent." *Id.*, citing and quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 176 (2d Cir. 2015). Plaintiffs have not done so.

Plaintiffs do not appear to specify *any* particular statement of mine, but at most appear to misquote summons 0216392386 and (falsely) claim some of the noise-related evidence I collected involved touching a speaker or window with a cellphone, and that I "claim plaintiffs were violating a City of New York noise code." (D.I. 104, ¶¶9-12) This is a highly generalized legal position attributed to me, not a specific statement of mine. Plaintiff's threadbare allegations do not even identify, in the Amended Complaint itself, what particular section of law was allegedly violated by Swing 46, what behavior of Swing 46 allegedly constituted a violation according to me, or what specific evidence and observations I considered when making my "claim" (e.g. whether it included observations-by-eye-and-ear and video footage obtained from a variety of locations-including from the public sidewalk-or only from a single location). While some more information can be gleaned from the information on the summons, (which Plaintiffs fully admitted to the accuracy of) Plaintiffs' failure to reference such statements in the Amended Complaint renders unclear what specifically they are complaining about.

Plaintiff also do not adequately state where and when the allegedly fraudulent statements were made. Indeed, as to "when," while an "October 11, 2022" noise offense date is mentioned, not a single actual date appears to be mentioned anywhere in the complaint with respect to when the ***statements*** were made, e.g. when I allegedly complained to the DEP, when I filed summonses with OATH, or when any relevant summonses were received by Swing 46 or sent by me. Again, this dooms the fraud cause of action. *Fyre Festival*, 399 F.3d Supp.3d at 214 ("The lack of an allegation of when the statements were made dooms the pleading's particularity under Rule 9(b)") (citation omitted). As to "where" the statements were made, there is no particularity, only

24

vagueness; Plaintiffs allege "it is, upon information and believe, (sic.) [Eisenberg] has utilized 'wires' and/or services of the United States Postal Service to transmit his summonses and complaints."

Plaintiffs also do not explain why any (inadequately described) statement of mine was fraudulent, for example because, as discussed above, Plaintiffs (1) have admitted I observed their violation from the public sidewalk (and that it was indeed a violation), (2) neglect to explicitly identify in the Amended Complaint any particular section of the noise code being asserted against Plaintiffs, and (3) fail to explain the relevance of any deception I allegedly engaged in with respect to demonstrating that Swing 46 violated that section. Instead, Swing 46 simply asserts, somewhat nonsensically, that there are allegedly always other competing sources of noise on the street that allegedly render it hard to figure out where Swing 46's sidewalk-audible music comes from, and that I have allegedly tried to get some (potentially clarifying) footage from closer to their outdoor speaker and/or window, and they make these assertions even though Swing 46's sidewalk-audible music, beyond being admitted by them to be illegal, is clearly illegal under applicable OATH decisional law. *See M-R La Casa Delos Hits* and *Westhouse* OATH Appeals decisions (cited above).

Nor do Plaintiffs provide facts giving rise to any strong inference of fraudulent intent, beyond (1) pointing to the general aspect of City Council's chosen statutory scheme of N.Y.C. Admin Code §24-261's citizen complaint provisions that provide for a monetary award to be made to the citizen when a summons is upheld (and paid), and (2) baldly claiming animus against Plaintiffs due to Akhtar's race and creed. D.I. 104, ¶47. This fact of payment is equally applicable to any citizen making use of this provision of law, and simply participating in a paid program, specifically authorized by law, to reduce noise pollution in New York City, fails to

25

create any "strong inference of fraudulent intent." A generalized profit motive has been held insufficient. *Duran v. Henkel of America, Inc.*, 450 F.Supp.3d 337, 354 (S.D.N.Y. 2020) ("simply alleging a defendant's self-interested desire to increase sales does not give rise to an inference of fraudulent intent.") (collecting authority) (dismissing fraud claim). And, for at least the reasons discussed above in connection with Count Two, Plaintiffs' have failed to plausibly allege selective prosecution based on Akhtar's protected characteristics.

Plaintiffs' wholly deficient Count Four for fraud should be dismissed.

## All Other Counts Must Also Be Dismissed Under Rule 9(b)'s Heightened Pleading Requirements

Moreover, the heightened Fed.R.Civ.P 9(b) pleading requirements-which, as discussed above, necessitate dismissal of Count Four, also necessitate dismissal of Counts One, Two, and Three. Although Counts One through Three are different causes of action than "Fraud", at least one numbered paragraphs under each of them (in addition to copious earlier allegations incorporated by reference) does explicitly allege fraud. D.I. 104, Count One, ¶37 ("… made fraudulent claims"), Count Two, ¶¶40, 42 ("entitled to...safeguards against...fraudulent noise complaints", "his scheme to defraud", "issuance of fraudulent noise complaints"), Count Three, ¶44 "by issuing fraudulent noise complaints and summonses"). "Rule 9(b)['s] wording is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constitutent elements of fraud cause of action...[C]laims that do rely upon averments of fraud are subject to the test of Rule 9(b). The particularity requirement of rule 9(b) serves to provide a defendant with fair notice of a plaintiff's claim, to safeguard a

defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004)[6]

None of the claims are pled with the particularity required by 9(b). For example, with respect to Count Two (§§1981-1982 violation), there have not been sufficiently particularized allegations as to the specific statements, or their where, when and why, involved in the alleged "fraudulent noise complaints" and/or "scheme to defraud" Plaintiffs on account of Akhtar's race, necessitating dismissal of that claim. Nor have facts been pled giving rise to a strong inference of fraudulent intent to engage in racism against Akhtar, as opposed to say, a strong inference of intent to hold Swing 46 accountable for its, admittedly observed from the public sidewalk, and admittedly noise code-violative, outdoor sound setup.

## All Counts Must Be Dismissed Under N.Y. Civ. Rights Law §76-A.

Plaintiffs fail to sufficiently allege "actual malice" (i.e. knowledge or reckless disregard of the falsity of communications) on my part, which is a required element in any "action involving public petition and participation." N.Y. Civ. Rights Law §76-A. The instant lawsuit is such an action, because its claims are based upon "lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the of the exercise of the constitutional right of petition." *Id*. Specifically, Plaintiffs are challenging submission of unidentified complaints and filing of summons 0216392386 under N.Y.C. Admin. Code §24-261's citizen complaint provisions, that is, speaking to and/or petitioning the government for redress as to Swing 46's admitted-to illegal noise pollution. Curbing noise pollution is a matter of great public interest, as detailed by City Council

---

[6] While Rule 9(b) was subsequently amended in 2007, per Committee Notes, the "changes are intended to be stylistic only."

when it passed the noise control code. *See e.g.* N.Y.C. Admin. Code §24-202 (explaining the various public interests necessitating N.Y.C.'s noise laws).

Especially given that Plaintiffs admitted-by-default that their outdoor noise setup, audible on the public sidewalk, was noise code-violative and observed by me and other citizens, and Plaintiffs have neither identified nor explained any authority I may have been aware of contravening this illegality, it is unclear how Plaintiffs could ever plead knowledge or reckless disregard of the falsity of my communications seeking redress for Plaintiffs' noise-pollutive conduct.

**The Court Should Dismiss the Complaint for Failure to Join a Required Party (F.R.C.P. 12(b)(7))**

The Amended Complaint appears to revolve around an alleged co-conspiracy with the City of New York and its officials and departments. And the *rem* or subject at issue here, the penalty moneys that may be owed by Plaintiffs under the challenged as allegedly "fraudulent," yet defaulted-on, noise summons(es), would be owed and payable to the City of New York, not the undersigned. Affording proper relief, were Plaintiffs to prevail, is likely to involve, in lieu of excessive monetary awards against the undersigned and allowing a windfall penalty collection to my alleged co-conspirator the City of New York, voiding the allegedly "fraudulent" summons(es) and any associated collection rights of the City of New York. By failing to include the City of New York, or for that matter any of the other alleged governmental co-conspirators, as a defendant in the Amended Complaint, Plaintiffs failed to join a required party. Fed.R.Civ.P. 12(b)(7); Fed.R.Civ.P. 19(a)(1) (requiring joinder, consistent with subject matter jurisdiction, for persons who "in that person's absence, the court cannot accord complete relief among existing

parties" or who "claim[] an [impede-able or potentially inconsistency-creating] interest relating to the subject of the action.").

Thus, especially given Plaintiffs' apparent repeated failure and/or inability to file anything approaching a timely (or even untimely) notice of claim against "the City of New York," or any other necessary governmental entity, despite a past warning at D.I. 72, p. 21, dismissal is required. *Maurice A. Rapoport v. Banco Mexicano Somex, S.A.*, 668 F.2d 667, (2d Cir. 1982) (affirming dismissal under Fed.R.Civ.P. 12(b)(7) where unjoined parties were claimants to the funds-at-issue, and could therefore be prejudiced in the action, but could not be joined).

## CONCLUSION

Plaintiffs have offered threadbare, conclusory assertions, only slightly modified from the original dismissed complaint. Beyond reasserting claims that were dismissed-with-prejudice, the Amended Complaint fails to adequately or plausibly address most, if not all, of the elements of their asserted causes of action. Racially selective prosecution is broadly asserted, yet no comparator business is identified, and no other facts are pled rendering discrimination due to Akhtar's protected personal characteristics (as opposed to due to Swing 46's admitted-to unlawful sound setup) plausible. Every Count is based on, or at a minimum alleges, fraud, yet fails to plausibly allege the elements of fraud, let alone under the heightened pleadings standards of Fed.R.Civ.P. 9(b). At its core, the purported fraud seems to amount to a claim that Plaintiffs disagree with the merits of noise summons 0216392386, despite having admitted to that summons's noise charge and all its allegations by defaulting before OATH (and alleging no action to vacate that default). Nor have N.Y. Civ. Rights Law §76-A (anti-SLAPP) substantive

pleading requirements been met. The complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

Plaintiffs present this deficient complaint to this Court in an attempt to collaterally attack, and avoid, a legally-authorized administrative noise ticket proceeding before OATH for which no OATH merits hearing has yet occurred. This action is not ripe, and this court should decline to address it, in favor of letting the summonses proceed before OATH, which has the Rules to handle Plaintiffs' evidentiary concerns, to address Plaintiffs' default, and address the merits of the noise charge and its underlying evidence.

Email service was also beyond the power of the Court to authorize, given the practicability of other forms of service, negating service of process and personal jurisdiction.

Finally, given Plaintiffs' failure or inability, despite a warning, to properly join required governmental defendants with primary interest in the noise summonses at-issue and who allegedly conspired with the undersigned, dismissal under F.R.C.P. 12(b)(7) is warranted.


Dated (and executed in):    Miami, Florida            Respectfully submitted,
                            April 3, 2025


                                                       s/    *Eric Eisenberg*
                                                       ERIC EISENBERG
                                                       1300 S Miami Ave
                                                       Unit 1408
                                                       Miami, FL 33130
                                                       (646) 801-6705
                                                       ericeis@gmail.com

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT REQUIREMENTS

The undersigned hereby certifies that this Memorandum of Law, which contains 8,705 words, (excluding the caption, any index, table of contents, table of authorities, signature blocks, and any required certificates) as indicated by the word-processing program used to prepare the document, complies with the word-count limitation of Local Civil Rule 7.1(c) of the Joint Local Rules of the S.D.N.Y. and E.D.N.Y.

Dated (and executed in):        Miami, Florida
                                April 3, 2025

                                                Respectfully submitted,


                                                s/      *Eric Eisenberg*
                                                ERIC EISENBERG
                                                1300 S Miami Ave
                                                Unit 1408
                                                Miami, FL 33130
                                                (646) 801-6705
                                                ericeis@gmail.com

31