Exhibit D

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Mohamed John Sohel Akhtar and La Buca Restaurant, Inc. d/b/a Swing 46 Jazz and Supper Club,<br><br>Plaintiffs,<br><br>v.<br><br>Eric Adams, Mayor of the City of New York, Rohit T. Aggarwala, New York City Department of Environmental Protection, Eric I. Eisenberg, and John and Jane Does One through Thirty,<br><br>Defendants. | Case No. 23-cv-06585 (JGLC)(VF) |

## Declaration of Howard Fredrics

I, Howard Fredrics, of full age, declare and affirms, under the penalty of perjury, to the truth of the following:

1. I am a professional audio engineer, sound designer, audio researcher and university professor of music technology with over forty years of experience, which has included calibrating and ensuring safe operation of live sound reinforcement systems for professional theatrical and musical performances, as well as engineering and mastering of commercial recordings for international distribution.

1

2. I am fully-versed in established standards for measuring sound pressure levels at various distances and under various conditions, using scientific test microphones, decibel meters and related sound measurement software. I am also well-versed in the principles of acoustics as they apply to construction materials and architectural designs of buildings.

3. I hold a BMus degree from Oberlin Conservatory in Technology in Music and Related Arts, and MMus and DMA degrees in Music Composition with Concentration in Computer Music from the University of Texas at Austin. I have also served on the faculties of Brown University, Oberlin Conservatory, Texas A&M University, Western Carolina University and Kingston University of London.

4. have had the benefit of reviewing the Declaration of Michelle Collier, dated March 20, 2025, and am able to offer an expert opinion based upon here sworn statement. Ms. Collier states, "…never have I heard the sound of music being audible beyond the patio." She also indicates that "Mr. Eisenberg placed what appeared to be a cell phone 'directly upon the speaker.'" She states the speaker is recessed in the awning above the entrance to the property of Swing 46.

2

5. I have also viewed photographs of the property's entrance, awning and patio area and would estimate the total distance between the recessed speaker and the end of the awning, which extends over the sidewalk, just past the patio, to be approximately 8 feet.

6. If, for example, the SPL was measured at 90dB at 1.2 inches (1/10 ft) from the sound source, a subjectively loud listening level, as might happen were one to place a cell phone running sound measurement software next to a loudspeaker playing music, at 8ft in front of the loudspeaker, on the sidewalk in front of the property, SPL would dissipate to approximately by approximately 38dBA to 52dBA, which, with typical ambient street noise levels in New York City averaging 73dBA, would normally be rendered nearly, if not entirely, inaudible.

7. Indeed, if what might seem like an objectively unreasonably loud SPL of, for example, 90dB for music was more properly measured from a typical passerby's vantage point, the sidewalk location ca. 8ft from the loudspeaker, the SPL level of the music would have dissipated to a negligible SPL level.

8. Because of the number of variables involved in estimating the impact of exterior and interior building surfaces and construction materials on sound dissipation when determining code compliance for a proximate

3

indoor dwelling, it would be advisable to measure sound pressure level (SPL) from within the dwelling in question in order to obtain the most precise measurement results.

9. Moreover, other factors that would impact the validity of measurements taken by Mr. Eisenberg include the quality and frequency response of the cell phone's built-in microphone and the accuracy of the measurement software app used. Indeed, professional engineers use specialized scientific measurement microphones, and well-calibrated professional SPL meters to take such measurements. Mr. Eisenberg's equipment appear to be consumer-grade equipment, whose reliability cannot be established.

10. Hence, I am of the opinion that Mr. Eisenberg's measurement method of placing a cell phone directly in front of a loudspeaker is inherently inadequate for determining code compliance.

11. Furthermore, Mr. Eisenberg's having applied his sound measuring device directly to a speaker suggests ignorance of proper collection methods, or alternatively, Mr. Eisenberg had a nefarious intent to distort the results of his measurements for the purpose of making his noise complaints appear genuine, when they are not.

4

I, Howard Fredrics, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 25, 2025

*Howard Fredrics*
_____
Howard Fredrics