UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

MOHAMED JOHN AKHTAR and LA BUCA
RESTAURANT, INC. d/b/a SWING 46 JAZZ
AND SUPPER CLUB,

        Plaintiffs

    -against-

ERIC M. EISENBERG and JOHN AND JANE
DOES ONE THROUGH THIRTY,

        Defendants

———————————————————————

     23-CV-6585 (JGLC) (VF)


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ERIC M.
EISENBERG'S MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO
RULES 12(B)(1), 12(B)(2), 12(B)(5), 12(B)(6) AND 12(B)(7)**

## **Table of Contents**

*Table of Contents*…………………………………………………………………......*i*

*Table of Authorities*………………………………………………………………....*ii*

Initial Remarks……………………………………………………………………...1

1. Ripeness………………………………………………………………………...2

2. Personal Jurisdiction/Service………………………………………………...4

3(A). "Color of State Law" for Constitutional Claims………………...…………………4

3(B) (and 6). §1982 Racial Discrimination……………………………..………………………7

4 (and 10). Plaintiffs' Administrative Defaults….……………………………………...8

5. Plaintiffs' Dismissed-with-Prejudice Claims……………………………………...9

6. Racial Bias………………………………………………………..10 (See §3(B), *supra*)

7(A). Fraud Count………………………………………………………………10

7(B). Rule 9(b) Applies to All Claims………………………………………………11

8. Anti-Slapp………………………………………………………………..12

9. Fed.R.Civ.P. 12(b)(7) and Joinder…………………………………………...12

10. Plaintiffs' OATH Default Admissions……………………………………13 (See §4, *supra*)

i

## Table of Authorities

<u>**Caselaw**</u>

*177 Christie v. Environ. Control Bd. of N.Y.,* 2010 N.Y. Slip. Op. 30009 (N.Y.Sup.Ct. 2010)…...3

*Akhtar v. Aggarwala*, Appeal 24-2370, D.I. 93.1 and 97.1 (2d Cir. March 4 and 6, 2025)……….9

*American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999)…………………………………5-6

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)………………………7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)……………………………………………...12

*Benzemann v. Citibank N.A.,*No. 14-2668-cv (2nd Cir. Nov. 16, 2015)……………………………6

*Brown v. City of Oneonta*, 221 F.3d 329 (2d Cir. 2000)………………………………………7, 8

*Carroll v. Trump*, 49 F.45h 759 (2d Cir. 2022)……………………………………………..12

*Christ the King v. Culvert*, 815 F.2d 219 (2d Cir. 1987)…………………………………………..3

*Dahlberg v. Becker*, 748 F.2d 85 (2d Cir. 1984)………………………………………………...6

*In re Fyre Festival Litigation*¸ 399 F.Supp.2d 203 (S.D.N.Y. 2019)…………………………10, 11

*Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978)………………………………………………5

*Global Network Comm'ns, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006)………………8

*HSBC Bank v. New York City Commission on Human Rights*, 673 F.Supp.2d 210 (S.D.N.Y. 2009)
………………………………………………………………………………………………..3

*Jacobs v. Jacobs*, No. 22-2846 (2nd Cir. July 13, 2023)…………………………………………...6

*Leather v. Ten Eyck*, 180 F.3d 420 (2d Cir. 1999)……………………………………………8-9

*Mendez v. Banks*, 65 F.4th 56 (2d Cir. Apr. 12, 2003)..………………………………………..…2

*Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986)………....2

*Patsy v. Board of Regents of State of Florida*, 457 U.S. 496 (1982)……………………………..2

*Rendell-Baker v. Kohn*, 457 U.S. 830 (1982)…………………………………………………..5

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004)…………………………………………….11-12

*Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329 (S.D.N.Y. 2015)…………………...4

*United States v. Armstrong,* 517 U.S. 456 (1996)……………………………………………………7

*The University Club v. The City of New York*, 842 F.2d 37 (2d Cir. 1988)……………………..2, 3

*Wah v. Vargas*, No. 24-CV-3146 (S.D.N.Y. Aug. 15, 2024) (Swain, J.)…………………………..6

*West v. Atkins*, 487 U.S. 42 (1988)……………………………………………………………...4

*Zulli v. Public Storage*, No. 17-cv-387 (E.D.N.Y. July 13, 2018)……………………………...6

**State Statute or Local Law**

N.Y. Civ. Rights Law §76-A……………………………………………………………………...12

N.Y.C. Admin. Code. § 24-201 *et seq.*…………………………………………………………….8

N.Y.C. Admin. Code. § 24-202……………………………………………………………………3

N.Y.C. Admin. Code. § 24-261……………………………………………………..…………….4, 5

**State Constitution**

New York State Constitution………………………………………………………………………3

**Rules**

Fed.R.Civ.P. 9(b)………………………………………………………………....……...1, 11-12

Fed.R.Civ.P. 12………………………………………………………………………….*passim*

Judge Clarke Individual Rules in Civil Cases (April 2, 2025), Rule 4(e)………………………10

N.Y. C.P.L.R. § 308(5)…………………………………………………………………………4

**Public Commission Reports**

City Noise, Noise Abatement Commission Report, Department of Health, New York City (1930)
(available at https://roaringtwenties.princeton.edu/report/index.html)……………………………5

Initial Remarks

Plaintiffs had "**one opportunity** to amend... ." (D.I. 85, pp.2-3) (emphasis in original), yet in opposition (D.I. 189) largely ignore their Amended Complaint (D.I. 104), never citing to any paragraph thereof. Instead, Plaintiffs proffer (often falsified)[1] new facts not present, referenced or relied on in the Amended Complaint. Possibly excluding Plaintiffs' Exhibit A, such facts are not judicially noticable and are appropriately excluded, particularly for 12(b)(6) purposes, per Fed.R.Civ.P. 12(d).

Plaintiffs' legal arguments are poorly explained, near-univerally without pinpoint citation (sometimes, any citation), and fail to fully address the opening memorandum (including virtually all of its cited authority). Notably, Plaintiffs fail to address the arguments and authority that (1) Plaintiffs failed to allege using available procedures for attending OATH hearings, making rules-compliant evidence requests, or vacating defaults, and suffered no legally cognizable harm, rendering their claims unripe (D.I. 182, pp.3-7)[2] and any due process claim insufficient (D.I. 182, pp.14-15); (2) selective enforcement claims fail given non-identification of comparator businesses (D.I. 182, pp.15-19); and (3) fraud claims fail absent, *inter alia*, "an intent to induce reliance, [] justifiable reliance <u>by the plaintiff</u>, and [] damages" (D.I. 182, pp.19-20, 23) (emphasis added). Nor do Plaintiffs identify where the Amended Complaint meets heightened Fed.R.Civ.P. 9(b) pleading requirements, *e.g.* identifying <u>when/where/to-who</u> the actual allegedly fraudulent statements were made. (*See* D.I. 182, pp.23-27).

---

[1] A Rule 11 Motion may become necessary, especially regarding the claims that I placed a cell phone against Plaintiffs' speaker(s) located high-up, hidden with an awning, and untouchable. Several times, in writing, I've requested Plaintiffs' Counsel to investigate the physical impossibility of touching these speakers, and have provided video showing the speaker(s)' lack of physical accessibility and their clear audibility on the sidewalk. (See D.I. 69, ¶ 12) (referencing https://photos.app.goo.gl/JY3dS2RrRuRvmVTM7).

[2] Page citations reference the moving papers' bottom-numbering.

1. Ripeness

The Amended Complaint revolves around receipt of allegedly 'fraudulent' summons(es) (identifying only summons 0216392386) that have not been finally adjudicated before OATH, but only received a nonfinal default because Plaintiffs missed their hearing. Plaintiffs sidestep the undersigned's arguments and authority regarding ripeness, and this Court's prior ruling. (*See* D.I. 182, pp.3-7; D.I. 72, p.11, n.9), seemingly admitting the action is not ripe for federal judicial review.

Rather, Plaintiffs simply cite to the entirety of *Patsy v. Board of Regents of State of Florida*, 457 U.S. 496 (1982), a decision which never mentions, let alone addresses, ripeness – "a constitutional prerequisite to the exercise of jurisdiction by federal courts." *Mendez v. Banks,* 65 F.4th 46 (2d Cir. Apr. 12, 2023). In *Patsy*, plaintiff Patsy alleged not that she had received a pending administrative summons, but rather that "she has been rejected for more than 13 positions at FIU." 457 U.S. at 498. Denial of her preferred job had immediate and concrete impact (e.g., on Patsy's immediate employment situation and wages), and ripeness was not at issue. At-issue was whether Florida could, after having deprived Patsy of her preferred job and thereby creating a ripe dispute, require that Patsy exhaust all available state proceedings before suing in Federal Court.

Here, the complained-of conduct is the incomplete (but allegedly 'fraudulently'-supported) state administrative proceeding itself, for which Plaintiffs have not pled making a payment to the City or attending a hearing, seeking instead to have Federal Court interfere with that proceeding. *Patsy* has been distinguished in such cases, and Federal Court abstention has been deemed mandatory. *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 627-29, n.2 (1986); *The University Club v. The City of New York*, 842 F.2d 37, 40-42

(2d Cir. 1988) (citing *Ohio Civil Rights Commission,* distinguishing *Patsy*, and requiring abstention where "targets … brought suit in federal district court to halt the administrative actions because of alleged infringement of constitutional rights.").

Accordingly, even if the case were ripe (it's not), Federal Court abstention is required as all three elements of the *Younger/Culvert* test (discussed in *University Club*) are met. There is an ongoing state proceeding (an administrative environmental noise proceeding before OATH) that has not yet received a final decision (but rather, only a nonfinal default that Plaintiffs have not pled any attempt to reopen). An important state interest is involved in allowing the environmental noise proceeding to proceed to completion. *New York Constitution*, Article I, Section 19 ("Each person shall have a right to … a healthful environment."); N.Y.C. Admin. Code §24-202 (Noise Control Code) ("It is hereby declared to be the public policy of the city to reduce the ambient sound level in the city, so as to preserve, protect and promote the public health, safety and welfare…"). And Plaintiffs have an adequate opportunity for judicial review of their constitutional claims, either during the OATH merits proceeding or afterwards via Article 78 State Court review. *The University Club*, 842 F.2d at 40-41; *Christ the King v. Culvert*, 815 F.2d 219, 223-25 (2d Cir. 1987) (affirming abstention where constitutional issues Article 78-decidable); *177 Christie v. Environ. Control Bd. of N.Y.*, 2010 N.Y. Slip. Op. 30009 (N.Y.Sup.Ct. 2010) (addressing, in Article 78 proceeding, constitutional challenge to City's noise code). In short, "[b]ecause there exists a pending administrative proceeding concerning an important state interest in which Plaintiffs' constitutional claims may be litigated, the requirements of the *Younger* abstention doctrine have been met." *HSBC Bank v. New York City Commission on Human Rights*, 673 F.Supp.2d 210, 215 (S.D.N.Y. 2009) (granting motion to dismiss).

3

2. Personal Jurisdiction/Service

Plaintiffs do not directly address my arguments or authority as to lack of personal jurisdiction, but rather make unsupported allegations that I have "gone to great lengths to avoid service of process" (the only relevant evidence is that Plaintiffs made one service attempt at the Florida apartment door when I was out) and cite to *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 332-34 (S.D.N.Y. 2015).[3] *Sulzer* is completely inapposite, addressing service in a foreign country under Fed.R.Civ.P 4(f)(3), not service under N.Y. C.P.L.R. 308(5), the latter requiring a showing that "service is impracticable under [C.P.L.R. 308(1), 308(2) and 308(4).]" Plaintiffs have demonstrated no such impracticability, and there is no such impracticability, as discussed in the opening memorandum. (D.I. 182, pp.7-9).


3(A). "Color of State Law" for Constitutional Claims

Plaintiffs argue, at page 8, that acting under "color of law" is one necessary prerequisite for a civil rights claim, but cite only to (the entirety of) *West v. Atkins* in this section of their opposition. *West* relied, in finding a prison doctor to be a state actor, not on the fact that Dr. Atkins was paid, but on the fact that the State chose to limit incarcerated inmate medical care, and thus chose to limit the State's own Eighth Amendment obligations, to only being served by prison doctors, and thus that Dr. Atkins served an intentionally exclusive state role. *West v. Atkins*, 487 U.S. 42, 54-57.

There is no such exclusivity in making a citizen noise complaint or filing a noise summons at OATH pursuant to NYC Admin Code §24-261(a)/(b). Indeed, "Any [nongovernmental] person" may do so. *Id*. The process, aside from being perhaps a bit simpler, is

---

[3] Plaintiffs also claim an admission from a February 11, 2025 email, intended to reference my experience in NY on October 9, 2024.

little different than a member of the public making a standard complaint to the city's agencies or filing an action for nuisance in court against the noisy business. Noise-concerned New Yorkers have been taking such actions for at least about a century. *See* City Noise, Noise Abatement Commission Report, Department of Health, New York City (1930), at pp.28-29 (NYC noise complaints), 50-54 (successful citizen legal action against Brooklyn radio-speaker operator) (available at https://roaringtwenties.princeton.edu/report/index.html). And the possible $5 or $10 payment indicated by §24-261(d)/(e) is hardly employee wages, drastically insufficient to cover costs and time, and does not create 'color of state law.' *Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982) (near-total financial dependence of defendants on State payments for services did not make defendants' decisions acts of the State).

The Supreme Court has recognized that a state merely statutorily allowing private individuals to exercise functions with respect to "binding conflict resolution" and those which have "traditionally been that of the sheriff" or "traditionally associated with sovereignty" does not turn those individuals into state actors operating under color of law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 157-58,  159-64 (1978) (finding that New York statute permitting private execution of liens against property, which had analogues in state law proceedings and which lacked the "feature of exclusivity," did not render the lien executors state actors subject to constitutional claims). Similarly, that I, as any non-governmental person can, relatively informally proceeded before OATH pursuant to §24-261 as to a persistent noise problem affecting me in my Hell's Kitchen neighborhood, one block from my co-op, instead of filing a state court proceeding for nuisance, does not render me a state actor operating under "color of law," and all constitutional claims must be dismissed. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 53-54 (1999)("We have never held that the mere availability of a [State-provided]

remedy for wrongful conduct, even when the private use of that remedy serves important public interests, so significantly encourages the private activity as to make the State responsible for it") (collecting authority) (dismissing as to "private party's mere use of the State's dispute resolution machinery"); *Jacobs v. Jacobs*, No. 22-2846 (2nd Cir. July 13, 2023) ("...that Kent sought the protection of family court does not mean he was acting under color of state law…Kent therefore cannot be liable for constitutional torts") (collecting authority); *Dahlberg v. Becker*, 748 F.2d 85, 90-91, 93 (2d Cir. 1984) ("[T]he mere invocation by defendants of New York's legal procedures" didn't meet "state actor" requirement) (refusing to find state action based on "[p]rivate misuse of a state statute" or "abuse of an otherwise valid state law") (affirming Rule 12 dismissal of §1983 claim); *Benzemann v. Citibank N.A.,* No. 14-2668-cv (2nd Cir. Nov. 16, 2015) (private defendants' misuse of state statutes, rules or laws to issue restraining notices not an exercise of State-created right or privilege, dooming constitutional claims); *Zulli v. Public Storage*, No. 17-cv-387 (E.D.N.Y. July 13, 2018) ("Plaintiff's vague allegations that the Defendants' actions concerning the foreclosure proceeding were fraudulent" didn't allege §1983 claim).

Plaintiffs posit I'm "an agent or servant of the New York City Municipal government," but plead no facts that the government in any way directed, controlled or instructed me to take action against Plaintiffs. Writing my name or non-governmental "hotmail.com" email address on a preprinted OATH summons form (*see* Plaintiffs' Exh.A) is no "admission [I] was acting under 'color of law,'" (opposition, pp.4-5) especially where language indicating agency employment and review of departmental records was expressly crossed out. But supposing I did serve as the government's attorney in the noise legal action(s), I'd enjoy absolute immunity from suit. *Wah v. Vargas*, No. 24-CV-3146, at B.2 (S.D.N.Y. Aug. 15, 2024) (Swain, J.).

3(B) (and 6). §1982 Racial Discrimination

      Plaintiffs' arguments, (pp.9, 12) for the sufficiency of their §1982 racial discrimination claim[4] address none of my cited authority (D.I. 182, pp.15-19) or the Court's R&R explaining the need to identify a comparator business treated more favorably (D.I. 72, p.16). Plaintiffs effectively simply restate a conclusory allegation of "intentional racial discrimination." Plaintiffs' unsupported arguments and new (frequently false) declarations, beyond not being referenced in or relied on for the complaint, a proper subject for judicial notice, or appropriately considered on a 12(b)(6) motion, continue to fail to identify a comparator business or provide facts plausibly suggesting racial discrimination.

      Plaintiffs also cite, again without pinpoints, to the entirety of *Ashcroft v. Iqbal* and *Brown v. City of Oneonta*, two cases with holdings <u>supporting</u> dismissal. In *Ashcroft*, the Supreme Court held that, particularly in light of the generally conclusory nature of the allegations, and despite disparate impact of governmental policies on Arab Muslim men after September 11, "respondent's complaint fails to plead sufficient facts to state a claim for purposeful and unlawful discrimination." 556 U.S. 662, 1954 (2009). So too is dismissal required here, where Plaintiffs have not *even* plausibly alleged disparate impact against any protected group, let alone identified a similarly-situated comparator business treated more favorably.

      *Brown* explicitly states that "if a plaintiff seeks to prove selective prosecution of the basis of his race, he must show that similarly situated individuals of a different race were not prosecuted." *Brown*, 221 F.3d 329, 337, 339 (2d Cir. 2000), *citing United States v. Armstrong*, 517 U.S. 456, 465 (1996) (collecting authority). *Brown* caveats that this requirement gives way "when challenging a law or policy that contains an express, racial classification." However, nowhere in the Amended Complaint do Plaintiffs identify any law or policy with an express

---

[4] Plaintiffs appear to abandon any §1981 claim.

racial classification. Indeed, New York City's noise code (NYC.Adm.Code §24-201 *et seq.*) expressly classifies by the nature of sound setups, not race. Racially selective prosecution is not pled where, analogous to *Brown*, investigation occurred because a business 'matched the description' (here, creating exterior noise).

<u>4 (and 10). Plaintiffs' Administrative Defaults</u>

Plaintiffs fail to address my extensive authority that judicial notice may be taken of Plaintiffs' OATH defaults, and that such not-yet-vacated OATH defaults constitute admissions of the charge and the statements on the summons. (D.I. 182, pp.9-12). *Global Network*, which Plaintiffs cite without pinpoint, is not to the contrary. In *Global Network*, proceedings not integral to the complaint (and indeed post-dating it) were inappropriately taken judicial notice of in order to establish the truth of an ancillary matter (whether Global could "be expected to pay its obligations to the City in a timely or honest manner"). 458 F.3d 150 at 157. In the instant matter, Plaintiffs' entire complaint revolves around the effect (per the Amended Complaint, $15,000+ owed) (D.I. 104, ¶11) of noise summonses received by Plaintiffs from "private citizens," (D.I. 104, ¶21) and the (first) defaults occurred in late 2023, (D.I. 183-2) well prior to the filing of the Amended Complaint. Plaintiffs cannot, through artful pleading, hide the actual language of a summons they quote, the simple fact that Plaintiffs missed their 2023 hearings on the summonses and failed to vacate the resultant defaults, or the clear law that such uncorrected nonappearances constitute admissions.

At page 15, Plaintiffs also cite, without pinpoint, *Leather v. Ten Eyck*, 180 F.3d 420 (2d Cir. 1999). However, the issue in *Ten Eyck* was whether the plaintiff's criminal conviction for driving while impaired directly created res judicata or collateral estoppel that the plaintiff *was*

*not selectively prosecuted due to exercising free speech*. The issue was not whether the conviction merely precluded re-adjudication of whether plaintiff drove while impaired. Here, Plaintiffs' admission-by-uncorrected-default only <u>directly</u> establishes, as is explicitly stated in statute, that Plaintiffs admitted the charged noise code offense(s) and admitted "the facts alleged in the summons(es)." (D.I. 182, p.11)(collecting statutory and decisional authority). Judicial notice permits consideration of the defaults' existence.

Nonetheless, I respectfully submit that, even absent judicial notice of these summonses, defaults, and resulting admissions, the language of the Amended Complaint, standing alone, would still fail to state a claim or demonstrate ripeness.

Plaintiffs' claim that "the conduct of how OATH operated is currently before the United States Court of Appeals" is, at minimum, misleading. Neither "the City of New York," nor OATH, nor any OATH official has ever been a party in this case. And the Second Circuit has, in light of an apparent lack of appellate jurisdiction, ordered Plaintiffs to either withdraw their appeal or explain why jurisdiction exists (an Order to which Plaintiffs submitted a confusing response awaiting adjudication). Second Circuit Appeal 24-2370, D.I. 93.1, 97.1.


5. Plaintiffs' Dismissed-with-Prejudice Claims

Plaintiffs, at pages 10-11, make various spurious and undated new allegations of allegedly improper litigation conduct occurring "during the pendency of this very litigation," appearing to relate to filing of litigation papers, correspondence with counsel, and my attempted gathering of litigation-relevant evidence as to Plaintiffs' outdoor sound system, from the sidewalk, while Plaintiffs interfered. Plaintiffs fail to explain how, given that these events appear chronologically subsequent to the preparation and filing of the Amended Complaint, and that the

Amended Complaint identifies no date after the July 28, 2023 initial Complaint's filing date, these events could possibly have justified Plaintiffs in refiling two counts that were dismissed with prejudice. Further, Plaintiffs appear to fundamentally misunderstand what materials are appropriately considered on a 12(b)(6) motion to dismiss.

Moreover, Plaintiffs, by failing (for the third time in this case) to comply with Judge Clarke's Individual Rule requiring notification of whether Plaintiffs will amend subsequent to a motion to dismiss or rely on the challenged pleading, within 10 days of such motion, have waived relying on these new allegations of "new and ongoing misconduct" not mentioned in the Amended Complaint. Judge Clarke Individual Rules in Civil Cases (April 2, 2025), Rule 4(e) (*see also* relevantly identical former version).


6. Racial Bias

See §3(B), *supra*.


7(A). Fraud Count

Plaintiffs, at pages 12-13 of their opposition regarding the Fraud count, do not cite any paragraphs of the Amended Complaint,  do not address any of my authority, (D.I. 182, pp.19-26) and do not cite any authority of their own. Instead, Plaintiffs attempt to interject new (frequently false) facts and speculate what witnesses might testify to.

Of particular note, Plaintiffs make no effort to explain how the Amended Complaint may have plausibly pled the latter three elements of fraud of "an intent to reduce reliance, justifiable reliance by the plaintiff, and damages." (*See* D.I. 182, pp.20, 23, *citing In re Fyre Festival Litigation*, 399 F.Supp.2d 203, 213 (S.D.N.Y. 2019)) (emphasis added).

10

Nor, even in their opposition, do Plaintiffs identify with particularity the relevant statement made. Plaintiffs recite "gather[ing] photographic and audio 'evidence'." (Opposition, p.12). But the Amended Complaint makes no mention of such alleged 'photograph[s]' or 'audio' files.[5] Nor do Plaintiffs allege, or explain, in the Amended Complaint or otherwise, what specific statements may have "**Impl[ied** evidence] was lawfully and objectively gathered," or which "municipal authorities" are even being referred to as allegedly receiving this "impl[ication]." (Opposition, p.13). Failing to identify the statements or to whom they were made (let alone the date such statements were made) falls far short of Rule 9(b)'s heightened pleading requirements.

Plaintiffs' 'who/what/when/how' recitation (Opposition, p.13), which again doesn't cite to the Amended Complaint, adds little. Per *Fyre Festival*, (see D.I. 182, p.23) Plaintiffs need to "specify the statements." Plaintiffs' "What" provides no specificity, only conclusions. Plaintiffs need to "state where and when the statements were made." Plaintiffs' "When and where" fail to provide any dates, and provide only the address of Plaintiffs' business (where investigation may have occurred, but where the relevant statements were clearly not made). And Plaintiffs' "How" has nothing to do with misleading or inducing justifiable reliance in Plaintiffs, but rather "authorities"; moreover, the "How" utterly fails to explain "how" those authorities were allegedly misled into believing purportedly unlawful observations were lawful.

## 7(B). Rule 9(b) Applies to All Claims

Plaintiffs, at pages 13-14, fail to directly address my authority, *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004), that all counts, (not just the count denominated as 'Fraud') which are based on and recite "fraud" or equivalent terms, are subject to Rule 9(b)'s heightened

---

[5] What I have actually collected is video, like video already provided to the Court, which makes clear from where the video is taken. *See* e.g. D.I. 69, ¶12.

pleading requirements. (D.I. 182, pp.26-27). Plaintiffs instead cite, without pinpoint citation, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The Supreme Court's majority *Twombly* opinion, far from overruling *Rombach*, never mentions "fraud," and mentions Rule 9(b) only at footnote 14: "On certain subjects understood to raise a high risk of abusive litigation, a plaintiff must state factual allegations with greater particularity than Rule 8 requires." 550 U.S. 544, 569, n.14 (citing Fed.R.Civ.P. 9(b)-(c)). "Subjects" is the word-choice, not "claims" or "counts." This is *Rombach*-consistent. "Fraud" is of course an abuse-prone "subject" of Fed.R.Civ.P. 9(b), triggering heightened pleading requirements when alleged, regardless of the particular cause-of-action.

### 8. Anti-SLAPP

Plaintiffs argue against full application of N.Y. Civil Rights Law §76-A, which creates an "actual malice" requirement, (see D.I. 182, pp.27-28) based on positing that my petitioning activity is somehow illegitimate, and citing, without pinpoint, to *Carroll v. Trump*, 49 F.4th 752 (*sic:759*) (2d Cir. 2022). *Carroll*, addressing presidential immunity, appears irrelevant.

### 9. Fed.R.Civ.P. 12(b)(7) and Joinder

Plaintiffs pretend, at pages 14-15, that I failed to identify, *inter alia*, "the City of New York," the entity that owns any collection rights on Plaintiffs' noise summons(es), as a required party whose presence is necessary to accord proper relief. (*See* D.I. 182, pp.28-29). However, I identified it five times at pages 28-29. I also pointed to the failure to join "any of the other alleged governmental co-conspirators." (*Id*.) A simple review of the Amended Complaint's (D.I. 104) caption shows that the <u>only</u> parties currently named are Akhtar, Swing 46, and myself.

10. Plaintiffs' OATH Default Admissions

     See §4, *supra*.


Dated (and executed in):    Miami, Florida         Respectfully submitted,
                       May 2, 2025


                                          *s/      Eric Eisenberg*
                                          ERIC EISENBERG
                                          1300 S Miami Ave
                                          Unit 1408
                                          Miami, FL 33130
                                          (646) 801-6705
                                          ericeis@gmail.com

13

## <u>CERTIFICATE OF COMPLIANCE WITH WORD COUNT REQUIREMENTS</u>

The undersigned hereby certifies that this Reply Memorandum of Law, which contains 3,499 words, (excluding the caption, any index, table of contents, table of authorities, signature blocks, and any required certificates) as indicated by the word-processing program used to prepare the document, complies with the word-count limitation of Local Civil Rule 7.1(c) of the Joint Local Rules of the S.D.N.Y. and E.D.N.Y.

Dated (and executed in):        Miami, Florida              Respectfully submitted,
                                May 2, 2025


                                                            s/      *Eric Eisenberg*
                                                            ERIC EISENBERG
                                                            1300 S Miami Ave
                                                            Unit 1408
                                                            Miami, FL 33130
                                                            (646) 801-6705
                                                            ericeis@gmail.com